**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Mark Richards (SBN 321252)
*mrichards@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

**SHUB JOHNS & HOLBROOK LLP**
Benjamin F. Johns (*Pro Hac Vice forthcoming*)
*bjohns@shublawyers.com*
Samantha E. Holbrook (*Pro Hac Vice forthcoming*)
*sholbrook@shublawyers.com*
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Tel: (610) 477-8380

*Counsel for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIQUE CAVALIER, and KILEY KRZYZEK, individually and on behalf of all others similarly situated, | Case No.: 5:25-cv-713 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | 1. VIOLATION OF UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*) |
| APPLE INC., | 2. VIOLATION OF FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*) |
| Defendant. | 3. VIOLATION OF CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*) |
| | 4. FRAUD |
| | 5. FRAUDULENT INDUCEMENT |
| | 6. FRAUDULENT CONCEALMENT OR OMISSION |
| | 7. FRAUDULENT MISREPRESENTATION |
| | 8. NEGLIGENT MISREPRESENTATION |
| | 9. QUASI-CONTRACT / UNJUST ENRICHMENT |
| | **JURY TRIAL DEMAND** |

1.    Plaintiffs Dominique Cavalier and Kiley Krzyzek ("**Plaintiffs**"), individually and on behalf of all others similarly situated, as more fully described below (the "**Class**" and "**Class Members**"), bring this class action complaint against Defendant Apple Inc., ("**Defendant**" or "**Apple**"), and allege the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I.    INTRODUCTION

2.    Plaintiffs bring this lawsuit on behalf of themselves and all similarly situated consumers ("**Class Members**") who purchased the Apple Watch Sport Band, Ocean Band, and Nike Sport Band (the "**Products**"). Defendant advertises these Products as designed to support and further human health and wellness, environmentally sustainable, and suitable for everyday use and wear. However, in truth, they contain excessive levels of per- and polyfluoroalkyl substances ("**PFAS**"), which are toxic to human health and the environment.

3.    PFAS, also known as "forever chemicals," have special characteristics that cause extensive environmental contamination. They have also been linked to various serious public health problems, including prostate and kidney cancer, pregnancy complications, and more. PFAS do not readily break down in the environment or even in conventional treatment systems. These features make them difficult and expensive to remove.[1] Despite these known dangers to human health and the environment, manufacturers use PFAS due to their low cost and wide availability. Alternatives exist, however, and responsible companies use them. For example, smartwatch bands made of silicone are flexible, water-resistant, and durable, but lack the harmful effects of bands containing toxic PFAS.

4.    A leading reason consumers purchase smartwatches is to monitor and improve their health on a daily basis. These health-conscious consumers reasonably seek smartwatches that are safe for everyday use and to further their health overall. Environmental sustainability is also a top consideration. Aware of these material purchase drivers, Defendant purposely implemented a pervasive and widespread marketing campaign across all media channels for the Products, focusing

---

[1] Alison L. Ling, *Estimated scale of costs to remove PFAS from the environment at current emission rates*. Science of The Total Environment (March 25, 2024), https://doi.org/10.1016/j.scitotenv.2024.170647. (Last visited December 31, 2024).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

on health, well-being, and environmental sustainability, even inviting all consumers to "live a healthier day" with its smartwatches, which Defendant markets as "the ultimate device for a healthy life." Consumers thus purchase the Products with consideration toward, and reasonably expect quality, safety, and sustainability to further and protect their own health while minimizing environmental impact, consistent with Defendant's promises and overall branding. These promises are especially important to the consumers that Defendant targets, when one considers that the primary reported use of smartwatches is to track and further fitness and health, and because they are often worn for an average of 11 hours per day, and even throughout the night, as directed and intended by Defendant. Given these uses, consumers expect the Products to be conducive to human health, safe to wear for prolonged periods of time, and at the very least free from dangerous chemicals. These reasonable assumptions are otherwise reinforced by Defendant's purposeful, widespread, and pervasive Product advertising focused on health, wellness, and environmental stewardship. Consumers also reasonably rely on manufacturers to accurately and completely disclose significant and hidden dangers posed by products, especially where, as here, the Product is advertised and sold as designed for, and to further, human health and wellness.

5.    Defendant is the leading global market share holder in the over 50-billion-dollar smartwatch industry that has over 450 million smartwatch users worldwide. Defendant substantially profits from consumers who desire safe and sustainable smartwatches to track and further their health and who believe the company's pervasive and false promises surrounding health, wellness, and environmental sustainability. Consistent with Product advertising, Defendant consistently markets itself as a company that values the health of its employees, customers, and the environment.

6.    Against this backdrop, the public was reasonably outraged, as widely reported in the press, when it was revealed that Defendant's Products contain toxic PFAS chemicals that harm humans and the environment, and at excessive levels. Worse, the presence of excessive PFAS in the Products was and is avoidable, as it was also reported that several bands on the market are made of different materials that do not contain excessive levels of PFAS.[2]

---

[2] See e.g., Google's Pixel Watch Woven Band (made of recycled yarn) or FitBit's Sport Band for (made of silicone).

7. Defendant knows that certain of its products contain PFAS. It also knows that those chemicals are dangerous, acknowledging that "high-level exposure" to PFAS have been linked to "harmful health effects," and that the chemicals "resist degradation, [] are highly persistent, [and] break down very slowly in the environment."[3] Defendant also knows that the existence of harmful chemicals is material to consumers; that is why Defendant has said that it is allegedly phasing them out. Notably, however, that supposed and largely hidden promise does not inform consumers which products contain the harmful chemicals. Instead, in respect of watches, Defendant continues to hide the existence of PFAS at the point of purchase and otherwise. They also affirmatively promise the opposite: that these Products are specifically designed to aid human health and are environmentally-friendly. Consumers therefore reasonably would have no way of knowing the products are laced with harmful chemicals and instead believe what Defendant falsely promises.

8. Defendant also could have chosen not to expose the health-conscious consumers it targets to the harmful toxins, by only using different material for its watchbands, but it elected not to. This not only harms consumers but it also gives Defendant an unfair competitive advantage over those in the market who decline to affirmatively  promise health or environmental sustainability, or who deliver on those promises by using the otherwise widely-available materials not containing excessive levels of toxic substances that, here, are absorbed by the skin during daily, all-day long use as intended—and on the undersides of the wrists where the skin absorption rate of toxic chemicals like PFAS is heightened, especially considering sweat can increase the rate of absorption.

9. **Background.** Per- and polyfluoroalkyl substances ("**PFAS**") are a group of synthetic chemical compounds used to make fluoropolymer coatings that resist heat, oil, stains, grease, and water in a variety of consumer products and manufacturing applications. The same properties that make PFAS excellent at resisting water and stains make them nearly impossible to break down via natural processes in the human body or the environment. PFAS are highly toxic, bioaccumulative, and persistent organic pollutants, and as such are commonly described as "forever

---

[3] *Apple's commitment to phasing out per- and polyfluoroalkyl substances (PFAS)*, Apple, https://www.apple.com/environment/pdf/Apple_PFAS_Commitment_November-2022.pdf (last accessed Jan. 6, 2025) ("The well-being of our employees, our customers, people in our supply chain, and the planet is our top priority, which is why we're committed to using safer materials.").

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

chemicals." Since the 1970s, when occupational studies detected PFAS in the blood of certain workers,[4] a growing body of scientific research has proven the severe health consequences they cause. Current peer-reviewed scientific studies demonstrate that PFAS cause negative reproductive effects, negative developmental effects, or delays in children, increased risk of cancers, reduced ability of the body's immune system to fight infections, interference with the body's natural hormones, and increased risk of obesity.[5,6] Even at extremely low exposure levels, PFAS cause serious health effects, including suppression of the immune system, endocrine disruption, accelerated puberty, liver damage, and thyroid changes.[7] They are proven equally harmful to the environment. As a result, as society has increasingly become more health-conscious and concerned for the environment, consumers seek to avoid or reduce unnecessary exposure to toxic chemicals like PFAS, with harm reduction a key goal.

10.     Despite growing consumer awareness, well-documented harms, and a worldwide movement to remove or reduce toxic PFAS from production materials and processes, Defendant's Products contain PFAS in the Products' fluoroelastomer material (also known as "FKM"), at levels that render them an unreasonable safety hazard. The harm is especially pronounced here given that, when the Product is used as intended and directed, the toxic chemicals remain in contact with the skin daily and all day long, including the underside of the wrist where the body's absorption rate of the toxic chemicals is heightened. Worse, perspiration experienced during regular use of the Products for health purposes further exacerbates the dangerous rate of absorption.[8]

---

[4] *History and Use of Per- and Polyfluoroalkyl Substances (PFAS) Found in the Environment*, INTERSTATE TECHNOLOGY REGULATORY COUNCIL (Sept. 27, 2023), https://pfas-1.itrcweb.org/wp-content/uploads/2023/10/HistoryandUse_PFAS_Fact-Sheet_Sept2023_final.pdf.

[5] *Our Current Understanding of the Human Health and Environmental Risks of PFAS*, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY (June 7, 2023), https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas.

[6] Cook, K. *The PFAS and the Furious*, ENVIRONMENTAL WORKING GROUP (Sept. 17, 2020), https://www.ewg.org/research/the-pfas-and-the-furious/.  (Last visited Dec. 31, 2024).

[7] Louisse, J. et al., *Perfluorooctanoic acid (PFOA), perfluorooctane sulfonic acid (PFOS), and perfluorononanoic acid (PFNA) increase triglyceride levels and decrease cholesterogenic gene expression in human HepaRG liver cells*, ARCHIVES OF TOXICOLOGY, 94, 3137–3155 (2020), https://doi.org/10.1007/s00204-020-02808-0. (Last visited June 26, 2024).

[8] Oddný Ragnarsdóttir et. al., *Dermal bioavailability of perfluoroalkyl substances using in vitro 3D human skin equivalent models*, Environmental International (Jun. 2024),

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

11.    By pervasively advertising the watches as designed to further health, wellness, and sustainability, while encouraging daily/nightly use, Defendant misleads Plaintiffs and consumers like them, causing them to overpay for Products that do not deliver advertised benefits and to forego safe alternatives available on the market. Defendant therefore enjoys an unfair competitive advantage, receiving millions of dollars from consumers in ill-gotten proceeds while putting the health and welfare of millions of consumers and their families at risk due to the Product's intended daily use and concomitant prolonged absorption of toxic chemicals into the skin. Defendant could have avoided the unreasonable safety and environmental hazard with available manufacturing alternatives, and its failure to do so while continuing to promise consumers health, wellness, and sustainability is unlawful, unfair, and fraudulent under consumer protection laws.

12.    **Challenged Representations and Material Omission.** In an effort to increase profits and gain an unfair advantage over its lawfully acting competitors, Defendant, misleadingly and materially omits, on all relevant marketing and advertising, that the Products contain toxic PFAS (the "**Material Omission**"). Instead, Defendant falsely and misleadingly markets and advertises its Products with the widespread and pervasive claims (hereinafter, the "**Challenged Representations**") including:

- "**The ultimate device for a healthy life**" [9]
- "Apple Watch can do what your other devices can't because it's on your wrist"[10]
- "When you wear it, you **get meaningful health insights**"[11]
- "Peace of mind on your wrist"[12]
- "Better understand your **daily** health status"[13]

---

https://www.sciencedirect.com/science/article/pii/S0160412024003581 (last accessed Dec. 27, 2024); Cara Lynn Shultz, *Smart Watch Bands Contain 'Very High Concentrations' of Forever Chemicals That May Be Absorbed into Skin*, People Magazine (Jan. 2025), https://people.com/smart-watch-bands-very-high-concentrations-pfas-forever-chemicals-8776525?utm_campaign=people&utm_content=likeshop&utm_medium=social&utm_source=instagram (last accessed Jan. 21, 2024).

[9] *Why Apple Watch*, Apple, https://www.apple.com/watch/why-apple-watch/ (last accessed Jan. 6, 2025).

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

CLASS ACTION COMPLAINT

- "A great call for kids"[14]

- "[…] [L]ive a healthier day"[15]

- "Track daily activity"[16]

- "Apple Watch For Your Kids: Independence for them. Peace of mind for you."[17]

- "The same innovative thinking that goes into creating the products you love goes into our environment initiatives. And as we design durable products, **we're also using smarter chemistry to make sure they're safer for everyone who assembles, uses, and recycles them.**"[18]

13.     Defendant features its allegedly sustainable products, including the Apple Watch, directly below their environmental sustainability and safety claims:[19]



[14] *Apple Watch for Your Kids*, Apple, https://www.apple.com/apple-watch-for-your-kids/ (last accessed Jan. 6, 2025).

[15] Statements have been taken from the Products' online advertising and Defendant's official website: https://www.apple.com; *see also Apple Healthcare*, Apple, https://www.apple.com/healthcare/apple-watch/ (last accessed Jan. 17, 2025).

[16] *Track daily activity with Apple Watch*, Apple, https://support.apple.com/guide/watch/track-daily-activity-apd3bf6d85a6/watchos (last accessed Jan. 6, 2025).

[17] *Apple Watch*, Apple, https://www.apple.com/watch/?afid=p238%7CseyuFmCwP-dc_mtid_20925qtb42335_pcrid_77721942705243_pgrid_1243548213295953_pexid__ptid_kwd-77722185864551%3Aloc-190_&cid=wwa-us-kwbi-watch-slid-----AppleWatchNY- (last accessed Jan. 17, 2025).

[18] *Apple Environment* Apple, https://www.apple.com/environment/#reports-product (last accessed Jan. 17, 2025).

https://www.apple.com/environment/#reports-product

[19] *Apple* Environment, Apple, https://www.apple.com/environment/ (last accessed Jan. 17, 2025).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

14.     The Challenged Representations also include Apple's health focused messaging discussed below and wide-spread recommendations to use the unreasonably hazardous watches day and night to track exercise routines, heartbeat, wellness, and sleep. For example, Defendant reiterates that the watch, in tandem with Apple Fitness+ "supercharges your Fitness+ experience with real-time, personalized metrics onscreen, like your heart rate, calories burned, and Activity rings."[20]

15.     Defendant's health-focused messaging is part of its pervasive and widespread marketing campaign across all media. For example, Defendant introduced the Vitals app as a feature for Apple Watch that allows users to "check in on their daily health status."[21] Apple's Vice President of Health, Dr. Sumbul Desai, even emphasizes Apple's belief that "technology can help you live a healthier life."[22] According to Defendant, "**Apple Watch acts as an intelligent guardian for users' health**."[23] Indeed, Defendant has an entire page entitled "See more of yourself in Health," allegedly dedicated to empowering consumers to take control of their health, wherein the Apple smartwatch is prominently displayed.[24] Defendant directs consumers to use the Products daily—for a prolonged period of time during the day or night—and on the undersides of the wrists where the skin absorption rate of the toxic chemicals is heightened. Furthermore, as much as 60% of toxic PFAS may be topically absorbed into the skin, and sweat may increase the already hazardous rate of absorption.[25] Worse yet, Defendant recommends its Products be worn during exercise, when consumers are likely

---

[20] *See supra, Apple Watch,* note 17.

[21] *watchOS 11 brings powerful health and fitness insights, and even more personalization and connectivity*, APPLE, https://www.apple.com/newsroom/2024/06/watchos-11-brings-powerful-health-and-fitness-insights/  (last accessed Jan. 6, 2025).

[22] *Apple introduces groundbreaking health features to support conditions impacting billions of people*, APPLE (Sept. 9, 2024),  https://www.apple.com/newsroom/2024/09/apple-introduces-groundbreaking-health-features/#:~:text="At%20Apple%2C%20we%20believe%20that,Apple's%20vice%20president%20of%20Health (last accessed Jan. 6, 2025).

[23] *Id.*

[24] *See more of yourself in Health*, APPLE, https://www.apple.com/health/ (last accessed Jan. 6, 2025).

[25] Cara Lynn Shultz, *Smart Watch Bands Contain 'Very High Concentrations' of Forever Chemicals That May Be Absorbed into Skin*, People Magazine (Jan. 2025), https://people.com/smart-watch-bands-very-high-concentrations-pfas-forever-chemicals-8776525?utm_campaign=people&utm_content=likeshop&utm_medium=social&utm_source=instagram (last accessed Jan. 21, 2024).

CLASS ACTION COMPLAINT

to perspire, and thus exacerbate absorption.

16.    Defendant's dedicated advertising campaign for Healthcare and the Apple Watch encourages medical professionals to trust the Apple Watch as a means of "empowering [their] patients to live a healthier day" and support health by tracking heart rate activity, irregular rhythms, and more. Defendant's Healthcare webpage prominently features the Apple Watch:[26]



17.    Despite health and environmental promises to the contrary, Defendant continues to manufacture and sell the Products, which contain the unreasonably hazardous "forever chemical" perfluorohexanoic acid (PFHxA), a dangerous form of PFAS that pose significant harms to people and the environment. The elevated levels of PFAS present in these Products are particularly hazardous given the intended prolonged and direct skin contact and continuous wearing of Defendant's Products – all day or all night, every day, even during exercise – as directed by Defendant to monitor consumers' health, wellness, and sleep. The intended wearing of the watches

---

[26] *Apple Healthcare*, APPLE, https://www.apple.com/healthcare/apple-watch/ (last accessed Jan. 17, 2025).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

on the underside of the wrist, combined with body heat and thin layer of skin, makes these toxic chemicals particularly prone to absorption, especially where sweat can increase absorption rates. PFAS or other chemicals absorption through the skin has been known for decades.[27]

18.    In developing the unreasonably hazardous and dangerous Products, which Defendant markets for everyday wear, Defendant knew or, at a minimum, should have known the danger the Products carry to human health, especially for Products with the daily/nightly and prolonged contact with the skin on the underside of the wrist, where body's absorption rate of the toxic chemicals is heightened, especially where perspiration increases absorption rates.

19.    **The Products.** The Products at issue (including Apple products listed in Figure 1 below, ¶ 23) are sold to consumers in the United States and the State of California, and contain the Material Omission or one of the Challenged Representations as part of the Products' pervasive, consistent, and widespread false advertising across the web and all other media (collectively referred to herein and throughout this complaint as the "**Products**").

20.    **The Deception of the Challenged Representations and Unlawful Marketing & Sale of the Products.** The Material Omission and Challenged Representations mislead reasonable consumers into believing the Products are safe for everyday wear and use, environmentally sustainable, and designed specifically to further human health and, thus, free from toxic chemical substances like PFAS, which are harmful to the environment and pose risk of serious harm to humans, especially when absorbed by the skin daily and all day long, as per use directed and intended by Defendant, and on the underside of the wrist, where the body's absorption rate of the toxic chemicals is heightened and sweat increases absorption rates. However, the Products fail to live up to Defendant's promises. Instead, the Products are toxic to consumers due to the presence of PFAS, confirmed by a recent study investigating the level of PFAS in multiple smartwatch bands,

---

[27] Jennifer Franko et. al., *Dermal Penetration Potential of Perfluorooctanoic Acid (PFOA) in Human and Mouse Skin*, Journal of Toxicology and Environmental Health (Nov. 2, 2011), https://www.tandfonline.com/doi/full/10.1080/15287394.2011.615108 (scientific article in 2012 regarding dermal absorption of PFOAS, a type of PFA, concluding that PFOA is "dermally absorbed and under certain conditions the skin may be significant route of exposure").

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

including Defendant's.[28] By falsely, misleadingly, and deceptively marketing the Products with the Material Omission and Challenged Representations, Defendant has sought to take advantage of consumers' desire for safe and sustainable smartwatch bands. In this way, Defendant has charged consumers a premium for Products that comport with the Challenged Representations that they would not have otherwise paid if Defendant disclosed the Material Omission. Defendant has done so at the expense of unwitting consumers, as well as Defendant's lawfully acting competitors, over whom Defendant maintains an unfair competitive advantage. Accordingly, Defendant's Challenged Representations and Material Omission are misleading and deceptive, and therefore unlawful.

21.     Below is a fair and accurate depiction of some of the Products.[29]



---

[28] Alyssa Wicks, Heather D. Whitehead, and Graham F. Peaslee, *Presence of Perfluorohexanoic Acid in Fluoroelastomer Watch Bands*, Environmental Science & Technology Letters (Dec. 18, 2024), https://pubs.acs.org/doi/10.1021/acs.estlett.4c00907.

[29] *See Defendant's official website*: *Apple Watch Sport Band*, APPLE, https://www.apple.com/shop/product/MYJ33AM/A/40mm-starlight-sport-band-s-m?cid=aos-us-seo-pla-accessories (last accessed Jan. 17, 2025); *Apple Watch Ocean Band*, APPLE, https://www.apple.com/shop/product/MYPD3AM/A/49mm-black-ocean-band-black-titanium-finish (last accessed Jan. 17, 2025); *Apple Watch Nike Sport Band*, APPLE, https://www.apple.com/shop/product/MC1R4AM/A/40mm-volt-splash-nike-sport-band-s-m?fnode=28e909d09df5c22c303cbfdebd67cbf702c5630d54d262a12c84b92ffcc01f60b224efff886707331a7925d27daf2bb0d0b7d15a2b9dcd2ff23981b57d6d5cb93541d3d2f8c038ea5d866d6e92eecb26 (last accessed Jan. 17, 2025).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## Product Information ⌃

**Overview**

Made from a custom high-performance fluoroelastomer, the Sport Band is durable and strong, yet surprisingly soft. The smooth, dense material drapes elegantly across your wrist and feels comfortable next to your skin. An innovative pin-and-tuck closure ensures a clean fit.

**What's in the Box**

Apple Watch Sport Band

**Tech Specs**

Material: Fluoroelastomer

## Compatibility ⌄



### 49mm Black Ocean Band - Black Titanium Finish

$99.00

or

$8.25/mo. for 12 mo.*

Get 3% Daily Cash with Apple Card ⊕

**Color - Black**

**Apple Watch Case Finish - Black**

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## Product Information ∧

**Overview**

The Ocean Band is molded in a high performance elastomer with a tubular geometry allowing it to stretch for a perfect fit, even over a wetsuit. The corrosion-resistant titanium buckle and adjustable loop secure the band during high-speed water sports.

For extra length, an extension band is sold separately — perfect if you need extra length to wear the band over your wetsuit.

**What's in the Box**

Apple Watch Ocean Band
One adjustable loop

**Tech Specs**

Material: Titanium, Fluoroelastomer

22.    **PFAS Testing. Research confirms that PFAS can be absorbed by the skin and enter the bloodstream, and thus, dermal exposure can be a significant source of exposure to PFAS.**[30] This is of particular concern to smartwatch users, which are often worn for many hours a day, including overnight, to track sleep patterns and other health data. Defendant thus promotes long-term exposure to PFAs directly on, and through, the skin by directing the public to wear its Products, which contain elevated levels of toxic substances.

23.    A study published in Environmental Science & Technology Letters[31] tested multiple smartwatch band samples, including Apple's fluoroelastomer smartwatch bands, using particle-induced gamma-ray emission ion beam analysis and liquid chromatography-tandem mass spectrometry to determine the material's total fluorine content and identify the specific type of polyfluoroalkyl substances (PFAS) present. Defendant Apple was among the brands of fluoroelastomer watch band manufacturers tested in the study. Elevated levels of fluorine were found in the midrange ($15-30) and expensive (>$30) smartwatch bands. The Products meet or

---

[30] Oddný Ragnarsdóttir et. al*., Dermal bioavailability of perfluoroalkyl substances using in vitro 3D human skin equivalent models*, ENVIRONMENTAL INTERNATIONAL (Jun. 2024), https://www.sciencedirect.com/science/article/pii/S0160412024003581 (last accessed Dec. 27, 2024).

[31] Wicks et. al., *supra* note 28.

CLASS ACTION COMPLAINT

exceed the $30 price point, falling in the "expensive" range, according to the study.[32] *See Figure 1 below*. Ultimately, it was determined that the "expensive" smartwatch bands, including Defendant's, contained significantly elevated levels of fluorine (from 49.7% - 90.7%), an indicator of the presence of PFAS. Elevated levels of the PFA perfluorohexanoic acid (PFHxA) were also more prevalent in mid-range and expensive watch bands that exceeded $15. According to the study, the median concentration for samples with detectable PFHxA, 773 ng/g, is very high in comparison to other recent studies, which, combined, had observed PFHxA concentrations up to 199 ng/g.[33]

**_Figure 1_**

| Apple Sport Band[34] | $49.00 |
|---|---|
| Apple Ocean Band[35] | $99.00 |
| Nike Sport Band[36] | $49.00 |

24.    **Consumer Demand for Safe Smartwatch Bands.** Consumers have a great concern for safe and chemical-free smartwatch bands that are worn directly on the skin for extended periods of time, every day.

25.    **Challenged Representations on the Products' Advertising and Marketing.** Defendant takes advantage of consumers' need for safe smartwatch bands, convincing consumers that the Products are safe for humans to wear every day or night, are designed to track and advance human health, and are environmentally sustainable, and, thus, free from toxic chemicals like PFAS.

---

[32] Apple watchbands were tested in this study, and their band price ranges fall in the "expensive" range according to the study.

[33] Wicks et. al., *supra* note 28.

[34] *Sport Band*, APPLE,  https://www.apple.com/shop/product/MYJ33AM/A/40mm-starlight-sport-band-s-m?afid=p238%7CsPz64rTnO-dc_mtid_1870765e38482_pcrid_652838197344_pgrid_147153194626_pntwk_g_pchan_local_pexid__ptid_pla-2273290517221_&cid=aos-us-kwgo-pla-btb_lia--slid---product-MYJ33AM/A.

[35] *Ocean Band*, APPLE, https://www.apple.com/shop/product/MXTL3AM/A/49mm-black-ocean-band-natural-titanium-finish?afid=p238%7CsPz64rTnO-dc_mtid_1870765e38482_pcrid_652838197344_pgrid_147153194626_pntwk_g_pchan_local_pexid__ptid_pla-2273290517221_&cid=aos-us-kwgo-pla-btb_lia--slid---product-MXTL3AM/A.

[36] *Nike Sport Band*, APPLE,  https://www.apple.com/shop/product/MC1R4AM/A/40mm-volt-splash-nike-sport-band-s-m.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

a.   **Design/Purpose.** The Products are watch bands on smartwatches which are used and promoted as environmentally sustainable and made for everyday wear and prolonged use, to track and further human health and well-being.

b.   **Challenged Representations.** Defendant advertises and markets the Products with the Challenged Representations, each of which convey, that the Products are specifically designed to track and further human health, are made for everyday wear and prolonged use, and are environmentally sustainable.

c.   **Material Omission.** Defendant fails to disclose the Material Omission anywhere on the Products' advertising and marketing to inform consumers that the Products are not, contrary to their design/purpose and Challenged Representations, free from toxic PFAS in excessive levels that are absorbed directly through the skin and into the bloodstream with regular use as intended and directed.

26.     The Challenged Representations are widely and prominently dispersed throughout Defendant's official website, social media, and Defendant's authorized retail vendors. The net-effect on consumers who view the Products is the impression that Products are safe for everyday wear and use, environmentally sustainable, and designed specifically to promote human health. The consumers believe that the Products are free from toxic chemical substances like PFAS, which are harmful to the environment, and pose serious risk of harm to consumers' health – especially when absorbed by the skin during prolonged use during the day or night, as per use directed and intended by Defendant, on the underside of the wrist, where the body's absorption rate of the toxic chemicals is heightened and where sweat can increase PFAS absorption rates. Defendant reinforces its deceptive advertising and marketing by materially omitting that the Products actually contain toxic PFAS in excessive levels that are absorbed directly through the skin and into the bloodstream with regular use as intended and directed.

27.     **Primary Dual Objectives.** Plaintiffs bring this action individually and in a representative capacity on behalf of those similarly situated consumers who purchased the Products during the relevant Class Period (defined *infra*), for dual primary objectives. ***One***, Plaintiffs seek,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

on Plaintiffs' individual behalf and on behalf of the Class, a monetary recovery of the price premium Plaintiffs and consumers have overpaid for the Products as a result of the Material Omission and Challenged Representations, as consistent with permissible law (including, for example, damages,[37] restitution, disgorgement, and any applicable penalties/punitive damages solely as to those causes of action so permitted). *Two*, Plaintiffs seek, on Plaintiffs' individual behalf and on behalf of the Class, injunctive relief to stop Defendant's unlawful manufacturing, marketing, and sale of the Products with the Material Omission and Challenged Representations to avoid or mitigate the risk of deceiving the public into believing that the Products live up to the Material Omission and Challenged Representations, by requiring Defendant to change its business practices, which may include one or more of the following: disclosure of the Material Omission on the Products' advertising and removal or modification of the Challenged Representations; disclosure of the Material Omission in the Product's advertising and removal or modification of the Challenged Representations; modification of the Products so that they live up to the Challenged Representations; and/or discontinuance of the Products' manufacture, marketing, and/or sale.

## II.   **JURISDICTION**

28.    This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

29.    This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself of this forum by conducting substantial business within California such that Defendant has significant, continuous, and pervasive contacts with the State of California.

## III.   **VENUE**

30.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendant conducts its affairs in this District and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

---

[37] Except as to the Consumer Legal Remedies Act ("**CLRA**") claim.

## IV.   **PARTIES**

31.     **Plaintiff Dominique Cavalier.** The following is alleged based upon Plaintiff Cavalier's personal knowledge:

     a.    **Residence.** Plaintiff is a resident of the County of San Bernardino, in the State of California.

     b.    **Purchase Details.** Plaintiff purchased the Apple Watch Series 3 GPS – 33mm with the fluoroelastomer Sport Band (the **"Cavalier Purchased Product"**) for approximately $182.10 from the Walmart website on December 1, 2021.

32.     **Plaintiff Kiley Krzyzek.** The following is alleged based upon Plaintiff Krzyzek's personal knowledge:

     a.    **Residence.** Plaintiff is a resident of the County of Sonoma, in the State of California.

     c.    **Purchase Details.** Plaintiff purchased the Apple Watch SE 2nd Gen 40mm with the fluoroelastomer Sport Band (the **"Krzyzek Purchased Product"**) at T-Mobile on or around June 26, 2024. She has been paying and will continue to pay $4.12/month for the Purchased Product for two years from purchase of the product, totaling approximately $100.

33.     The Cavalier Purchased Product and Krzyzek Purchased Product are collectively referred to as the "**Purchased Products**."

34.     Allegations on behalf of Plaintiffs Cavalier and Krzyzek:

     a.    **Reliance on Challenged Labeling Claims.** In deciding to make the purchase, Plaintiffs viewed and relied upon the Material Omissions and Challenged Representations on the Products' official website and other Apple advertising and marketing, leading Plaintiffs to believe that the Products are safe for everyday wear and use, environmentally sustainable, and designed specifically to promote human health, and, thus, free from harmful toxic chemicals like PFAS that would cause them harm, especially when absorbed by the skin daily, and all day/night long, and during exercise, as per use directed and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

intended by Defendant. Further, the Products are worn on the underside of the wrist, where absorption of the toxic chemicals is heightened and sweat increases the rate of PFAS absorption. Plaintiffs relied on Apple's health centered marketing campaign, and purchased the product for health support purposes. Plaintiffs Cavalier and Krzyzek purchased the products for health purposes, including monitoring their heart rate and sleep patterns. Plaintiff Cavalier was fond of the Products' ability to track sleep, in reliance on Defendant's representations of the Product's features, purpose, and recommended use, wore it while sleeping, believing this was safe to do. Plaintiff Krzyzek is a flight attendant, and, in reliance on Defendant's representations of the Products' features, purpose, and recommended use, would wear the watch consecutively for 8 – 12 hours a day, believing this was safe to do.

b.   **No Actual Knowledge of Falsity.** At the time of purchase, Plaintiffs did not know of the Material Omissions or that the Challenged Representations were false—i.e., that the Products contain toxic PFAS, pose an unreasonable safety hazard to human health and environment with intended use, and are not safe for everyday wear and use as advertised.

c.   **No Notice of Contradictions.** Plaintiffs did not notice any disclaimer, qualifier, or other explanatory statement or information on the Products' advertising and marketing that contradicted the prominent Challenged Representations or otherwise suggested that the Products contain PFAS, and are unsafe for everyday wear and use, harmful to human health and environment.

d.   **Causation/Damages.** Plaintiffs would not have purchased the Products or would not have paid as much for the Products, had the Material Omission been disclosed and/or had Plaintiffs otherwise known that the Challenged Representations were not true—i.e., that the Products contain toxic chemicals,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

PFAS, posing an unreasonable safety hazard to human health and environment, and are thus, not safe for everyday wear and prolonged use. Initially, Plaintiff Cavalier was wearing the Purchased Product nearly all day, and after several weeks of prolonged use, she developed an irritation where the Product touches the skin. Following the irritation incident, Plaintiff Cavalier purchased a magnetic watch band to replace the Product, incurring $10.16 in out-of-pocket expenses as a result.

e.    **Desire to Repurchase.** Plaintiffs continue to see the Products available for purchase and desires to purchase them again if the Challenged Representations were true—i.e., if the Products are environmentally sustainable, and designed specifically to further human health, and are safe for everyday wear and use, and thus, free from toxic PFAS.

f.    **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiffs are not personally familiar with the science behind the Products as they do not possess any specialized knowledge, skill, experience, or education in clothing materials, production, and safety. Thus, Plaintiffs are unable to determine whether the Products' Challenged Representations are true—i.e., whether the Products contain PFAS making them unsafe for everyday wear, and instead hazardous to Plaintiffs' and the public's health and environment.

g.    **Inability to Rely.** Plaintiffs are, and continue to be, unable to rely on the truth of the Challenged Representations on the Products' advertising and marketing.

35.    **Plaintiffs' Future Harm.** Defendant continues to market and sell the Products with the Challenged Representations and Material Omission. Plaintiffs would like to purchase the Products in the future if they lived up to and conformed with the Challenged Representations. However, Plaintiffs are average consumers who are not sophisticated in, for example, watch band chemical composition or exposure, and/or whether the Products are free from undisclosed chemicals. Since Plaintiffs would like to purchase the Products again to obtain the benefits of the Challenged Representations that Defendant continues to use—despite the fact that the Products were

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

once marred by false advertising or warranties—Plaintiffs would likely and reasonably, but incorrectly, assume the Products are true to and conform with the Challenged Representations on Defendant's advertisements.

36.     Accordingly, Plaintiffs are at risk of reasonably, but incorrectly, assuming that Defendant has fixed the Products such that Plaintiffs may buy them again, believing they are no longer falsely advertised and warranted. In this regard, Plaintiffs are currently and, in the future, deprived of the ability to rely on the Challenged Representations in deciding to purchase the Products.

### ***Defendant***

37.     Defendant Apple Inc., ("**Defendant**") is an active California corporation with its principal place of business located at One Apple Park Way, Cupertino, California 95014. Apple regularly conducts business throughout California and in this judicial district.

38.     At all relevant times, Defendant was conducting business in the state of California, including the Class Period. Defendant is one of the owners, manufacturers, marketers, and distributors of the Products, and is the company that created, authorized, and controlled the use of the Challenged Representations to market the Products. Defendant and its agents promoted, marketed, and sold the Products at issue throughout the United States and, in particular, within this judicial district. The unfair, unlawful, deceptive, and misleading Challenged Representations and Material Omission on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and were disseminated throughout California and the nation by Defendant and its agents to deceive and mislead consumers in the State of California and the United States into purchasing the Product.

## V.    FACTUAL ALLEGATIONS

### A.    The Smartwatch Market

39.     Apple is the leading smartwatch manufacturer, holding 21% of the global smartwatch market share.[38] The smartwatch market is rapidly growing, driven by increasing

---

[38] Naveen Kumar, *Smartwatch Statistics (2025): Market & Sales Data*, DemandSage (Dec. 6, 2024), https://www.demandsage.com/smartwatch-

consumer demand and technological advancements.[39] The global smartwatch industry is currently valued at around $50.57 billion, and expected to reach $143.19 billion by 2032.[40] There are 454.69 million smartwatch users worldwide, reflecting a 41% increase from 2023.[41] The increasing trend of health consciousness is a significant driver of the market growth.[42] Tracking and furthering health is a primary use of smartwatches. For example, 92% of smartwatch users report using smartwatches to track and improve their health and fitness,[43] which is why the majority of consumers look for reputable brands and rely on representations of health and safety when making their purchase decision. Indeed, studies show that smartwatch users wear smartwatches for an average of 11 hours per day,[44] further rising concerns of prolonged exposure to chemicals and harmful materials in the smartwatches, including Defendant's, that sit directly on the skin.

## B.    The Products' Advertising and Marketing

40.    **Website Advertising**. Defendant emphasizes the Challenged Representations in its advertising of the Products as part of its marketing campaign and brand strategy of the Products. Not only has Defendant marketed and advertised the Products with the Challenged Representations, but Defendant has engaged in a marketing campaign initiated before and continuing throughout the Class Period (defined *infra*) that repeats and reinforces the Challenged Representations. Defendant's marketing campaign and brand strategy is evidenced by its https://www.apple.com/ website. Currently, on Defendant's official brand website, Defendant showcases the Challenged Representations. Furthering consumer health and well-being are at the core of Defendant's smartwatch marketing, together with prominent promises of environmental stewardship.

---

statistics/#:~:text=Apple%20holds%2021%25%20of%20the%20global%20smartwatch%20market%20share.,Are%20Predicted%20To%20Be%20Shipped.

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] Anna L Beukenhorst et. al., *Engagement and Participant Experiences With Consumer Smartwatches for Health Research: Longitudinal, Observational Feasibility Study,* JMIR Mhealth Uhealth (Jan. 29, 2020), https://pmc.ncbi.nlm.nih.gov/articles/PMC7016619/#:~:text=Engagement%20With%20Smartwatch%20The%20median%20daily%20wear,and%2016.00%20and%2021.18%2C%20respectively%20(Figure%203).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

### C.     Defendant's Products Contain PFAS

41.     As a result of Defendant's extensive marketing and advertising of the Apple brand and Products, as detailed above, reasonable consumers are led to believe the Products are made of safe and environmentally sustainable materials. Contrary to the Challenged Representations, the Products contain PFAS, which are dangerous, toxic ingredients that are harmful to humans and the environment. The Products' PFAS are inhaled and absorbed by the body through the dermal layer of the skin, enter and remain in the bloodstream, and further accumulate in the body's tissues.[45, 46] The chemicals also contaminate wastewater during manufacturing, washing, and disposal processes.[47, 48] As such, they pollute the soil and contaminate drinking water sources.[49]

42.     Defendant's Products contain elevated levels of PFAS, as explained *supra* ¶¶ 22-23.

### D.     Health Hazards of PFAS and Regulatory Background

43.     In 2017, leading cancer experts from the World Health Organization's International Agency for Research on Cancer ("**IARC**") declared PFAS as a "possible human carcinogen," based on correlations with kidney and testis cancer in subjects who were heavily exposed to the toxins.[50] California listed perfluorooctanoic acid ("**PFOA**"), one of the most detected types of PFAS, in its

---

[45] Calvert, L. et al., *Assessment of the emerging threat posed by perfluoroalkyl and polyfluoroalkyl substances to male reproduction in humans*. FRONTIERS IN ENDOCRINOLOGY, 12 (2022), https://www.frontiersin.org/articles/10.3389/fendo.2021.799043. (Last visited June 26, 2024).

[46] *Your activewear could be leaching toxic chemicals—Here's what to do*, NZ HERALD (Nov. 3, 2023), https://www.nzherald.co.nz/lifestyle/your-gym-clothes-could-be-leaching-toxic-chemicals-new-study-reveals/DSWZ5GI2SNEBJD36OYMEUOO3TU/. (Last visited June 26, 2024).

[47] *"Forever chemicals" called pfas show up in your food, clothes, and home*, NATURAL RESOURCES DEFENSE COUNCIL (Apr. 12, 2023), https://www.nrdc.org/stories/forever-chemicals-called-pfas-show-your-food-clothes-and-home. (Last visited June 26, 2024).

[48] *Your activewear could be leaching toxic chemicals—Here's what to do, supra* note 47.

[49] *Per- and Polyfluorinated Substances (PFAS) Fact Sheet*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/biomonitoring/PFAS_FactSheet.html. (Last visited June 26, 2024).

[50] *PFAS Exposure and Risk of Cancer*, NATIONAL CANCER INSTITUTE. (Last visited June 26, 2024).

Proposition 65 registry of chemicals that "cause birth defects or other reproductive harm" and "cause cancer."[51,52]

44.    PFAS are synthetic, long-lasting chemicals of industry, the components of which break down very slowly over time.[53] Their inability to break down, combined with their potential to accumulate in people, animals, and the environment over time, earned them the ominous name, "forever chemicals."[54] PFAS can be found in drinking water, soil and water at/near waste sites, fire extinguishing foam, facilities that produce/use PFAS, clothing and clothing packaging, household products, personal care products, and biosolids.[55]

45.    PFAS are synthetic chemicals that have been used in consumer products since the 1940s.[56] PFAS are particularly dangerous due to their tendency to bioaccumulate in the human body.[57, 58] A study analyzed 21 samples of PFAS, including PFOA, from 99 samples of human autopsy tissues.[59] The presence of PFAS was found in every human tissue, and accumulation of PFAS in tissues was observed as well.[60] When entering the body, "PFAS bind to albumin in the

---

[51] Wee, S. Y., & Aris, A. Z. *Revisiting the "forever chemicals", PFOA and PFOS exposure in drinking water.* NPJ CLEAN WATER, *6*(1), 1–16 (Aug. 21, 2023), https://doi.org/10.1038/s41545-023-00274-6. (Last visited June 26, 2024).

[52] *See*, CALIFORNIA OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT https://www.p65warnings.ca.gov/fact-sheets/pfoa-perfluorooctanoic-acid. (Last visited June 26, 2024).

[53] *PFAS Explained*, EPA (Oct. 25, 2023), https://www.epa.gov/pfas/pfas-explained.

[54] *Per- and Polyfluoroalkyl Substances (PFAS)*, EPA (Apr. 10, 2024), https://www.epa.gov/pfas; *Our Current Understanding of the Human Health and Environmental Risks of PFAS, supra* note 5.

[55] *Id.*

[56] *Per- and Polyfluoroalkyl Substances (PFAS) and Your Health*, AGENCY FOR TOXIC SUBSTANCES AND DISEASE REGISTRY (Jan. 18, 2024), https://www.atsdr.cdc.gov/pfas/index.html. (Last visited June 26, 2024).

[57] *History and Use of Per- and Polyfluoroalkyl Substances (PFAS) Found in the Environment*, INTERSTATE TECHNOLOGY REGULATORY COUNCIL (Sept. 2023), https://pfas-1.itrcweb.org/wp-content/uploads/2023/10/HistoryandUse_PFAS_Fact-Sheet_Sept2023_final.pdf. (Last June 26, 2024).

[58] Pérez, F. et. al., *Accumulation of perfluoroalkyl substances in human tissues*. ENVIRONMENT INTERNATIONAL, 59, 354–362 (2013), https://doi.org/10.1016/j.envint.2013.06.004. (Last visited June 26, 2024).

[59] *Id.*

[60] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

blood stream and accumulate within the body's protein-rich tissues."[61] PFAS's "high propensity to accumulate in biological systems" threatens the health of those exposed to the chemicals.[62]

46.     Peer-reviewed scientific studies show that exposure to certain levels of PFAS lead to negative reproductive effects, such as decreased fertility and increased high blood pressure in pregnant women; negative developmental effects, or delays in children, including low birth weight, accelerated puberty, bone variations, or behavioral changes; increased risk of cancers, including prostate, kidney, and testicular cancers; reduced ability of the body's immune system to fight infections, including reduced vaccine response; interference with the body's natural hormones; and increased cholesterol levels and risk of obesity.[63, 64] Studies have shown that even low level exposure to PFAS result in suppression of the immune system, endocrine disruption, accelerated puberty, liver damage and thyroid changes.[65] Thus, PFAS present an immediate health risk to consumers, and over time, that risk only grows as the PFAS accumulate in consumers' bodies.

47.     In response to their negative health consequences, the EPA proposed regulations for maximum levels of certain PFAS in drinking water, estimating that its rule will prevent thousands of deaths and reduce tens of thousands of PFAS-attributable illnesses.[66] Consumers now reasonably seek to avoid unnecessary exposure to PFAS to reduce risk of harm to their health and the environment, and when they are exposed to information about toxic chemicals like PFAS in products, they make different purchase decisions, where possible. Responsible companies that remove toxic chemicals like PFAS from their products and processes also reasonably expect, and in fact derive, a competitive advantage in the marketplace.

---

[61] Calvert, L. et al., *Assessment of the emerging threat posed by perfluoroalkyl and polyfluoroalkyl substances to male reproduction in humans*. FRONTIERS IN ENDOCRINOLOGY, 12 (2022), https://www.frontiersin.org/articles/10.3389/fendo.2021.799043. (Last visited June 26, 2024).

[62] *Id.*

[63] *Our Current Understanding of the Human Health and Environmental Risks of PFAS, supra* note 5.

[64] Cook, *supra* note 6.

[65] *PFAS*, EWG (Apr. 10, 2024), https://www.ewg.org/tapwater/reviewed-pfcs.php.

[66] *Proposed PFAS National Primary Drinking Water Regulation*, U.S. ENVIRONMENTAL PROTECTION AGENCY, https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas. (Last visited June 26, 2024).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

48.     The Centers for Disease Control and Prevention's ("**CDC**") biomonitoring studies reveal that four PFAS are likely in the blood of nearly every American,[67] which the EWG believes is a gross understatement.[68]

49.     The EPA notes the following harms from PFAS:[69]

- Reproductive effects such as decreased fertility or increased health blood pressure in pregnant women.

- Developmental effects or delays in children, including low birth weight, accelerated puberty, bone variations, or behavioral changes.

- Increased risk of some cancers, including prostate, kidney, and testicular cancers.

- Reduced ability of the body's immune system to fight infections, including reduced vaccine response.

- Interference with the body's natural hormones.

- Increased cholesterol levels and/or risk of obesity.

50.     PFAS have dangerous effects on the human body, including altered metabolism and increased risk of being overweight or obese, reduced fetal growth and fertility, "altered immune and thyroid function, liver disease, lipid and insulin dysregulation, kidney disease, adverse reproductive and developmental outcomes, and cancer."[70,71]

---

[67] *Per- and Polyfluorinated Substances (PFAS) Factsheet*, CDC (May 2, 2022), https://www.cdc.gov/biomonitoring/PFAS_FactSheet.html. (Last visited June 26, 2024).

[68] Evans, S. et al., *PFAS Contamination of Drinking Water Far More Prevalent Than Previously Reported*, ENVIRONMENTAL WORKING GROUP (2020), https://www.ewg.org/research/national-pfas-testing. (emphasis added) (Last visited June 26, 2024).

[69] *Our Current Understanding of the Human Health and Environmental Risks of PFAS*, *supra* note 5.

[70] Fenton, S. et al., *Per- and polyfluoroalkyl substance toxicity and human health review: Current state of knowledge and strategies for informing future research*. ENVIRONMENTAL TOXICOLOGY AND CHEMISTRY, 40(3), 606–630 (2021), https://doi.org/10.1002/etc.4890. (Last visited June 26, 2024).

[71] Kielsen, Katrine et al. *"Antibody response to booster vaccination with tetanus and diphtheria in adults exposed to perfluorinated alkylates."* JOURNAL OF IMMUNOTOXICOLOGY, 13,2 (2016), https://pubmed.ncbi.nlm.nih.gov/26181512/. (Last visited June 26, 2024).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

51.    PFAS cause low birth weight, birth defects, delayed development, and newborn deaths.[72] Children with increased exposure to PFAS have weaker immune responses to vaccinations and suffer additional childhood infections.[73,74]

52.    PFOA exposure is positively correlated with testicular and kidney cancers.[75] Specifically, researchers have found for each unit increase in the amount of PFOA exposure, the risk of testicular cancer increases by 34%, and the risk of kidney cancers increases by 10%.[76]

53.    Increased exposure to PFAS leads to higher cholesterol levels. The CDC's National Health and Nutrition Examination Survey, with participants ranging from 12 to 80 years of age, showed that the participants in the highest quartile of perfluorooctane sulfonic acid ("**PFOS**") exposure had cholesterol levels that were 13.4 mg/dL higher than the participants within the lowest quartile of PFOS exposure age.[77]

54.    PFAS have a negative effect on thyroid function. The thyroid is critical for cardiovascular health, fertility, fetal neurodevelopment, and metabolism.[78] Studies have confirmed the disruptive effects of PFAS exposure on the circulation of thyroid hormone levels in the body.[79] In a study involving pregnant mice, PFAS were found to have accumulated in their placentas, impacting fetal development.[80] In humans, PFAS exposure had produced significant thyroid functioning changes in pregnant mothers and their newborns.[81] In another study, higher PFAS

---

[72] "What are the health effects of PFAS?" ATSDR, https://www.atsdr.cdc.gov/pfas/health-effects/index.html. (Last visited June 26, 2024).
[73] *Id.*
[74] *Get the facts: Pfas "forever chemicals."* TOXIC-FREE FUTURE, https://toxicfreefuture.org/toxic-chemicals/pfas-forever-chemicals/. (Last visited June 26, 2024).
[75] Barry, V. et al., *Perfluorooctanoic acid (Pfoa) exposures and incident cancers among adults living near a chemical plant.* ENVIRONMENTAL HEALTH PERSPECTIVES, 121(11–12), 1313–1318 (2013). https://doi.org/10.1289/ehp.1306615. (Last visited June 26, 2024).
[76] *Id.*
[77] Nelson, J. et al*., Exposure to polyfluoroalkyl chemicals and cholesterol, body weight, and insulin resistance in the general U.S. population.* ENVIRONMENTAL HEALTH PERSPECTIVES, 118(2), 197–202 (2010), https://doi.org/10.1289/ehp.0901165. (Last visited June 26, 2024).
[78] Coperchini, F. et al., *Thyroid disrupting effects of old and new generation pfas.* FRONTIERS IN ENDOCRINOLOGY, 11, 612320 (2021), https://doi.org/10.3389/fendo.2020.612320. (Last visited June 26, 2024).
[79] *Id.*
[80] *Id.*
[81] *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

concentrations in pregnant women led to lower birth weight and ponderal index (body mass) of their newborns.[82]

55.    Research from a national health survey on the general population concluded that increased levels of PFAS in the blood increased risk of fatty liver disease and worsened liver function.[83] These findings show that PFAS pose a higher risk for chronic liver disease in humans.[84]

**E.    Defendant's Products Cause Serious and Irreversible and Environmental Harms**

56.    PFAS also pose a serious threat to the environment. PFAS have been found in water sources, including rivers and lakes, and in both terrestrial and aquatic animals.[85] Under normal conditions, "it can take over 1,000 years for some PFAS to degrade."[86,87,88] PFAS are constantly entering the environment through multiple stages in the manufacturing process. PFAS can be released into the environment during the chemical manufacturing process and through chemical additives that are applied to the finished product.[89] Since PFAS cannot be removed from water

---

[82] Zheng, T. et al., *Adverse birth outcomes related to concentrations of per- and polyfluoroalkyl substances (Pfas) in maternal blood collected from pregnant women in 1960–1966.* ENVIRONMENTAL RESEARCH, 241, 117010 (2024), https://doi.org/10.1016/j.envres.2023.117010. (Last visited June 26, 2024).

[83] Zhang, X. et al*., Association of per- and polyfluoroalkyl substance exposure with fatty liver disease risk in US adults.* JHEP REPORTS, 5(5), 100694 (2024), https://doi.org/10.1016/j.jhepr.2023.100694. (Last visited June 26, 2024).

[84] *Id.*

[85] *Id.*

[86] *PFAS, what is it, why is it in our environment and why is it a problem*? PFAS. https://www.pfasfree.org.uk/about-pfas. (Last visited June 26, 2024).

[87] Russell, M. H. et al., *Investigation of the biodegradation potential of a fluoroacrylate polymer product in aerobic soils.* ENVIRONMENTAL SCIENCE & TECHNOLOGY, 42(3), 800–807 (2008), https://doi.org/10.1021/es0710499. (Last visited June 26, 2024).

[88] Washington, J. W. et al., *Degradability of an acrylate-linked, fluorotelomer polymer in soil.* ENVIRONMENTAL SCIENCE & TECHNOLOGY, 43(17), 6617–6623 (2009), https://doi.org/10.1021/es9002668. (Last visited June 26, 2024).

[89] Hansen, K. J. et al., *Quantitative characterization of trace levels of pfos and pfoa in the tennessee river.* ENVIRONMENTAL SCIENCE & TECHNOLOGY, 36(EPA8), 1681–1685 (2002), https://doi.org/10.1021/es010780r. (Last visited June 26, 2024).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

through standard water treatment processes, they move from water supplies into agricultural fields.[90,91]

57.     PFAS also pose a threat to environmental and human health during the manufacturing process. Leaks from manufacturing facilities can spill PFAS into groundwater and soil.[92]

58.     PFAS are synthetic chemicals that have a chain of carbon and fluorine atoms with characteristically strong bonds.[93] PFAS emissions plague entire ecosystems: in one example, a fluorochemical manufacturing facility discharged wastewater containing PFAS into the Cape Fear River in North Carolina. As a result of the wastewater contamination, scientists detected PFAS in blood samples from Wilmington, North Carolina, residents,[94] as well as in striped bass,[95] and American alligators.[96] Both wildlife studies found PFAS to be immune toxicants, resulting in autoimmune-like pathology in American alligators and altered immune and liver function in striped bass.

---

[90] Becker, A. M. et al., *Perfluorooctane surfactants in waste waters, the major source of river pollution.* CHEMOSPHERE, 72(1), 115–121 (2008), https://doi.org/10.1016/j.chemosphere.2008.01.009. (Last visited June 26, 2024).

[91] *PFAS, what is it, why is it in our environment and why is it a problem*? PFAS. https://www.pfasfree.org.uk/about-pfas. (Last visited June 26, 2024).

[92] *Textile manufacturing and pfas: Three phases of risk.* HALEY ALDRICH. https://www.haleyaldrich.com/resources/articles/textile-manufacturing-and-pfas-three-phases-of-risk/. (Last visited June 26, 2024).

[93] *"Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS),"* NATIONAL INSTITUTE OF ENVIRONMENTAL HEALTH SCIENCES, https://www.niehs.nih.gov/health/topics/agents/pfc/index.cfm#:~:text=More%20than%209%2C000%20PFAS%20have%20been%20identified. (Last visited June 26, 2024).

[94] Kotlarz, Nadine et al., *"Measurement of Novel, Drinking Water-Associated PFAS in Blood from Adults and Children in Wilmington, North Carolina."* ENVIRONMENTAL HEALTH PERSPECTIVES, https://pubmed.ncbi.nlm.nih.gov/32697103/. (Last visited June 26, 2024).

[95] Guillette, T. C. et al., *"Elevated levels of per- and polyfluoroalkyl substances in Cape Fear River Striped Bass (Morone saxatilis) are associated with biomarkers of altered immune and liver function."* ENVIRONMENT INTERNATIONAL 136 (2020), https://pubmed.ncbi.nlm.nih.gov/32044175/ (Last visited June 26, 2024).

[96] Guillette, T C et al., *"Blood concentrations of per- and polyfluoroalkyl substances are associated with autoimmune-like effects in American alligators from Wilmington, North Carolina."* FRONTIERS IN TOXICOLOGY 4:1010185 (Oct. 20, 2022), https://pubmed.ncbi.nlm.nih.gov/36337916/. (Last visited June 26, 2024).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

59.　　Unlike other chemicals, PFAS are uniquely harmful to the environment. PFAS are not removed by conventional wastewater treatment plants, and instead run off into lakes, streams, and groundwater, or as "sludge." PFAS contaminate sludge, or biosolids, extracted from the sewage treatment process,[97] which is otherwise nutrient-rich and recycled as fertilizer.[98] Once PFAS are cycled back into the soil, crops readily sequester the chemical, causing biomagnification up the food chain, furthering toxic accumulation in animals and humans.[99] PFAS are also absorbed by plants from industrial emissions, irrigation with contaminated water, leachates from landfill sites, and pesticide application.[100]

60.　　The Products are not sustainable, environmentally conscious, or designed with consumers' wellness in mind, as promised. Instead, with regular use, they introduce "forever chemicals" into the human body, water supply, and broader ecosystems, committing irreversible human and environmental harm.

**F.　　Plaintiffs and Reasonable Consumers Were Misled into Buying the Products to Their Detriment**

61.　　**Reasonable Consumer's Perception.** The Material Omission and Challenged Representations lead reasonable consumers, like Plaintiffs, into believing that the Products conform to the Challenged Representations—meaning, consumers are led to believe that the Products are safe for everyday use and wear, environmentally sustainable, and designed specifically to further human health, and are thus, free from toxic chemical substances like PFAS.

---

[97] *"Wastewater Treatment Plants/ Industrial Pretreatment Program,"* MICHIGAN PFAS ACTION RESPONSE TEAM, https://www.michigan.gov/pfasresponse/investigations/wastewater. (Last visited June 26, 2024).

[98] *"What are biosolids, how are they used, and are they safe?"* WATER RESOURCES DIVISION, MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY, https://www.michigan.gov/-/media/Project/Websites/egle/Documents/Programs/WRD/Biosolids/biosolids-what-how-safe.pdf?rev=b54e28b954a54dd8a43153688a1151b3#:~:text=Biosolids%20are%20the%20nutrient%2Drich,a%20fertilizer%20and%20soil%20amendment. (Last visited June 26, 2024).

[99] Wang, W. et al., *"Uptake and accumulation of per- and polyfluoroalkyl substances in plants,"* CHEMOSPHERE, SCIENCE DIRECT (2020), https://www.sciencedirect.com/science/article/pii/S0045653520317793. (Last visited June 26, 2024).

[100] *Id.*

Clarkson Law Firm, P.C.　|　22525 Pacific Coast Highway　|　Malibu, CA 90265

CLASS ACTION COMPLAINT

62.    **Materiality.** The Challenged Representations and Material Omission are material to reasonable consumers, including Plaintiffs, in deciding to buy the Products—meaning that it is important to consumers that the Products are safe for everyday wear and use, environmentally sustainable, and designed specifically to promote human health, and, thus, are free from PFAS toxic to them with regular use and to the environment at large.

63.    **Reliance.** The Class, including Plaintiffs, reasonably relied on the Challenged Representations and Material Omission in deciding to purchase the Products.

64.    **Falsity.** The Challenged Representations and Material Omission are deceptive because the Products contain toxic substances, PFAS, which are harmful to the environment, pose an unreasonable safety hazard to human health with regular use, and are especially unsafe for everyday wear and use.

65.    **Consumers Lack Knowledge of Falsity.** The Class who purchased the Products, including Plaintiffs, did not know and had no reason to know, at the time of purchase, that the Products' Challenged Representations and Material Omission are false, misleading, deceptive, and unlawful. Nothing on Defendant's websites displays or advertising adequately, expressly, unambiguously, or conspicuously informs consumers that the Challenged Representations are false—specifically, that the Products contain toxic chemical substances - PFAS, and thus, are unsafe for everyday wear and use, and are hazardous to both environment and public health, especially to consumers who wear the Products all day or all night long, as per directed and intended use by Defendant. Even worse, Defendant's Products are designed to be worn on the underside of their wrist, where the body's absorption rate of the toxic chemicals is heightened, and where sweat increases the absorption of PFAS. The Products' advertising and marketing unambiguously advertise the Products as being safe for everyday and prolonged use to promote health and environmental sustainability. The Products' advertisements do not contain any clear, conspicuously displayed statement(s), reasonably proximate to the Challenged Representations, where the reasonable consumers are likely to notice, read, and understand that the Challenged Representations are not true, and instead, the Products contain dangerous toxic chemicals, and are not environmentally sustainable nor safe for everyday wear.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

66.    **Defendant's Knowledge.** Defendant knew, or should have known, that the Challenged Representations and Material Omission are false, misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations and Material Omission to Plaintiffs and the Class. Defendant intentionally and deliberately used the Challenged Representations, alongside the Products' design/purpose to cause Plaintiffs and similarly situated consumers to buy the Products believing that the Challenged Representations are true.

a.    **Knowledge of Reasonable Consumers' Perception.** Defendant knew or should have known that the Challenged Representations and Material Omission would lead reasonable consumers into believing that the Products are safe for everyday wear and use, environmentally sustainable, and designed specifically to promote human health, and, thus, are free from toxic chemicals like PFAS.

b.    **Knowledge of Falsity.** Defendant manufactured and marketed the Products with the Challenged Representations, but Defendant opted to make Products that do not conform with those representations. Specifically, Defendant advertised, labeled, and packaged the Products with the Challenged Representations, but chose to manufacture the Products with toxic chemicals, PFAS, which pose an unreasonable safety hazard to the environment and a serious risk of harm to human health, especially when worn daily for prolonged period of time on the wrist – as directed by Defendant - where the body's absorption rate is heightened.

c.    **Knowledge of Materiality.** Defendant knew or should have known of the Challenged Representations materiality to consumers. Manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or Products line, shaping the consumers' expectations, because they believe those repeated messages will drive consumers to buy the Products. Here, the repeated use of the Challenged Representations throughout Defendant's

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

marketing campaign demonstrates Defendant's awareness that the falsely advertised Products-attributes are important to consumers. It also evidences Defendant's intent to convince consumers that the Products conform to the Challenged Representations and, ultimately, drive sales.

d.    **Defendant's Continued Deception, Despite Its Knowledge.** Defendant, as the manufacturer and marketer of the Products, had exclusive control over the Challenged Representations'—i.e., Defendant readily and easily could have stopped using the Challenged Representations to sell the Products. However, despite Defendant's knowledge of the Challenged Representations' falsity, and Defendant's knowledge that consumers reasonably rely on the representations in deciding to buy the Products, Defendant deliberately chose to market the Products with the Challenged Representations thereby misleading consumers into buying or overpaying for the Products. Thus, Defendant knew, or should have known, at all relevant times, that the Challenged Representations mislead reasonable consumers, such as Plaintiffs, into buying the Products to attain the product-attributes that Defendant falsely advertised and warranted.

67.    **Duty to Disclose Material Omission.** Defendant had, at all relevant times, an obligation to disclose the Material Omission—that the Products contain toxic chemicals, PFAS, and, thus, pose an unreasonable safety hazard to both the environment and human health. Defendant knew or should have known that reasonable consumers would perceive the Products and Material Omission to mean that the Products do not contain toxic chemicals like PFAS by advertising them as safe for everyday wear and use, economically sustainable and specifically designed to promote human health. Defendant also knew that this attribute – ability to wear the Products daily and use them all day or all night long was material to consumers and would serve as important purchasing factors. To advance its sales, and ensure the prolonged daily use of the Products, Defendant made the Challenged Representations, knowing that Plaintiffs and the Class would reasonably rely on them, in deciding to purchase the Products. Defendant also knew or should have known that the

31

Challenged Representations were false—that the Products contain toxic PFAS and, thus, are not economically sustainable and are unsafe for everyday wear and use.

68.      **Detriment.** Plaintiffs and similarly situated consumers would not have purchased the Products or would not have overpaid a price premium for them, if they had known that the Challenged Representations were false and, therefore, the Products do not have the attribute claimed, promised, warranted, advertised, and/or represented. Accordingly, based on Defendant's Challenged Representations and Material Omission, reasonable consumers, including Plaintiffs, purchased the Products to their detriment.

**G.    No Adequate Remedy at Law**

69.      Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a.      **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b.      **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representations and omission, across a multitude of media platforms,

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    including the Products' advertising and marketing, over a long period of time,

2    in order to gain an unfair advantage over competitor products and to take

3    advantage of consumers' desire for Products that comport with the Challenged

4    Representations. The UCL also creates a cause of action for violations of law

5    (such as statutory or regulatory requirements and court orders related to similar

6    representations and omissions made on the type of products at issue).  Thus,

7    Plaintiffs and Class members may be entitled to restitution under the UCL,

8    while not entitled to damages under other causes of action asserted herein (e.g.,

9    the FAL requires actual or constructive knowledge of the falsity; the CLRA is

10    limited to certain types of Plaintiffs (individuals who seek or acquire, by

11    purchase or lease, any goods or services for personal, family, or household

12    purposes) and other statutorily enumerated conduct)).   Similarly, unjust

13    enrichment/restitution is broader than breach of warranty. For example, in

14    some states, breach of warranty may require privity of contract or pre-lawsuit

15    notice, which are not typically required to establish unjust

16    enrichment/restitution.  Thus, Plaintiffs and Class members may be entitled to

17    recover under unjust enrichment/restitution, while not entitled to damages

18    under breach of warranty, because they purchased the Products from third-

19    party retailers or did not provide adequate notice of a breach prior to the

20    commencement of this action.

21    c.    **Injunctive Relief to Cease Misconduct and Dispel Misperception.**

22    Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class

23    because Defendant continues to misrepresent the Products with the

24    Challenged Representations and Omission. Injunctive relief is necessary to

25    prevent Defendant from continuing to engage in the unfair, fraudulent, and/or

26    unlawful conduct described herein and to prevent future harm—none of which

27    can be achieved through available legal remedies (such as monetary damages

28    to compensate past harm). Further, injunctive relief, in the form of affirmative

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

disclosures, is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements providing accurate information about the Product's true nature; and/or requiring prominent qualifications and/or disclaimers concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiffs are *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiffs' investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future sales of Products, and quantities of past/future sales of Products.

d.   **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e.   **California vs. Nationwide Class Claims**. Violations of the FAL and CLRA are claims asserted on behalf of Plaintiffs and the California Subclass against Defendant, while UCL, fraud, fraudulent inducement, fraudulent omission or concealment, fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment/restitution claims are asserted on behalf of Plaintiffs and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

f.    **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action, and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class or subclass. Plaintiffs therefore reserve Plaintiffs' right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiffs and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## VI.    CLASS ACTION ALLEGATIONS

70.    **Class Definition.** Plaintiffs bring this action as a class action on behalf of themselves and all others similarly situated as members of the Class defined as follows:

**Nationwide Class**

All residents of the United States who, within the applicable statute of limitations periods, purchased the Products, containing the Challenged Representations or Material Omission on the Products' advertising and marketing, for purposes other than resale ("**Nationwide Class**"); and

**California Subclass**

All residents of California who, within four years prior to the filing of this action, purchased the Products, containing the Challenged Representations or Material Omission on the Products' advertising and marketing, for purposes other than resale ("**California Subclass**").

71.     Collectively, the Nationwide Class and California Subclass are referred to as the "**Classes**".

72.     **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

73.     **Reservation of Rights to Amend the Class Definition.** Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

74.     **Numerosity.** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

75.     **Common Questions Predominate.** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a.     Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b.     Whether Defendant's conduct of advertising and selling the Products as safe for everyday wear and use, environmentally sustainable, and designed specifically to promote human health, and thus, are free from toxic PFAS.

c.     Whether Defendant's conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*;

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

d.      Whether Defendant used deceptive representations and Material Omission in connection with the sale of the Products in violation of Civil Code section 1750, *et seq.*;

e.      Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq.*;

f.      Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq.*;

g.      Whether Defendant's advertising and marketing of the Products are misleading in violation of Business and Professions Code section 17500, *et seq.*;

h.      Whether Defendant knew or by the exercise of reasonable care should have known its advertising and marketing were and are misleading in violation of Business and Professions Code section 17500, *et seq.*;

i.      Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

j.      Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

k.      Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

l.      Whether Plaintiffs and the Class paid more money for the Products than they actually received;

m.      How much more money Plaintiffs and the Class paid for the Products than they actually received;

n.      Whether Plaintiffs and the Class are entitled to injunctive relief; and

o.      Whether Defendant was unjustly enriched by its unlawful conduct.

76.      **Predominance**. The common questions of law and fact predominate over questions that affect only individual Class Members.

77.    **Typicality.**  Plaintiffs' claims are typical of the claims of the Class Members they seek to represent because Plaintiffs, like the Class Members purchased Defendant's misleading and deceptive Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Defendant's conduct.  Plaintiffs' and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

78.    **Adequacy.** Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the Class Members Plaintiffs seek to represent. Plaintiffs will fairly and adequately protect Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

79.    **Ascertainability.** Class Members can easily be identified by an examination and analysis of the business records regularly maintained by Defendant, among other records within Defendant's possession, custody, or control. Additionally, further Class Member data can be obtained through additional third-party retailers who retain customer records and order histories.

80.    **Superiority and Substantial Benefit.** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.    The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.    Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy its ill-gotten gains;

c.    Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

no substantial interest in individually controlling the prosecution of individual actions;

d.   When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and Class Members can seek redress for the harm caused to them by Defendant.

81.   **Inconsistent Rulings.** Because Plaintiffs seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

82.   **Injunctive/Declaratory Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole.

83.   **Manageability.** Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## VII.   **CAUSES OF ACTION**

### **COUNT ONE**

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

**(*On Behalf of the California Subclass and Nationwide Class*)**

84.   **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs ¶¶ 1-27, 31-38, 39-83, and 154, as though fully set forth herein.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

85.    **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq*., on behalf of Plaintiffs and a California Subclass who purchased the Products within the applicable statute of limitations.

86.    **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

87.    **False Advertising Claims.** Defendant, in its advertising and marketing of the Products, made misleading statements and a fraudulent omission regarding the quality and characteristics of the Products—specifically, the Challenged Representations and Material Omission—despite the fact the Products contain PFAS not environmentally sustainable nor safe for everyday wear and use, nor are they designed specifically to promote human health, as advertised by Defendant. Instead, the Products pose an unreasonable safety hazard to both environment, and human health, especially when worn on the underside of the wrist for prolonged hours of days and/or nights, as directed by Defendant, where the body's absorption rate of the toxic chemicals is heightened. Furthermore, as much as 60% of toxic PFAS may be topically absorbed into the skin, and sweat may increase the already hazardous rate of absorption. Worse yet, Defendant recommends its Products be worn during exercise, when consumers are likely to perspire, and thus exacerbate absorption. Such claims and omissions appear on the advertising and marketing of the Products, which are sold online, at retail stores, and point-of-purchase displays.

88.    **Defendant's Deliberately Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising because the Products contain PFAS – toxic chemicals, and are thus, not economically sustainable, and are dangerous for human health when are worn every day or every night, and during exercise, as directed and intended by Defendant. Further, it is worn on the underside of the wrist, where the body's absorption rate of the toxic chemicals is heightened, and where sweat can increase the rate of PFAS absorption. Defendant knew (and knows) that the Products contain PFAS pose an unreasonable safety hazard, and yet Defendant intentionally advertised and marketed the Products

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

to deceive reasonable consumers and continues to do so presently.

89.    **Misleading Advertising Claims Cause Purchase of Products.** Defendant's advertising and marketing of the Products led to, and continues to lead to, reasonable consumers, including Plaintiffs, believing that the Products are safe for everyday wear and use, environmentally sustainable, and specifically designed to promote human health, and, thus, are free from toxic chemicals like PFAS.

90.    **Injury in Fact.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon the Challenged Representations and Material Omission—namely Plaintiffs and the California Subclass lost the purchase price for the Products they bought from the Defendant.

91.    **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

92.    **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

93.    **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

94.    **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiffs and the members of the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising and marketing the sale and use of the Products. Likewise, Plaintiffs and the members of the California Subclass seek an order requiring Defendant to disclose such misrepresentations and omission, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

95.    **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiffs and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

96.    **Punitive Damages.** Plaintiffs seek punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiffs and the California Subclass. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiffs. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive

1    Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was

2    committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing

3    agents of Defendant.

4         97.    For all Class members outside of the California Subclass, these claims are brought

5    under the relevant consumer protection statute for the state in which they reside. For each state, the

6    relevant statutes are as follows: Alabama—Deceptive Trade Practices Act (Ala. Code § 8-19-1, *et*

7    *seq.*); Alaska—Unfair Trade Practices and Consumer Protection Act (Alaska Stat. § 45.50.471, *et*

8    *seq.*); Arizona—Consumer Fraud Act (Ariz. Rev. Stat. Ann. § 44-1521, *et seq.*); Arkansas—

9    Deceptive Trade Practices Act (Ark. Code Ann. § 4-88-101, *et seq.*); Colorado—Consumer

10   Protection Act (Colo. Rev. Stat. § 6-1-101, *et seq.*); Connecticut—Connecticut Unfair Trade

11   Practices Act (Conn. Gen. Stat. § 42-110a, *et seq.*); Delaware—Consumer Fraud Act (Del. Code

12   Ann. tit. 6, § 2511, *et seq.*); District of Columbia—D.C. Code § 28-3901, *et seq.*; Florida—

13   Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.20, *et seq.*); Georgia—Fair Business

14   Practices Act (Ga. Code Ann. § 10-1-390, *et seq.*); Hawaii—Haw. Rev. Stat. § 480-1, *et seq.*);

15   Idaho—Consumer Protection Act (Idaho Code Ann. § 48-601, *et seq.*); Illinois—Consumer Fraud

16   and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1, *et seq.*); Indiana—Deceptive

17   Consumer Sales Act (Ind. Code § 24-5-0.5-1, *et seq.*); Iowa—Iowa Code § 7.14.16, *et seq.*);

18   Kansas—Consumer Protection Act (Kan. Stat. Ann. § 50-623, *et seq.*); Kentucky—Consumer

19   Protection Act (Ky. Rev. Stat. Ann. § 367.110, *et seq.*); Louisiana—Unfair Trade Practices and

20   Consumer Protection Law (La. Rev. Stat. Ann. § 51:1401, *et seq.*); Maine—Unfair Trade Practices

21   Act (Me. Rev. Stat. Ann. tit. 5, § 205A, *et seq.*); Maryland—Maryland Consumer Protection Act

22   (Md. Code Ann., Com. Law § 13-101, *et seq.*); Massachusetts—Regulation of Business Practice

23   and Consumer Protection Act (Mass. Gen. Laws Ann. ch. 93A, §§ 1-11); Minnesota—False

24   Statement in Advertising Act (Minn. Stat. § 8.31, Minn. Stat. § 325F.67), Prevention of Consumer

25   Fraud Act (Minn. Stat. § 325F.68, *et seq.*); Mississippi—Consumer Protection Act (Miss. Code

26   Ann. § 75-24, *et seq.*); Missouri—Merchandising Practices Act (Mo. Rev. Stat. § 407.010, *et seq.*);

27   Montana—Unfair Trade Practices and Consumer Protection Act (Mont. Code. Ann. § 30-14-101,

28   *et seq.*); Nebraska—Consumer Protection Act (Neb. Rev. Stat. § 59-1601); Nevada—Trade

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Regulation and Practices Act (Nev. Rev. Stat. § 598.0903, *et seq.*, Nev Rev. Stat. § 41.600); New Hampshire—Consumer Protection Act (N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*); New Jersey—N.J. Stat. Ann. § 56:8-1, *et seq.*); New Mexico—Unfair Practices Act (N.M. Stat. § 57-12-1, *et seq.*); New York—N.Y. Gen. Bus. Law §§ 349, 350, N.Y. Exec. Law § 63(12); North Carolina—N.C. Gen. Stat. § 75-1.1, *et seq.*); North Dakota—N.D. Cent. Code § 51-15-01, *et seq.*); Ohio—Consumer Sales Practices Act (Ohio Rev. Code Ann. § 1345.01, *et seq.*); Oklahoma—Consumer Protection Act (Okla. Stat. tit. 15, § 751, *et seq.*); Oregon—Unlawful Trade Practices Law (Or. Rev. Stat. § 646.605, *et seq.*); Pennsylvania—Unfair Trade Practices and Consumer Protection Law (73 Pa. Stat. Ann. § 201-1, *et seq.*); Rhode Island—Unfair Trade Practice and Consumer Protection Act (R.I. Gen. Laws § 6-13.1-1, *et seq.*); South Carolina—Unfair Trade Practices Act (S.C. Code Ann. § 39-5-10, *et seq.*); South Dakota—Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws § 37-24-1, *et seq.*); Tennessee—Consumer Protection Act (Tenn. Code Ann. § 47-18-101, *et seq.*); Texas—Deceptive Trade Practices—Consumer Protection Act (Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*); Utah—Consumer Sales Practices Act (Utah Code Ann. § 13-11-1, *et seq.*); Vermont—Consumer Fraud Act (Vt. Stat. Ann. tit. 9, § 2451, *et seq.*); Virginia—Consumer Protection Act (Va. Code Ann. § 59.1-196, *et seq.*); Washington—Consumer Protection Act (Wash. Rev. Code § 19.86.010, *et seq.*); West Virginia—W. Va. Code § 46A-6-101, *et seq.*); Wisconsin—Wis. Stat. § 100.18, 100.20; Wyoming—Consumer Protection Act (Wyo. Stat. Ann. § 40-12-101, *et seq.*).

### *"Unfair" Prong*

98.   **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

99.   **Injury.** Defendant's action of mislabeling the Products with the Challenged Representations and omission does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive Products commensurate with their reasonable expectations, overpay for the Products, receive Products of lesser standards than what they

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

reasonably expected to receive, and are exposed to increased health risks. Consumers cannot avoid any of the injuries caused by Defendant's deceptive advertising and marketing of the Products. Accordingly, the injuries caused by Defendant's deceptive advertising and marketing outweigh any benefits.

100. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

101. **No Utility.** Here, Defendant's conduct of labeling the Products with the Challenged Representations and Material Omission when the Products contain PFAS, toxic chemical substances harmful to the environment, which also pose risk of serious harm to human health, especially when absorbed by the skin daily and all day long, and during exercise, as per use directed and intended by Defendant. The Products are also worn on the underside of the wrist, where the body's absorption rate of the toxic chemicals is heightened, and where sweat can increase PFAS absorption. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

102. **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

103. **Unfair Conduct.** Defendant's advertising and marketing of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations and omission constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

104. **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

105.   **Defendant's Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

106.   **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiffs and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of advertising and marketing the Products with the Challenged Representations.

107.   **Causation/Damages.** Plaintiffs and the California Subclass have suffered injury in fact, have lost money and were exposed to increased health risks as a result of Defendant's unfair conduct. Plaintiffs and the California Subclass paid an unwarranted premium for these Products. Specifically, Plaintiffs and the California Subclass paid for Products which were advertised as economically sustainable, safe for everyday wear and use, and designed specifically to promote human health, and, thus, free from toxic chemicals like PFAS. PFAS are harmful to the environment and pose serious risk of harm to the public, especially when they are worn daily for prolonged periods of time, such as every day or every night, and during exercise, as directed and intended by Defendant. Further, it is worn on the underside of the wrist, where the body's absorption rate of the toxic chemicals is heightened, and where sweat can increase the rate of PFAS absorption. Plaintiffs and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and marketing were deceptive. Accordingly, Plaintiffs seek damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Fraudulent" Prong*

108.   **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

109.   **Fraudulent & Material Challenged Representations and Omission.** Defendant used the Challenged Representations and Material Omission with the intent to sell the Products to consumers, including Plaintiffs and the California Subclass. The Challenged Representations and

Material Omission are deceptive, and Defendant knew, or should have known, of its deception. The Challenged Representations and omission are likely to mislead consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

110.    **Fraudulent Business Practice.** As alleged herein, the misrepresentations and omission by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

111.    **Reasonable and Detrimental Reliance.** Plaintiffs and the California Subclass reasonably and detrimentally relied on the material and deceptive Challenged Representations and omission to their detriment in that they purchased the Products.

112.    **Reasonably Available Alternatives.** Defendant has reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations and omission.

113.    **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

114.    **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiffs and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising and marketing the Products with the Challenged Representations and Material Omission.

115.    **Causation/Damages.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiffs paid an unwarranted premium for the Products. Specifically, Plaintiffs and the California Subclass paid for Products that are safe for everyday wear and use, environmentally sustainable, and designed to promote human health, and, thus, are free from PFAS. Instead, the Products contain dangerous toxic chemical substances, like PFAS, which are harmful to the environment and pose risk of serious harms to humans, especially when used as directed by Defendant – worn on the wrist all day – to track their fitness/health, or all night – to track their sleep. Plaintiffs and the California Subclass

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

1    would not have purchased the Products if they had known the truth. Accordingly, Plaintiffs seek

2    damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

3                                    ***"Unlawful" Prong***

4        116.    **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful

5    practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC*

6    *Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

7        117.    **Violations of CLRA and FAL.**  Defendant's advertising and marketing of the

8    Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and

9    California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in

10   the sections regarding those causes of action.

11       118.    **Fraud.**  Additionally, Defendant's use of the Challenged Misrepresentations to sell

12   the Products violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud),

13   1709-1710 (fraudulent deceit), and 1711 (deceit upon the public), as set forth above.

14       119.    **Additional Violations.** Defendant's conduct in making the deceptive

15   representations and omission described herein constitutes a knowing failure to adopt policies in

16   accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding

17   upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage

18   for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under

19   California Business & Professions Code sections 17200-17208. Additionally, Defendant's

20   misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572,

21   1573, 1709, 1710, 1711, and 1770, as well as the common law claims stated in this lawsuit.

22       120.    **Unlawful Conduct.** Defendant's advertising and marketing of the Products, as

23   alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct.

24   Defendant knew or should have known of its unlawful conduct.

25       121.    **Reasonably Available Alternatives.** Defendant had reasonably available

26   alternatives to further its legitimate business interests, other than the conduct described herein.

27   Defendant could have refrained from advertising the Products with the Challenged Representations

28   and Material Omission.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

122.    **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

123.    **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiffs and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of deceptive advertising of the Products.

124.    **Causation/Damages.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiffs and the California Subclass paid an unwarranted premium for the Products. Plaintiffs and the California Subclass would not have purchased the Products if they had known that Defendant purposely deceived consumers into believing that the Products are safe for everyday wear and use, environmentally sustainable, and designed specifically to promote human health, and are thus, free from toxic chemical substances like PFAS. PFAS are harmful to the environment and pose risks of serious harm to humans, especially when absorbed by skin every day or every night, and during exercise, as directed and intended by Defendant. Further, it is worn on the underside of the wrist, where the body's absorption rate of the toxic chemicals is heightened, and where sweat can increase the rate of PFAS absorption. Accordingly, Plaintiffs seek damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

## COUNT TWO

### Violation of California False Advertising Law

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

### (*On Behalf of the California Subclass*)

125.    **Incorporation by reference.** Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs ¶¶ 1-27, 31-38, 39-83, and 154, as though fully set forth herein.

126.    **California Subclass.** Plaintiffs bring this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

127.    **FAL Standard.**  The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

128. **Material Challenged Representations Disseminated to Public.** Defendant violated section 17500 when it advertised and marketed the Products through the unfair, deceptive, and misleading Material Omission and Challenged Representations disseminated to the public through the Products' advertising and marketing. These representations were deceptive because the Products do not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

129. **Knowledge.** In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

130. **Intent to Sell.** Defendant's Material Omission and Challenged Representations were specifically designed to induce reasonable consumers, like Plaintiffs and the California Subclass, to purchase the Products.

131. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiffs and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

132. **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay for a Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant was aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiffs. Defendant's misconduct is oppressive

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

### COUNT THREE

### Violation of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (*On Behalf of the California Subclass*)

133.   **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs ¶¶ 1-27, 31-38, 39-83, and 154, as though fully set forth herein.

134.   **California Subclass.** Plaintiffs bring this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

135.   **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

136.   **Goods/Services.** The Products are "goods," as defined by the CLRA in California Civil Code §1761(a) because they are watch bands (tangible chattel) that Plaintiffs and the Class purchased primary for personal purposes.

137.   **Defendant.** Defendant is "person," as defined by the CLRA in California Civil Code §1761(c) because it is a corporation.

138.   **Consumers.** Plaintiffs and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d) because they are individuals who purchased the Purchased Products for personal purposes.

139.   **Transactions.** The purchase of the Products by Plaintiffs and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code section 1761(e) because Plaintiffs entered into an agreement with Defendant or its authorized vendors to purchase the Products.

140.   **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Products to Plaintiffs and the California Subclass through the misleading, deceptive, and fraudulent Challenged Representations and Material Omission:

      a.   Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which they do not have."

      b.   Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . when they are of another."

      c.   Section 1770(a)(9) by advertising the Products "with [the] intent not to sell [] as advertised."

141.   **Knowledge.** Defendant's uniform and material representations and omission regarding the Products were likely to deceive, and Defendant knew or should have known that its Challenged Representations and Material Omission were misleading.

142.   **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiffs, to increase the sale of the Product.

143.   **Plaintiffs Could Not Have Avoided Injury.** Plaintiffs and members of the California Subclass could not have reasonably avoided such injury. Plaintiffs and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiffs and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

144.   **Causation/Reliance/Materiality.** Plaintiffs and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Material Omission and the Challenged Representations in deciding to purchase the Products. The Material Omission and Challenged Representations were a substantial factor. The Material Omission and Challenged

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Representations were material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

145. As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiffs and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Accordingly, Plaintiffs seek a monetary award for violation of this Act in the form of restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the California Subclass for said monies.

146. By a letter dated January 21, 2025, Plaintiffs advised Defendant of its false and misleading representations and omissions pursuant to California Civil Code Section 1782(a).

147. Pursuant to Section 1780(a) of the Act, Plaintiffs seek injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendant, including, but not limited to, an order enjoining Defendant from continuing to make the label and advertising claims challenged herein. Plaintiffs also request an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendant. Plaintiffs shall be irreparably harmed if such an order is not granted.

148. Plaintiffs respectfully request that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2). In addition, Defendant should be compelled to provide restitution to consumers who paid for Products that are not what they expected to receive due to Defendant's misrepresentations.

149. Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

150. Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendant continues to deceptively market the Products as being safe and suitable for everyday wear. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of advertising or marketing modifications, is necessary to dispel public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such modifications would

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

include, remanufacturing the Products so they do not contain PFAS or removing the Challenged Representations. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiffs are, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiffs and Class members overpay for the Products), rendering injunctive relief a necessary remedy.

## COUNT FOUR

### Fraud

### (*on behalf of the Nationwide Class*)

151.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs ¶¶ 1-27, 31-38, 39-83 as though fully set forth herein.

152.    Plaintiffs bring this claim individually and on behalf of the Class under California law.

153.    At the time Plaintiffs and Class Members purchased the Products, Defendant did not disclose, but instead concealed and misrepresented, the Products sustainable, safe, and suitable for human use.

154.    **Who, What, When, Where, and How:** Since at least 2015 (when), Defendant (who) has used fluoroelastomer material for their watchbands.

- On December 1, 2021 (when), Plaintiff Cavalier was misled into buying Defendant's Apple Watch Series 3 GPS 33mm with the fluoroelastomer Sport Band (what), online at Walmart's website (where).

- On or around June 26, 2024 (when), Plaintiff Krzyzek was misled into buying Defendant's Apple Watch SE 2nd Gen 40mm with the fluoroelastomer Sport Band (what), at T-Mobile (where).

Defendant affirmatively misrepresented the Products, marketing the Products as sustainable, safe, and suitable for human use, including prolonged daily wear, and Plaintiffs relied upon Defendant's

Challenged Representations and Material Omissions described *supra* ¶¶ 12-16 (what/how). Defendant made the Challenged Representations throughout their pervasive and widespread marketing scheme, including their official website (https://www.apple.com) and product pages (see *supra* notes 9-26, 34-36) (what/where).

155.    Defendant also knew that its omissions and misrepresentations regarding the Products were material, and that a reasonable consumer would rely upon Defendant's representations (and corresponding omissions) in making purchasing decisions.

156.    Plaintiffs and Class Members did not know—nor could they have known through reasonable diligence—about the true nature of the Products.

157.    Plaintiffs and Class Members would have been reasonable in relying on Defendant's misrepresentations (and corresponding omissions) in making their purchasing decisions.

158.    Plaintiffs and Class Members had a right to reply upon Defendant's representations (and corresponding omissions) as Defendant maintained monopolistic control over knowledge of the true quality of the Products.

159.    Plaintiffs and Class Members sustained damages as a result of their reliance on Defendant's omissions and misrepresentations, thus causing Plaintiffs and Class Members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

## COUNT FIVE

### Fraudulent Inducement

### (*on behalf of the Nationwide Class*)

160.    Plaintiffs reallege and reincorporate by reference the allegations contained in paragraphs ¶¶ 1-27, 31-38, 39-83, and 154, as though fully set forth herein.

161.    Plaintiffs bring this claim individually and on behalf of the Class under California law.

162.    Defendant did not disclose, but instead concealed and misrepresented, the Products as discussed herein.

163.    Plaintiff Cavalier was misled into buying Defendant's Apple Watch Series 3 SE33mm with the fluoroelastomer Sport Band, online at Walmart's website. Plaintiff Krzyzek was

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

misled into buying Defendant's Apple Watch SE 2nd Gen 40mm with the fluoroelastomer Sport Band, at T-Mobile. Defendant affirmatively misrepresented the Products, marketing the Products as sustainable, safe, and suitable for human use, including prolonged daily wear, and Plaintiffs relied upon Defendant's Challenged Representations and Material Omissions described *supra* ¶¶ 12-16. Defendant made the Challenged Representations throughout their pervasive and widespread marketing scheme, including their official website (https://www.apple.com) and product pages (see *supra* notes 9-26, 34-36). Plaintiffs were induced to purchase the Purchased Product under the guise of the Products supporting health, wellness, and fitness. Plaintiffs sought the Product for health support purposes, including tracking exercise activity, and/or heart rate monitoring and tracking sleep patterns, as well as other data.

164.    Defendant knew, or should have known, that the Products were falsely portrayed and that knowledge of the safety-related issues discussed throughout was withheld from the consumer public.

165.    Defendant also knew that omissions and misrepresentations regarding the Product were material, and that a reasonable consumer would rely on Defendant's representations (and corresponding omissions) in making purchasing decision.

166.    Plaintiffs and Class Members did not know—nor could they have known through reasonable diligence—about the true quality of the Products.

167.    Plaintiffs and Class Members were reasonable in relying on Defendant's misrepresentations (and corresponding omissions) in making their purchasing decisions.

168.    Plaintiffs and Class Members had a right to rely on Defendant's representations (and corresponding omissions) as Defendant maintained a monopolistic control over the Products, and what information was available regarding the Products.

169.    Defendant intended to induce—and did, indeed, induce—Plaintiffs and Class members into purchasing the Products based upon their affirmative representations and omissions.

170.    Plaintiffs and Class Members sustained damages as a result of their reliance on Defendant's omission and misrepresentations, thus causing Plaintiffs and Class Members to sustain actual losses and damages in a sum to be determined at trial.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## COUNT SIX

### Fraudulent Concealment or Omission

### (*on behalf of the Nationwide Class*)

171.    Plaintiffs reallege and reincorporate by reference the allegations contained in paragraphs ¶¶ 1-27, 31-38, 39-83, and 154, as though fully set forth herein.

172.    Plaintiffs bring this claim individually and on behalf of the Class under California law.

173.    At all relevant times, Defendant was engaged in the business of designing, manufacturing, distributing, and selling the Products.

174.    Defendant, acting through its representatives or agents, delivered the Products to its own distributors and various other distribution channels.

175.    Defendant willfully, falsely, and knowingly omitted material facts and made partial representations regarding the quality and character of the Products as discussed throughout.

176.    Rather than inform consumers of the truth regarding the Products, Defendant misrepresented the quality of the Products as discussed herein at the time of purchase.

177.    Defendant made these material omissions and partial representations to boost or maintain sales of the Products, and to falsely assure purchasers of the Products that Defendant is a reputable company and that its Products are safe and suitable for human use. The omitted information and partial representations were material to consumers because the representations played a significant role in the value of the Products purchased.

178.    Plaintiffs and Class Members accepted the terms of use, which were silent on the true nature of the Products, as discussed throughout. Plaintiffs and Class Members had no way of knowing that Defendant's misrepresentations as to the Products and had no way of knowing that Defendant's misrepresentations were misleading.

179.    Although Defendant had a duty to ensure the accuracy of the information regarding the Products because they were in exclusive knowledge of this information, Defendant did not fulfill that duty.

180.   Defendant misrepresented material facts to protect their profits, which came at the expense of Plaintiffs and Class members.

181.   Plaintiffs and Class Members were unaware of these material misrepresentations, and they would not have acted as they did had they known the truth. Plaintiffs' and Class Members' actions were justified given Defendant's misrepresentations.

182.   Defendant was in the exclusive control of material facts, and such facts were not known to the public.

183.   Due to Defendant's misrepresentations, Plaintiffs and Class members sustained injury due to the purchase of the Products that did not live up to their advertised representations. Plaintiffs and Class members are entitled to recover full refunds for the Products they purchased due to Defendant's misrepresentations.

184.   Defendant's acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiffs and Class members' rights and well-being, and in part to enrich themselves at the expense of consumers. Defendant's acts were done to gain commercial advantage over competitors, and to drive consumers away from consideration of competing products. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## COUNT SEVEN

### Fraudulent Misrepresentation

### (*on behalf of the Nationwide Class*)

185.   Plaintiffs reallege and reincorporate by reference the allegations contained in paragraphs ¶¶ 1-27, 31-38, 39-83, and 154, as though fully set forth herein.

186.   Plaintiffs bring this claim individually and on behalf of the Class under California law.

187.   Defendant falsely represented to Plaintiffs and the Class that the Products were safe and suitable for human use.

188.   Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase the Products.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

189.    Defendant knew or should have known that their representations about the Products were false in that the Products are not safe or suitable for human use as discussed throughout. Defendant knowingly allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class.

190.    Plaintiffs and the Class did in fact rely on these misrepresentations and purchased the Products to their detriment. Given the deceptive manner in which Defendant advertised, marketed, represented, and otherwise promoted the Products, Plaintiffs' and the Class' reliance on Defendant's misrepresentations was justifiable.

191.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they would not have purchased the Products at all had they known of the safety risks associated with the Products and that they do not conform to Defendant's advertising and marketing.

192.    Plaintiffs and the Class seek actual damages, attorney's fees, costs, and other such relief the Court deems proper.

## COUNT EIGHT

### Negligent Misrepresentation

### (*on behalf of the Nationwide Class*)

193.    Plaintiffs reallege and reincorporate by reference the allegations contained in paragraphs ¶¶ 1-27, 31-38, 39-83, and 154, as though fully set forth herein.

194.    Plaintiffs bring this claim individually and on behalf of the Class under California law.

195.    Defendant had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, detailing, distribution, and sale of the Products.

196.    Defendant breached its duty to Plaintiffs and the Class by developing, testing, manufacturing, marketing, detailing, distributing, and selling the Products to Plaintiffs and the Class that did not have the qualities, characteristics, and suitability for use as advertised by Defendant and by failing to promptly remove the Products from the marketplace or take other appropriate remedial

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

1    action.

2         197.    Defendant knew or should have known that the qualities and characteristics of the

3    Products were not as advertised, marketed, detailed, or otherwise represented or suitable for its

4    intended use and were otherwise not as warranted and represented by Defendant.  Specifically,

5    Defendant knew or should have known that the Product was not safe or suitable for human use, and

6    raised health risks.

7         198.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class

8    have suffered actual damages in that they would not have purchased the Products at all had they

9    known that the Products were not safe or suitable for human use and that the Products do not

10   conform to the Product's marketing, advertising, or statements.

11        199.    Plaintiffs and the Class seek actual damages, attorney's fees, costs, and any other

12   just and proper relief available.

13                                 **<u>COUNT NINE</u>**

14                      **Quasi-Contract / Unjust Enrichment**

15                      **(*on behalf of the Nationwide Class*)**

16        200.    Plaintiffs reallege and reincorporate by reference the allegations contained in

17   paragraphs ¶¶ 1-27, 31-38, 39-83, and 154, as though fully set forth herein.

18        201.    Plaintiffs bring this claim individually and on behalf of the Class under California

19   law.

20        202.    To the extent required by law, this cause of action is alleged in the alternative to

21   legal claims, as permitted under Fed. R. Civ. P. 8.

22        203.    Plaintiffs and Class members conferred monetary benefits on Defendant by

23   purchasing the Products. Defendant's profits are funded entirely from their generated revenues –

24   payments made by or on behalf of Plaintiffs and Class Members. As such, a portion of these

25   payments was attributable to Defendant's Challenged Representations and Omissions.

26        204.    Defendant knew that Plaintiffs and the Class conferred a benefit which Defendant

27   accepted, and through which, Defendant was unjustly enriched in retaining the revenues derived

28   from Plaintiffs and Class members' purchases of the Products. Retention of those monies under

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

these circumstances is unjust and inequitable because Defendant failed to disclose that contrary to its representations, the Products were not safe for everyday wear and instead contained harmful toxic chemicals like PFAS, which pose serious harm to human health and environment. Defendant's conduct, representations, and omissions caused injuries to Plaintiffs and Class members because they would not have purchased the Product if the true facts were known.

205.    Defendant enriched itself by saving the costs they reasonably should have spent on ensuring that the Products are free from toxic chemical substances like PFAS, and conform with their advertised representations.

206.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

## VIII.    <u>PRAYER FOR RELIEF</u>

207.    **WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendant as follows:

> a.    **Certification:** For an order certifying this action as a class action, appointing Plaintiffs as the Class Representatives, and appointing Plaintiffs' Counsel as Class Counsel;
>
> b.    **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein consistent with applicable law and pursuant to only those causes of action so permitted;
>
> c.    **Injunction:** For an order requiring Defendant to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendant immediately cease and desist from selling the unlawful Products in violation of law; that enjoin Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; that require Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

conduct; and/or that require Defendant to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d.    **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiffs and the Class requested herein, consistent with applicable law and pursuant to only those causes of action so permitted;

e.    **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f.    **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g.    **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h.    **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs hereby demand a trial by jury on all issues and causes of action so triable.

DATED: January 21, 2025                    Respectfully submitted,

**CLARKSON LAW FIRM, P.C.**

*/s/ Yana Hart*
Ryan Clarkson, Esq.
Yana Hart, Esq.
Mark Richards, Esq.
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050

CLASS ACTION COMPLAINT

**SHUB JOHNS & HOLBROOK LLP**
Benjamin F. Johns, Esq. (*Pro Hac Vice forthcoming*)
Samantha E. Holbrook, Esq. (*Pro Hac Vice forthcoming*)
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Tel: (610) 477-8380

*Attorneys for Plaintiffs and the Proposed Classes*

CLASS ACTION COMPLAINT