**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (SBN 306499)
*yhart@clarksonlawfirm.com*
Mark Richards (SBN 321252)
*mrichards@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213 788-4070

**SHUB JOHNS & HOLBROOK LLP**
Benjamin F. Johns (*Admitted PHV*)
*bjohns@shublawyers.com*
Samantha E. Holbrook (*Admitted PHV*)
*sholbrook@shublawyers.com*
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Tel: (610) 477-8380

*Counsel for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

DOMINIQUE CAVALIER, KILEY
KRZYZEK, KATHERINE WHEELER,
MARLO RUSSELL, TERI GLAZEBROOK,
and HEIDI FENTON, individually and on
behalf of all others similarly situated,

Plaintiffs,

v.

APPLE INC.,

Defendant.

Case No.: 5:25-cv-00713-PCP

**FIRST AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

**<u>TABLE OF CONTENTS</u>**

I.   INTRODUCTION ....................................................................................... 3

II.  JURISDICTION ........................................................................................ 5

III. VENUE ...................................................................................................... 5

IV. PARTIES ................................................................................................... 5

    Plaintiff Kiley Krzyzek ............................................................................ 7

    Plaintiff Katherine Wheeler .................................................................... 9

    Plaintiff Marlo Russel ........................................................................... 11

    Plaintiff Teri Glazebrook ...................................................................... 13

    Plaintiff Heidi Fenton ........................................................................... 15

    Defendant Apple Inc. ............................................................................ 17

V.  FACTUAL ALLEGATIONS .................................................................. 19

    A.   Background: PFAS Industrial Applications and Health Implications ..................... 19

    B.   Apple's Fleuolmaster Sport Bands ......................................... 23

    C.   Established Threshold Limits for PFHxA in the Sport Bands ................. 24

    D.   The Sport Bands Contain Hazardous and Toxic Levels of PFHxA ......... 28

    E.   Dermal Exposure to the Sport Bands for Extended Periods is Unsafe ...... 28

    F.   Apple's Knowledge and Concealment of Its Alarming Levels of PFHxA in the Sport Bands ......................................................................... 33

    G.   Apple Misrepresents the Sport Bands as Suitable for Prolonged Wear and Exercise ................................................................................ 35

VI. TOLLING OF STATUTE OF LIMITATIONS ..................................... 39

    A.   Discovery Rule ...................................................................... 39

    B.   Fraudulent Concealment ....................................................... 39

    C.   Estoppel ................................................................................. 40

VII. CLASS ACTION ALLEGATIONS ...................................................... 40

VIII. CAUSES OF ACTION ......................................................................... 44

    A.   Claims Brought on Behalf of the Nationwide Class ............... 44

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1

COUNT ONE........................................................44

COUNT TWO........................................................46

COUNT THREE........................................................47

COUNT FOUR ........................................................48

B.   Claims Brought on Behalf of the California Subclass ........................................................49

COUNT FIVE ........................................................49

COUNT SIX ........................................................57

COUNT SEVEN ........................................................58

COUNT EIGHT ........................................................62

C.   Claims Brought on Behalf of the Illinois Subclass ........................................................64

COUNT NINE ........................................................64

COUNT TEN ........................................................66

D.   Claims Brought on Behalf of the Michigan Subclass ........................................................68

COUNT ELEVEN ........................................................68

COUNT TWELVE ........................................................70

E.   Claims Brought on Behalf of the New York Subclass ........................................................71

COUNT THIRTEEN ........................................................71

COUNT FOURTEEN ........................................................72

COUNT FIFTEEN ........................................................74

F.   Claims Brought on Behalf of the Pennsylvania Subclass ........................................................75

COUNT SIXTEEN ........................................................75

COUNT SEVENTEEN ........................................................77

IX.   PRAYER FOR RELIEF ........................................................78

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Dominique Cavalier, Kiley Krzyzek, Katherine Wheeler, Marlo Russell, Teri Glazebrook, and Heidi Fenton ("Plaintiffs"), individually and on behalf of all others similarly situated consumers, who purchased an Apple Watch equipped with a fluoroelastomer Sport Band or separately purchased a fluoroelastomer Apple Watch Sport Band ("Class Products"), as more fully described below (the "Class" and "Class Members"), bring this class action complaint against Defendant Apple Inc., ("Defendant" or "Apple"), and allege the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I. **INTRODUCTION**

1. Since 2015, Apple has pervasively marketed its Apple Watches equipped with its fluoroelastomer Sport Band ("Sport Band(s)") across all media platforms, promoting them as essential tools for health and wellness, and the ultimate health and fitness companions. Apple has consistently represented that the Class Products are engineered to withstand the most grueling workouts, suitable for prolonged use, and intended for continuous wear to support health monitoring.

2. Beneath this carefully curated image, however, lies a deeply troubling truth: the Sport Bands contain perfluorohexanoic acid ("PFHxA"), a toxic perfluoroalkyl and polyfluoroalkyl substance ("PFAS"), in hazardous amounts that substantially exceed Apple's own internal standards and other thresholds for safety by a staggering *40.8 times.*

3. Through a calculated series of three revisions to its Restricted Substances Specification—the document outlining Apple's restriction on use of certain chemicals in its products—Apple has quietly shifted its policies regarding the permissible levels of concentration of PFHxA in Sport Bands from a mere reportable threshold requirement to an outright ban on its intentional use, scheduled to take effect this August, and properly reflecting the serious safety hazard.

4. Apple persists in selling the Sport Bands throughout the United States with elevated and toxic PFHxA concentrations, and without disclosing this material information at the point of purchase (as it has for years). Apple's calculated omission and concealment of the unsafe and

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Elevated Levels[1] of PFHxA in the Class Products, while continuing to promise health and wellness and directing extended wear, reflects an impermissible disregard for consumer safety.

5. The company's profit motive is apparent. The Apple Watch generates substantial revenue for Apple, and Apple knows Plaintiffs and the Class would have rejected these devices had they been informed about the dangerous and Elevated Levels of PFHxA concentrations contained in the Sport Bands, **as confirmed by independent lab testing commissioned by Plaintiffs.**

6. Even in face of public scrutiny over the public's reaction to this lawsuit, mounting evidence demonstrating heightened health risks due to dermal absorption of the toxic chemicals when worn all day as directed by Apple, and its own plan to finally ban the intentional use of PFHxA in the Sport Bands, Apple has now publicly doubled down on its false claim of absolute safety. This is just the latest example of Apple's years-long scheme to conceal the safety hazard at the heart of this lawsuit.

7. As a result of the Elevated Levels of PFHxA in the Sport Bands and Apple's omissions, concealment, and misrepresentations, Plaintiffs and the Class are left with unsafe products that are unsuitable for their purpose and prolonged wear—forcing many to purchase alternative bands without hidden toxins, and effectively leaving those who don't with an overpriced digital pocket watch.

8. Against this backdrop, Apple bore a clear duty to disclose the Elevated Levels of PFHxA in the Sport Bands, to enable Plaintiffs and the Class to make informed purchase decisions. Instead, Apple concealed the safety hazard while affirmatively promising health, wellness and directing extended wear, which amplifies the harm from continuous dermal absorption of the toxins. Had Plaintiffs been aware of this material information, they would not have purchased the Class Products or would have paid less for them than they did. Through this class action, Plaintiffs seek monetary damages on behalf of the hundreds of thousands of consumers financially harmed by this false advertising and an injunction to stop Apple's continued deception.

---

[1] The phrase "Elevated Levels" as used herein, shall mean a concentration that is equal to or greater than 25 ppb for the sum of PFHxA and its salts.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## II.    <u>JURISDICTION</u>

9.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Apple because its principal place of business and headquarters are located in this District and Apple has purposefully availed itself of this forum by conducting substantial business within California such that Apple has significant, continuous, and pervasive contacts with the State of California.

## III.    <u>VENUE</u>

11.     Venue is proper in this District under 28 U.S.C. § 1391 because Apple conducts its affairs in this District and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

## IV.    <u>PARTIES</u>

### *Plaintiff Dominique Cavalier*

12.     Plaintiff Dominque Cavalier ("Plaintiff Cavalier") is a resident of the County of San Bernardino, in the State of California.

13.     On December 1, 2021, Plaintiff Cavalier purchased an Apple Watch Series 3 GPS – 33mm with a Sport Band (for purposes of this section, "the Apple Watch") for approximately $182.10 from the website of Walmart, an authorized retailer of Apple.

14.     The Sport Band that came equipped with the Apple Watch Plaintiff Cavalier purchased is the same or substantially similar in its design, manufacture, material, and chemical composition as all other Sport Bands making up the Class Products, including the Sport Band that Symbio Labs tested (discussed *infra* at ¶¶ 123-125), which contained elevated and unsafe concentration levels of PFHxA.

15.     Prior to purchasing the Apple Watch, Plaintiff Cavalier viewed and relied on pervasive marketing and advertisements from Apple that promoted the Apple Watch' various

features, which among other things, represented and/or depicted the Class Products as suitable for prolonged periods of use and exercise, intended for continuous wear to support health monitoring, and should be considered as the ultimate health and fitness companions.

16. At the time Plaintiff Cavalier purchased the Apple Watch, she did not know it contained Elevated Levels of PFHxA that present a safety risk when worn for prolonged periods or during periods of perspiration (such as exercise) contrary to Defendant's representations and advertising, on which she relied upon in making her purchase decision.

17. Apple did not provide any prominent clear disclaimers, qualifiers, or other explanatory statements on the Class Products' or within the advertising and marketing that the Class Products contained Elevated Levels of PFHxA – a chemical substance with a set of known severe health risks, including kidney and liver damage, developmental and reproductive toxicity, disruption of lipid metabolism, thyroid function, and more. None of the marketing materials, advertisements, or the Class Products contained any statement that the Class Products presented a safety risk when worn for prolonged periods or during periods of perspiration, such as exercise, given the Elevated Levels of PFHxA. Instead, all prominent statements and the pervasive advertising campaign reiterated and encouraged prolonged wear, use of the Class Products for health monitoring, and fitness.

18. Wearing the Apple Watch, which contains Elevated Levels of PFHxA, poses a significant health risk, particularly given watches' prolonged contact with the skin – on the inside of the wrist where dermal absorption is heightened due to thin, sensitive skin and constant contact. The presence of the Elevated Levels of this persistent and bioaccumulative chemical directly undermines and contradicts the very health and wellness Apple promotes.

19. Neither Apple, nor any of its employees, agents, retailers, or other representatives informed Plaintiff Cavalier nor other consumers that the Apple Watch contains Elevated Levels of PFHxA that presents a safety risk when worn for prolonged periods or during periods of perspiration.

20. Had Plaintiff Cavalier known that the Sport Bands for the Apple Watch contained Elevated Levels of PFHxA that present a safety risk when worn for prolonged periods or during

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

periods of perspiration, she would not have purchased the Apple Watch or would have paid substantially less for it.

21.     Plaintiff Cavalier suffered an ascertainable loss as a result of Apple's misrepresentations and omissions regarding the Elevated Levels of PFHxA in the Sport Bands, including, but not limited to, overpayment, loss of benefit of the bargain, and other consequential damages.

22.     Plaintiff Cavalier continues to see the Sport Bands available for purchase and desires to purchase one again in the future if she can be sure they no longer have unsafe and Elevated Levels of PFHxA. While Apple has stated a future commitment to phasing PFHxA out of its products, it has not committed to identifying for consumers the Sport Bands that contain PFHxA (i.e., the Sport Bands manufactured prior to the phase out) and those that do not contain PFHxA. Whether Sport Bands manufactured by Apple in the future contain PFHxA is not readily discernable to Plaintiff through visual inspection or any other source of information readily available outside of Apple's disclosure of such information. As result, Plaintiff Cavalier remains at an ongoing risk of purchasing a Class Product again, believing it is no longer falsely advertised and warranted and safe for use as directed.

### Plaintiff Kiley Krzyzek

23.     Plaintiff Kiley Krzyzek ("Plaintiff Krzyzek") is a resident of the County of Sonoma, in the State of California.

24.     On or around June 26, 2024, Plaintiff Krzyzek purchased an Apple Watch SE 2nd Gen 40mm with a fluoroelastomer Sport Band (for the purposes of this section "the Apple Watch") from T-Mobile, an authorized retail seller of the Class Products. She has been paying and will continue to pay $4.12/month for the Apple Watch for two years from purchase of the product, totaling approximately $100.

25.     The Sport Band that came equipped with the Apple Watch Plaintiff Krzyzek purchased is the same or substantially similar in its design, manufacture, material, and chemical composition as all other Sport Bands making up the Class Products, including the Sport Band that

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Symbio Labs tested on March 31, 2025 (discussed *infra* at ¶¶ 123-125), which contained elevated and unsafe levels of PFHxA. Krzyzek

26. Prior to purchasing the Apple Watch, Plaintiff Krzyzek viewed and relied on pervasive marketing and advertisements from Apple that promoted the Apple Watch' various features, which among other things, represented and/or depicted the Class Products as suitable for prolonged periods of use and exercise, intended for continuous wear to support health monitoring, and should be considered as the ultimate health and fitness companions.

27. At the time Plaintiff Krzyzek purchased the Apple Watch, she did not know the Sport Bands contain Elevated Levels of PFHxA that present a safety risk when worn for prolonged periods or during periods of perspiration, contrary to Defendant's representations and advertising, on which she relied upon in making her purchase decision.

28. Apple did not provide any prominent clear disclaimers, qualifiers, or other explanatory statements on the Class Products' or within the advertising and marketing that the Class Products contained Elevated Levels of PFHxA – a chemical substance with a set of known serious health risks. None of the marketing materials, advertisements, or the Class Products contained any statement that the Class Products presented a safety risk when worn for prolonged periods or during periods of perspiration (such as exercise) given the Elevated Levels of PFHxA. Instead, all prominent statements and the pervasive advertising campaign reiterated and encouraged prolonged wear, use of the Class Products for health monitoring, and fitness.

29. Wearing the Apple Watch, which contains Elevated Levels of PFHxA, poses a significant health risk, particularly given watches' prolonged contact with the skin – on the inside of the wrist where dermal absorption is heightened due to thin, sensitive skin and constant contact. The presence of the Elevated Levels of this persistent and bioaccumulative chemical directly undermines and contradicts the very health and wellness Apple promotes.

30. Neither Apple, nor any of its employees, agents, retailers, or other representatives informed Plaintiff Krzyzek nor other consumers that the Apple Watch contains elevated level of PFHxAs that presents a safety risk when worn for prolonged periods and during periods of perspiration (such as exercise).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

31. Had Plaintiff Krzyzek known that the Sport Bands for the Apple Watch contained Elevated Levels of PFHxA when worn for prolonged periods or during periods of perspiration (such as exercise), she would not have purchased the Apple Watch or would have paid substantially less for it.

32. Plaintiff Krzyzek suffered an ascertainable loss as a result of Apple's misrepresentations and omissions regarding the Elevated Levels of PFHxA in the Sport Bands, including, but not limited to, overpayment, loss of benefit of the bargain, and other consequential damages.

33. Plaintiff Krzyzek continues to see the Sport Bands available for purchase and desires to purchase one again in the future if they could be sure they no longer have unsafe and Elevated Levels of PFHxA. While Apple has stated a future commitment to phasing PFHxA out of its products, it has not committed to identifying for consumers the Sport Bands that contain PFHxA (i.e., the Sport Bands manufactured prior to the phase out) and those that do not contain PFHxA. Whether Sport Bands manufactured by Apple in the future contain PFHxA is not readily discernable to Plaintiff through visual inspection or any other source of information readily available outside of Apple's disclosure of such information. As result, Plaintiff Krzyzek remains at an ongoing risk of purchasing a Class Product again, believing it is no longer falsely advertised and warranted and safe for use as directed.

### Plaintiff Katherine Wheeler

34. Plaintiff Katherine Wheeler ("Plaintiff Wheeler") is a resident of the County of Madison, in the State of Illinois.

35. In or around February 2024, Plaintiff Wheeler purchased a Apple Watch SE (2nd Generation) 44mm with the fluoroelastomer Sport Band (for purposes of this section, "the Apple Watch") for approximately $249 from Walmart, an authorized retailer of Apple.

36. The Sport Band that came equipped with the Apple Watch Plaintiff Wheeler purchased is the same or substantially similar in its design, manufacture, material, and chemical composition as all other Sport Bands making up the Class Products, including the Sport Band that

Symbio Labs tested on March 31, 2025 (discussed *infra* at ¶¶ 123-125), which contained elevated and unsafe concentration levels of PFHxA.

37.     Prior to purchasing the Apple Watch, Plaintiff Wheeler viewed and relied on pervasive marketing and advertisements from Apple that promoted the Apple Watch' various features, which among other things, represented and/or depicted the Class Products as suitable for prolonged periods of use and exercise, intended for continuous wear to support health monitoring, and should be considered as the ultimate health and fitness companions.

38.     At the time Plaintiff Wheeler purchased the Apple Watch, she did not know the Sport Band contained Elevated Levels of PFHxA that present a safety risk when worn for prolonged periods or during periods of perspiration (such as exercise), contrary to Defendant's representations and advertising, on which she relied upon in making her purchase decision.

39.     Apple did not provide any prominent clear disclaimers, qualifiers, or other explanatory statements on the Class Products' or within the advertising and marketing that the Class Products contained Elevated Levels of PFHxA – a chemical substance with a set of known serious health risks. None of the marketing materials, advertisements, or the Class Products contained any statement that the Class Products presented a safety risk when worn for prolonged periods or during periods of perspiration (such as excercise) given the Elevated Levels of PFHxA. Instead, all prominent statements and the pervasive advertising campaign reiterated and encouraged prolonged wear, use of the Class Products for health monitoring, and fitness.

40.     Wearing the Apple Watch, which contains Elevated Levels of PFHxA, poses a significant health risk, particularly given watches' prolonged contact with the skin – on the inside of the wrist where dermal absorption is heightened due to thin, sensitive skin and constant contact. The presence of the Elevated Levels of this persistent and bioaccumulative chemical directly undermines and contradicts the very health and wellness Apple promotes.

41.     Neither Apple, nor any of its employees, agents, retailers, or other representatives informed Plaintiff Wheeler nor other consumers that the Apple Watch contains Elevated Levels of PFHxA that presents a health and safety risk when worn for prolonged periods or during periods of perspiration (such as exercise).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

42.     Had Plaintiff Wheeler known that the Sport Bands for the Apple Watch contained Elevated Levels of PFHxA that presents a safety risk when worn for prolonged periods or during periods of perspiration (such as exercise), she would not have purchased the Apple Watch or would have paid substantially less for it.

43.     Plaintiff Wheeler suffered an ascertainable loss as a result of Apple's misrepresentations and omissions regarding the Elevated Levels of PFHxA in the Sport Bands, including, but not limited to, overpayment, loss of benefit of the bargain, and other consequential damages.

44.     Plaintiff Wheeler continues to see the Sport Bands available for purchase and desires to purchase one again in the future if she could be sure they no longer have unsafe and Elevated Levels of PFHxA. While Apple has stated a future commitment to phasing PFHxA out of its products, it has not committed to identifying for consumers the Sport Bands that contain PFHxA (i.e., the Sport Bands manufactured prior to the phase out) and those that do not contain PFHxA. Whether Sport Bands manufactured by Apple in the future contain PFHxA is not readily discernable to Plaintiff through visual inspection or any other source of information readily available outside of Apple's disclosure of such information. As result, Plaintiff Wheeler remains at an ongoing risk of purchasing a Class Product again, believing it is no longer falsely advertised and warranted and safe for use as directed.

### Plaintiff Marlo Russel

45.     Plaintiff Marlo Russell ("Plaintiff Russell") is a resident of the County of St. Clair, in the State of Michigan.

46.     On or around June 2, 2023, Plaintiff Russell purchased an Apple Watch Series 7 equipped with a fluoroelastomer Sport Band (for purposes of this section, "the Apple Watch") for approximately $295.74.

47.     The Sport Band that came equipped with the Apple Watch Plaintiff Russell purchased is the same or substantially similar in its design, manufacture, material, and chemical composition as all other Sport Bands making up the Class Products, including the Sport Band that Symbio Labs tested on March 31, 2025 (discussed *infra* at ¶¶ 123-125), which contained elevated and unsafe

concentration levels of PFHxA.

48. Prior to purchasing the Apple Watch, Plaintiff Russell viewed and relied on pervasive marketing and advertisements from Apple that promoted the Apple Watch' various features, which among other things, represented and/or depicted the Class Products as suitable for prolonged periods of use and exercise, intended for continuous wear to support health monitoring, and should be considered as the ultimate health and fitness companions.

49. At the time Plaintiff Russell purchased the Apple Watch, she did not know the Sport Band contained Elevated Levels of PFHxA that present a safety risk when worn for prolonged periods or during periods of perspiration (such as exercise), contrary to Defendant's representations and advertising, on which she relied upon in making her purchase decision.

50. Apple did not provide any prominent clear disclaimers, qualifiers, or other explanatory statements on the Class Products' or within the advertising and marketing that the Class Products contained Elevated Levels of PFHxA – a chemical substance with a set of known serious health risks. None of the marketing materials, advertisements, or the Class Products contained any statement that the Class Products presented a safety risk when worn for prolonged periods or during periods of perspiration (such as exercise) given the Elevated Levels of PFHxA. Instead, all prominent statements and the pervasive advertising campaign reiterated and encouraged prolonged wear, use of the Class Products for health monitoring, and fitness.

51. Wearing the Apple Watch, which contains Elevated Levels of PFHxA, poses a significant health risk, particularly given watches' prolonged contact with the skin – on the inside of the wrist where dermal absorption is heightened due to thin, sensitive skin and constant contact. The presence of the Elevated Levels of this persistent and bioaccumulative chemical directly undermines and contradicts the very health and wellness Apple promotes.

52. Neither Apple, nor any of its employees, agents, retailers, or other representatives informed Plaintiff Wheeler nor other consumers that the Apple Watch contains Elevated Levels of PFHxA that present a safety risk when worn for prolonged periods or during periods of perspiration (such as exercise).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

53.     Had Plaintiff Russell known that the Sport Bands for the Apple Watch contained Elevated Levels of PFHxA that present a risk to human health when used as directed, she would not have purchased the Apple Watch or would have paid substantially less for it.

54.     Plaintiff Rusell suffered an ascertainable loss as a result of Apple's misrepresentations and omissions regarding the Elevated Levels of PFHxA in the Sport Bands, including, but not limited to, overpayment, loss of benefit of the bargain, and other consequential damages.

55.     Plaintiff Russell continues to see the Sport Bands available for purchase and desires to purchase one again in the future if she could be sure they no longer have Elevated Levels of PFHxA. While Apple has stated a future commitment to phasing PFHxA out of its products, it has not committed to identifying for consumers the Sport Bands that contain PFHxA (i.e., the Sport Bands manufactured prior to the phase out) and those that do not contain PFHxA. Whether Sport Bands manufactured by Apple in the future contain PFHxA is not readily discernable to Plaintiff Rusell through visual inspection or any other source of information readily available outside of Apple's disclosure of such information. As result, Plaintiff Russell remains at an ongoing risk of purchasing a Class Product again, believing it is no longer falsely advertised and warranted and safe for use as directed.

***Plaintiff Teri Glazebrook***

56.     Plaintiff Teri Glazebrook ("Plaintiff Glazebrook") is a resident of the County of Schenectady, in the State of New York.

57.     In or around September 21, 2022, Plaintiff Glazebrook purchased an Apple Watch Series 8 – 41mm equipped with a fluoroelastomer Sport Band (for purposes of this section, "the Apple Watch") for approximately $499 from AT&T, an authorized retail seller of the Class Products.

58.     The Sport Band that came equipped with the Apple Watch Plaintiff Glazebrook purchased is the same or substantially similar in its design, manufacture, material, and chemical composition as all other Sport Bands making up the Class Products, including the Sport Band that Symbio Labs tested on March 31, 2025 (discussed *infra* at ¶¶ 123-125), which contained elevated and unsafe concentration levels of PFHxA.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

59.     Prior to purchasing the Apple Watch, Plaintiff Glazebrook viewed and relied on pervasive marketing and advertisements from Apple that promoted the Apple Watch' various features, which among other things, represented and/or depicted the Class Products as suitable for prolonged periods of use and exercise, intended for continuous wear to support health monitoring, and should be considered as the ultimate health and fitness companions.

60.     At the time Plaintiff Glazebrook purchased the Apple Watch, she did not know the Sport Band contained Elevated Levels of PFHxA that present a safety risk when worn for prolonged periods or during periods of perspiration (such as exercise), contrary to Defendant's representations and advertising, on which she relied upon in making her purchase decision.

61.     Apple did not provide any prominent clear disclaimers, qualifiers, or other explanatory statements on the Class Products' or within the advertising and marketing that the Class Products contained Elevated Levels of PFHxA – a chemical substance with a set of known serious health risks. None of the marketing materials, advertisements, or the Class Products contained any statement that the Class Products presented a safety risk when worn for prolonged periods or during periods of perspiration (such as exercise) given the Elevated Levels of PFHxA. Instead, all prominent statements and the pervasive advertising campaign reiterated and encouraged prolonged wear, use of the Class Products for health monitoring, and fitness.

62.     Wearing the Apple Watch, which contains Elevated Levels of PFHxA, poses a significant health risk, particularly given watches' prolonged contact with the skin – on the inside of the wrist where dermal absorption is heightened due to thin, sensitive skin and constant contact. The presence of the Elevated Levels of this persistent and bioaccumulative chemical directly undermines and contradicts the very health and wellness Apple promotes.

63.     Neither Apple, nor any of its employees, agents, retailers, or other representatives informed Plaintiff Wheeler nor other consumers that the Apple Watch contains Elevated Levels of PFHxA that presents a safety risk when worn for prolonged periods and during periods of perspiration (such as exercise).

64.     Had Plaintiff Glazebrook known that the Sport Bands for the Apple Watch contained Elevated Levels of PFHxA that presents a safety risk when worn for prolonged periods or during

14

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

periods of perspiration (such as exercise), she would not have purchased the Apple Watch or would have paid substantially less for it.

65.     Plaintiff Glazebrook suffered an ascertainable loss as a result of Apple's misrepresentations and omissions regarding the Elevated Levels of PFHxA in the Sport Bands, including, but not limited to, overpayment, loss of benefit of the bargain, and other consequential damages.

66.     Plaintiff Glazebrook continues to see the Sport Bands available for purchase and desires to purchase one again in the future if she could be sure they no longer have Elevated Levels of PFHxA. While Apple has stated a future commitment to phasing PFHxA out of its products, it has not committed to identifying for consumers the Sport Bands that contain PFHxA (i.e., the Sport Bands manufactured prior to the phase out) and those that do not contain PFHxA. Whether Sport Bands manufactured by Apple in the future contain PFHxA is not readily discernable to Plaintiff Rusell through visual inspection or any other source of information readily available outside of Apple's disclosure of such information. As result, Plaintiff Glazebrook remains at an ongoing risk of purchasing a Class Product again, believing it is no longer falsely advertised and warranted and safe for use as directed.

### Plaintiff Heidi Fenton

67.     Plaintiff Heidi Fenton ("Plaintiff Fenton") is a resident of the County of Elk, in the Commonwealth of Pennsylvania.

68.     On or around November 2024, Plaintiff Fenton purchased an Apple Watch Series 9 GPS + Cellular – 41mm equipped with a fluoroelastomer Sport Band (for purposes of this section, "the Apple Watch") for approximately $372 through John Hancock Vitality Program, an authorized retail seller of the Class Products.

69.     The Sport Band that came equipped with the Apple Watch Plaintiff Fenton purchased is the same or substantially similar in its design, manufacture, material, and chemical composition as all other Sport Bands making up the Class Products, including the Sport Band that Symbio Labs tested on March 31, 2025 (discussed *infra* at ¶¶ 123-125), which contained elevated and unsafe concentration levels of PFHxA.

70. Prior to purchasing the Apple Watch, Plaintiff Fenton viewed and relied on pervasive marketing and advertisements from Apple that promoted the Apple Watch' various features, which among other things, represented and/or depicted the Class Products as suitable for prolonged periods of use and exercise, intended for continuous wear to support health monitoring, and should be considered as the ultimate health and fitness companions.

71. At the time Plaintiff Glazebrook purchased the Apple Watch, she did not know the Sport Band contained Elevated Levels of PFHxA that present a safety risk when worn for prolonged periods or during periods of perspiration (such as exercise), contrary to Apple's representations and advertising, on which she relied upon in making her purchase decision.

72. Apple did not provide any prominent clear disclaimers, qualifiers, or other explanatory statements on the Class Products' or within the advertising and marketing that the Class Products contained Elevated Levels of PFHxA – a chemical substance with a set of known serious health risks. None of the marketing materials, advertisements, or the Class Products contained any statement that the Class Products presented a safety risk when worn for prolonged periods or during periods of perspiration (such as exercise) given the Elevated Levels of PFHxA. Instead, all prominent statements and the pervasive advertising campaign reiterated and encouraged prolonged wear, use of the Class Products for health monitoring, and fitness.

73. Wearing the Apple Watch, which contains Elevated Levels of PFHxA, poses a significant health risk, particularly given watches' prolonged contact with the skin – on the inside of the wrist where dermal absorption is heightened due to thin, sensitive skin and constant contact. The presence of the Elevated Levels of this persistent and bioaccumulative chemical directly undermines and contradicts the very health and wellness Apple promotes.

74. Neither Apple, nor any of its employees, agents, retailers, or other representatives informed Plaintiff Wheeler nor other consumers that the Apple Watch contains elevated level of PFHxA that present a safety risk when worn for prolonged periods and during periods of perspiration (such as exercise).

75. Had Plaintiff Fenton known that the Sport Bands for the Apple Watch contained Elevated Levels of PFHxA that present a when worn for prolonged periods and during periods of

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

perspiration (such as exercise), she would not have purchased the Apple Watch or would have paid substantially less for it.

76. Plaintiff Fenton suffered an ascertainable loss as a result of Apple's misrepresentations and omissions regarding the Elevated Levels of PFHxA in the Sport Bands, including, but not limited to, overpayment, loss of benefit of the bargain, and other consequential damages.

77. Plaintiff Fenton continues to see the Sport Bands available for purchase and desires to purchase one again in the future if she could be sure they no longer have Elevated Levels of PFHxA. While Apple has stated a future commitment to phasing PFHxA out of its products, it has not committed to identifying for consumers the Sport Bands that contain PFHxA (i.e., the Sport Bands manufactured prior to the phase out) and those that do not contain PFHxA. Whether Sport Bands manufactured by Apple in the future contain PFHxA is not readily discernable to Plaintiff Rusell through visual inspection or any other source of information readily available outside of Apple's disclosure of such information. As result, Plaintiff Fenton remains at an ongoing risk of purchasing a Class Product again, believing it is no longer falsely advertised and warranted and safe for use as directed.

***Defendant Apple Inc.***

78. Defendant Apple Inc. is a California corporation with its principal place of business located at One Apple Park Way, Cupertino, California 95014. Apple regularly conducts business throughout California and in this judicial district.

79. At all relevant times, Apple was conducting business in the state of California, including the Class Period.

80. Apple designs, manufactures, markets, advertises, sells, and distributes the Class Products, and is the company that created, authorized, and controlled the use of the marketing, advertising, and branding of the Class Products, including representations that the Class Products are safe and suitable for prolonged wear and use during exercise.

81. Apple and its agents promoted, marketed, and sold the Class Products at issue throughout the United States and, in particular, within this judicial district. The unfair, unlawful,

deceptive, and misleading representations regarding the Class Products' suitability for prolonged wear and for exercise were prepared, authorized, ratified, and/or approved by Apple and its agents, and were disseminated throughout California and the United States by Apple and its agents to deceive and mislead consumers in the State of California and the United States into purchasing the Class Products.

82. Apple sells and sold its products, including the Class Products, directly to consumers through its website, apple.com, and through a chain of self-owned, managed, and operated brick and mortar stores located throughout the United States. Apple also sells and sold its products, including the Class Products, through a network of authorized retailers like Walmart, Best Buy, Verizon, T-Mobile, Amazon, and many others.

83. To become an authorized third-party retail seller of Apple Products, third-party sellers must enter into a contractual agreement with Apple that outlines covenants that the third-party must agree to and abide by in order to sell Apple products. Among those covenants, are that the goods shall be furnished and sold as new and genuine Apple products, displayed according to Apple's visual merchandising guidelines, sold at Apple's suggested retail prices, serviced by Apple-certified technicians, and marketed using only Apple-approved materials. Apple issues its standard warranty with the products, and retailers and Apple agree in the contract authorizing their sales of the products that all Apple warranties are for the benefit of the retail purchasers of the products. Additionally, sellers must maintain minimum inventory levels, meet quarterly sales targets, participate in regular training programs, submit to periodic audits, and ensure their physical retail environment meets Apple's exacting standards for customer experience.

84. Because the sale of the Class Products from Apple to its authorized retailers is done for the sole purpose of facilitating the sale of the Class Products to the public, including Plaintiffs, and because the ultimate purchasers of the Class Products are the intended beneficiaries of the warranties issued by Apple that run with the Class Products, Plaintiffs are intended third-party beneficiaries to the sale of the Class Products by Apple to its authorized retailers.

85. Plaintiffs, therefore, are entitled to the application of the third-party beneficiary exception to the privity requirement for the assertion of implied warranty claims asserted herein.

# V.     FACTUAL ALLEGATIONS

**A.**     **Background: PFAS Industrial Applications and Health Implications**

86.     PFAS are synthetic, long-lasting chemicals of industry, the components of which break down very slowly over time. PFAS have been used in a variety of industries to manufacture a variety of products, including but not limited to firefighting foam, aerospace technologies, textiles, and electronics.

87.     PFAS inability to break down, combined with their potential to accumulate in people, animals, and the environment over time, earned them the ominous name, "forever chemicals." This stability in hostile environments has made PFAS attractive to the electronics industries, including Apple. However, given the toxic nature of PFAS, products containing these chemicals pose serious health risks, particularly when they come into direct contact with the skin and/or used for extended period of time.

### 1.     Long-chain PFAS vs. Short-Chain PFAS Distinctions

88.     The distinction between long-chain and short-chain PFAS compounds is critical to understanding the evolution of this chemical class. Long-chain PFAS are defined as substances having six or more carbons for the kind of chemicals called sulfonates, and eight or more carbons for chemicals called carboxylic acids, while short-chain PFAS are defined as substances with five or fewer carbons for sulfonates and seven or fewer carbons for carboxylic acids.[2]

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

---

[2] David Andrews, *FDA Studies: 'Short-chain' PFAS Chemicals More Toxic Than Previously Thought*, Env't Working Grp. (Mar. 10, 2020), https://www.ewg.org/news-insights/news/fda-studies-short-chain-pfas-chemicals-more-toxic-previously-thought (Last visited May 5, 2025).



### 2. Manufacture Transition from Long-Chain PFAS to Short-Chain PFAS

89.     The same molecular durability that makes PFAS commercially desirable is what also makes them environmentally persistent and harmful to human health. PFAS' persistence allows them to bioaccumulate in human tissues and bloodstreams over time.[3]

90.     Long-chain PFASs, particularly perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS"), were the first to be widely produced and used. Although these PFAS were manufactured since the 1950s, little was publicly known about their toxicity during the fifty years of their use.[4] By the early 2000s, scientific public health research had overwhelmingly

---

[3] Pérez, F. et. al., *Accumulation of perfluoroalkyl substances in human tissues*. ENVIRONMENT INTERNATIONAL, 59, 354–362 (2013), https://doi.org/10.1016/j.envint.2013.06.004. (Last accessed May 5, 2025).

[4] Alexandra M. Hooven et al., *Trends in the Regulation of Per- and Polyfluoroalkyl Substances (PFAS): A Scoping Review*, 18 Int. J. Environ. Res. Public Health 10900 (2021), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC8536021/ (Last accessed May 5, 2025).

concluded that long-chain PFAS were toxic to human health, linking exposure to various health concerns including hormone disruption, kidney disease, endocrine dysfunction, birth defects, immune system impairment, and increased cancer risks.[5]

91.     In response to growing public awareness and mounting evidence of the health hazards associated with long-chain PFAS, chemical manufacturers and product manufactures – under increasing consumer and regulatory pressure – began phasing out the production and use of these substances.[6]

92.     In 2000, 3M, the primary U.S. chemical manufacturer of PFAS, announced a voluntary phaseout of PFOS, by 2002.[7] Then in 2006, the eight major leading companies in PFAS industry accepted the EPA's invitation to join the PFOAS Stewardship Program, which aimed to achieve a 95 percent reduction of the production of PFOA and the elimination of PFOA from emissions and products by 2015.[8] To meet the program goal of the EPA Stewardship Program, most PFAS manufacturing companies stopped the manufacture and import of long-chain PFAS, and then transitioned to alternative chemicals.[9]

### 3.     The Established Health Risks of PFHxA

93.     In phasing out long-chain PFAS, the companies who manufactured PFAS transitioned to the use of short-chain PFAS. According to these manufacturers, short-chain PFAS were safer alternatives because these compounds demonstrated faster elimination rates from biological systems, with half-lives in human blood measured in days or weeks rather than years. This apparent advantage led PFAS manufactures to market short-chain PFAS as safer alternatives, arguing that reduced body retention meant reduced risk of adverse health effects.

94.     This resulted in a rapid, industry-wide shift to short-chain PFAS, including manufacturers like Apple, to maintain product characteristics while claiming improved

---

[5] *Id.*

[6] *Id.*

[7] U.S. EPA, Fact Sheet: 2010/2015 PFOA Stewardship Program (2016), https://www.epa.gov/assessing-and-managing-chemicals-under-tsca/fact-sheet-20102015-pfoa-stewardship-program (Last accessed May 5, 2025).

[8] *Id.*

[9] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

environmental and health profiles. However, in doing so, these manufacturers included dangerous and unsafe alternatives like perfluorohexanoic acid ("PFHxA") – without a comprehensive toxicological evaluation or review of the growing concern among scientists and regulators about their long-term health impacts.[10] This substitution was not driven by evidence of safety, but by convenience and costs – inexpensive alternatives, leaving consumers exposed to dangerous chemicals.

95. Scientific research has revealed serious health effects associated with PFHxA exposure, including liver damage, histopathological changes in both liver and skin, alterations in gene expression related to steatosis, fatty acid metabolism, inflammation, and reproductive harm.[11, 12, 13] In fact, the EPA has released a report stating that the "available evidence indicates that PFHxA likely causes hepatic, developmental, hematopoietic, and endocrine effects in humans given sufficient exposure conditions."[14] As a result, consumers are increasingly conscious of whether their purchase and lifestyle choices are exposing them to unnecessary PFAS, especially given the known risks and cumulative effect of exposure due to bioaccumulation. Experts also recommend that consumers avoid any exposure they can, including the EPA who has advised "the most important steps you and your family can take to protect your health is to understand how to limit your exposure

---

[10] Alyssa Wicks, Heather D. Whitehead, and Graham F. Peaslee, *Presence of Perfluorohexanoic Acid in Fluoroelastomer Watch Bands*, Environmental Science & Technology Letters (Dec. 18, 2024), https://pubs.acs.org/doi/10.1021/acs.estlett.4c00907 (Last accessed May 5, 2025).

[11] Lisa M. Weatherly et al., *Systemic Toxicity Induced by Topical Application of Perfluoroheptanoic Acid (PFHpA), Perfluorohexanoic Acid (PFHxA), and Perfluoropentanoic Acid (PFPeA) in a Murine Model*, 171 FOOD AND CHEMICAL TOXICOLOGY 113515 (2023), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9989852/ (Last accessed May 5, 2025).

[12] Mélanie Blanc et al., *Mixture-Specific Gene Expression in Zebrafish (Danio rerio) Embryos Exposed to Perfluorooctane Sulfonic Acid (PFOS), Perfluorohexanoic Acid (PFHxA) and 3,3',4,4',5-Pentachlorobiphenyl (PCB126)*, 590-591 SCIENCE OF THE TOTAL ENVIRONMENT 249 (2017), https://pubmed.ncbi.nlm.nih.gov/28283292/ (Last accessed May 5, 2025).

[13] Kathleen M. Annunziato et al., *Subtle Morphometric, Behavioral and Gene Expression Effects in Larval Zebrafish Exposed to PFHxA, PFHxS and 6:2 FTOH*, 208 AQUATIC TOXICOLOGY 126 (2019), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6396680/(Last accessed May 5, 2025). .

[14] U.S. EPA, *Iris Toxicological Review of Perfluorohexanoic Acid [Pfhxa, Casrn 307-24-4] and Related Salts* (2023), https://cfpub.epa.gov/ncea/iris_drafts/recordisplay.cfm?deid=357314

to PFAS."[15]

96. Safer alternatives – that do not contain PFAS, including the hazardous and toxic PFHxA – do exist, and have long been available and widely used across industries by the manufacturers that want to do the right thing – and prevent chemical/toxic exposure to consumers. One of these examples is silicone – a durable, flexible material that has been commercially available for decades, and is commonly used in products designed for prolonged skin contact – including medical devices, wearable technology, baby products, and more. Silicone does not contain or leach toxic fluorinated compounds like PFAS, and has a well-established safety profile, making it a practical and proven alternative.

97. Yet, Apple has opted in to continue manufacturing watch bands that contain hazardous concentrations of PFHxA – a chemical substance known to pose severe health risks - to avoid increased costs associated with switching to safe alternatives that require processes changes, and more expensive inputs.

**B. Apple's Fleuolmaster Sport Bands**

98. The Apple Sport Band, considered the default Apple Watch band, is crafted from a fluoroelastomer material—a synthetic rubber material that contains fluorinated polymers and are considered a polymeric form of per- and polyfluoroalkyl substances that are specifically designed to be resilient against skin oils and sweat, making them attractive in applications requiring durability and chemical resistance, such as smartwatch bands.

99. Below is a fair and accurate depiction of an Apple Watch equipped with the Sport Band.

---

[15] U.S. EPA, *Meaningful and Achievable Steps You Can Take to Reduce York Risk, PFAS*, https://www.epa.gov/pfas/meaningful-and-achievable-steps-you-can-take-reduce-your-risk (Last accessed May 5, 2025).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265



100.   On information and belief, all of the Sport Bands making up the Class Products are the same or substantially similar in their design, manufacture, material, and chemical composition, including their elevated and harmful concentrations of PFHxA. On further information and belief, Apple has not substantially changed the design, material, and chemical composition of the Sport Band since its initial release in 2015.

101.   Apple's design and manufacture of the Sport Bands result in alarming levels of PFHxA in the Sport Bands that exceed safety threshold limits for textiles intended for prolonged skin contact and physical activity, thereby posing substantial health risks to consumers. These hazardous PFHxA concentrations render the Class Products unsafe and dangerous, especially for prolonged use (and on the inner side of the wrist, an area vulnerable to dermal absorption). This design is not incidental but results from Apple's intended design choices and manufacturing specifications. Despite available and safe alternative formulations and production methods, Apple has prioritized certain performance characteristics and cost considerations over minimizing harmful levels of PFHxA in the Sport Bands.

**C.      Established Threshold Limits for PFHxA in the Sport Bands**

102.   Recognizing the significant health risks associated with exposure to PFHxA, governments, manufactures, and regulatory agencies around the world, including Apple, have established specific threshold limits for these chemicals in consumer textiles.

### 1. Apple's Regulated Substances Specification 069-0135

103. Apple has acknowledged the potential health risks associated with prolonged dermal exposure to the chemicals used to make the Sport Bands, by establishing restrictions on certain PFAS compounds, including PFHxA.

104. Since at least 2018, Apple has known or should have known that the Claas Products contain PFHxA harmful to human health and unsafe for prolonged use. Even though Apple has long known of the Elevated Levels of PFHxA in its Class Products, it did not disclose to purchasers that its watches are unsafe for prolonged contact and use – especially when worn on the inside of the wrist, where dermal absorption is heightened.

105. For at least the past 5 years, Apple has promoted the safety of the Class Products and encouraged their prolonged wear while internally acknowledging that PFHxA—particularly at levels elevated equal or greater than 25 ppb—presents a serious health and safety risk and concealing such information from consumers.

106. Initially released in December 2002, Apple Regulated Substances Specification ("RSS") 069-0135 and its 11 revisions outline Apple's global requirements for the use of chemical substances in its products and has been published by Apple. According to Apple, these restrictions are based on international laws, directives from regulatory agencies, eco-label requirements, environmental standards, and Apple policies, all with the aim of protecting human health and the environment.[16]

107. Apple employs a two-tier system to manage potentially hazardous chemicals in its products, which involves classifying substances as either "Reportable" or "Restricted." Restricted substances represent Apple's definitive chemical limitations, which are substances that Apple has determined must be prohibited or strictly limited in all products, accessories, and packaging.[17]

108. When Apple classifies a substance as "restricted," it comes with specific, non-negotiable threshold limits. Restricted substances also require rigorous compliance documentation,

---

[16] Apple Inc., *Apple Regulated Substances Specification, No. 069-0135-N* (Mar. 2025), https://www.apple.com/environment/pdf/Apple_Regulated_Substances_Specification.pdf
[17] *Id.*

typically in the form of certified test reports or declarations from suppliers of non-use.[18] Suppliers must demonstrate through analytical testing that their materials fall below the specified threshold limits.[19] This represents Apple's most stringent level of chemical control. For "reportable" substances, suppliers are required to report the use of all substances that meet the detectable limit.[20]

109. In Apple's RSS-069-0135-K, published on March 30, 2018, Apple designated PFHxA as a "reportable substance," requiring its suppliers to report a substance if it was "detectable," and thus, at all times Apple knew or at least, should have known, of the dangerously high levels of PFHxA in the Class Products, and harmful effects of PFHxA.[21]

110. On March 21, 2021, published RSS-069-0135-L, which revised its policies with respect to PFHxA—requiring suppliers to report concentration of PFHxA and its salts in Apple products that was equal to or greater than 25 ppb.[22] In RSS-069-0135-L, Apple informed its suppliers to "expect future regulatory restriction Jan. 1, 2023 (reporting thresholds will become restriction thresholds)"—citing the European Union's proposed restrictions on PFHxA, its sales and related substances.[23]

111. In March 2023, Apple revised its RSS again, moving PFHxA from a "reportable" category of chemical substances to "restricted," which made 25 ppb for the sum of PFHxA and its salts the threshold limit in Apple materials and products, and no longer simply a reportable threshold.[24] This specification was to take effect on May 15, 2023 – however, even if it did – as shown by Plaintiffs' commissioned testing of a Sport Band purchased in 2025 – unsafe and Elevated Levels of PFHxA are still present in the Sport Bands.

---

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] Apple Inc., *Apple Regulated Substances Specification, No. 069-0135-K* (Sept. 2018), https://www.apple.com/jp/environment/pdf/Apple_Regulated_Substances_Specification_Sept2018.pdf (Last accessed May 5, 2025).

[22] Apple Inc., *Apple Regulated Substances Specification, No. 069-0135-L* (Mar. 2021), https://www.apple.com/jp/environment/pdf/Apple_Regulated_Substances_Specification_March2021.pdf (Last accessed May 5, 2025).

[23] *Id.*

[24] Apple Inc., *Apple Regulated Substances Specification, No. 069-0135-M* (Mar. 2023), https://www.apple.com/co/environment/pdf/Apple_Regulated_Substances_Specification_March2023.pdf (Last accessed May 5, 2025).

112.    Apple also instructed its suppliers to phase out PFAS immediately by October 2025 for all but EU-approved essential use exemptions,[25] though it is apparent that at least in the U.S. – the Sport Bands continue to contain exceedingly high levels of PFHxA, as shown by Plaintiffs' testing of the bands conducted in 2025.

113.    In March 2025, Apple revised its RSS again: effective August 1, 2025, Apple will require its suppliers to report any intentional use of PFAS in its products, and report PFAS of concentration greater than 25 ppb if incidentally present.[26] Apple again instructed its suppliers in its March 2025 RSS to begin phase out [of PFAS] immediately.[27] Apple will continue to permit its suppliers to intentionally use PFHxA in its products up and through August 2025.

114.    Therefore, Apple has known the Class Products contain hazardous Elevated Levels of PFHxA, and yet continued to advertise and promote prolonged wear of the watches despite knowing they are unsuitable and unsafe for such purposes.

### 2.    EU's REACH Annex XVII to Regulation (EC) No 1907/2006

115.    The REACH Restrictions List, also known as Annex XVII, was established as part of the European Union's Registration, Evaluation, Authorization and Restriction of Chemicals (REACH) regulation to protect human health and the environment from risks posed by hazardous chemicals. This list restricts certain substances from being manufactured, used, or placed on the EU market, with restrictions applying to substances on their own, in mixtures, or in articles.

116.    On December 20, 2019, Germany submitted a restriction dossier to the European Chemicals Agency (ECHA) proposing to restrict PFHxA, its salts, and PFHxA-related substances under REACH Annex XVII.[28] In order to address the risks to human health and the environment, Germany proposed concentration limits of 25 ppb for the sum of PFHxA and its salts.[29]

---

[25] *Id.*

[26] Apple Inc., *Apple Regulated Substances Specification, No. 069-0135-N* (Mar. 2025), https://www.apple.com/environment/pdf/Apple_Regulated_Substances_Specification.pdf (Last accessed May 5, 2025).

[27] *Id.*

[28] Commission Regulation 2024/2462, *Amending Annex XVII to Regulation (EC) No 1907/2006 as regards undecafluorohexanoic acid (PFHxA), its salts and PFHxA-related substances*, 2024 O.J. (L 2462), https://eur-lex.europa.eu/eli/reg/2024/2462/oj/eng (Last accessed May 5, 2025).

[29] *Id.*

117.   On February 29, 2024, the EU Member States voted in favor of the restriction proposal regarding PFHxA, its salts, and PFHxA-related substances. As result, all textiles in clothing and related accessories placed on the market for the general public in the EU on or after October 10 2026, are prohibited from containing PFHxA at concentrations equal to or greater than 25 ppb.[30]

118.   The EU's recent restriction on PFHxA – limiting its presence in wearable textiles, accessories, and other products underscores the serious health and environmental concerns associated with PFHxA. PFHxA is highly mobile in water, difficult to remove, and capable of widespread environmental dispersion. It is also persistent and bioaccumulative, raising significant concerns for its long-term toxicity, particularly in products like here – designed for prolonged contact and worn on the inside of the wrist, where the skin absorption is heightened.

119.   Moreover, the EU's regulations reflect scientific consensus that PFHxA poses unacceptable risks to public health, including effects on the liver, kidneys, and immune system. By imposing strict limits on PFHxA in consumer products, the EU has acknowledged that even lower levels of exposure can be hazardous.

**D.     The Sport Bands Contain Hazardous and Toxic Levels of PFHxA**

120.   Laboratory testing has revealed alarming and hazardous levels of PFHxA in the Sport Bands. Both independent university research and Plaintiff-commissioned testing have detected PFHxA in Apple brand watch bands at concentrations that are harmful to human health, significantly exceeding Apple's internal thresholds and the European Union's regulatory limits for safety.

**1.     The Wicks Study**

121.   On December 18, 2024, researchers from the University of Notre Dame published a study in Environmental Science & Technology Letters that tested 22 fluoroelastomer smart watch bands to determine their PFAS content using particle-induced gamma-ray emission (PIGE) spectroscopy to screen for total fluorine content on the band surfaces, QuEChERS (Quick, Easy, Cheap, Effective, Rugged, and Safe) extraction followed by liquid chromatography-tandem mass spectrometry (LC-MS/MS) for targeted PFAS analysis (hereafter, the "Wicks Study").[31]

---

[30] *Id.*
[31] Wicks et. al., *supra* note 10.

122. The Wicks Study identified Apple as one of the brands of watch bands tested. According to the researchers, they categorized the watch bands tested based on three price point categories: "Inexpensive" (I, <$15), "Midrange" (M, $15-$30), and "Expensive" (E, >$30).[32] Ultimately, it was determined the "Expensive" and "Mid-range" smartwatch bands contained significantly elevated levels of PFHxA. According to the study, the median concentration for samples with detectable PFHxA, 773 ng/g, is very high in comparison to other recent studies, which, combined, had observed PFHxA concentrations up to 199 ng/g.[33] The researchers also noted that such high concentrations of PFHxA detected in the samples of the watch bands suggest that it is more likely an integral part of the manufacturing process rather than a degradation product.[34]

### 2. Plaintiffs' Independent Lab Testing

123. Plaintiffs' counsel retained Symbio Laboratories—an ISO/IEC 17025 accredited and DoD-ELAP lab—to analyze a new black Apple Watch Sport Band that was purchased directly from Apple's website on March 13, 2025. The laboratory analysis specifically tested for PFAS using EPA method 1633-Prep-001 and EPA 1633-INST-001, which was performed using reversed phase ultra-high performance liquid chromatography triple quadrupole mass spectrometry analysis.

124. The certificate of analysis results revealed that the Apple Sport Band contained PFHxA at a concentration of 1020.114 ng/g (nanograms per gram), which is 40.8 times higher than Apple and European Union's threshold detectable limit for PFHxA.[35]

125. Plaintiffs' lab testing included quality control measures, showing that PFHxA was not detected in the Laboratory Reagent Blank, confirming that the contamination was from the sample itself rather than laboratory processes. The Laboratory Fortified Blank showed that the testing method could detect PFHxA at expected levels (measured at 0.392 ng/g in the control sample).

---

[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] The unit ng/g (nanograms per gram) is the equivalent metric expression of 25 parts per billion (ppb) in mass concentration. Thus, a measurement of 1020.114 ng/g can be precisely expressed as 1020.114 ppb, making these units interchangeable when working with mass-based concentrations.

**E.  Dermal Exposure to the Sport Bands for Extended Periods is Unsafe**

126.  Dermal contact with PFHxA poses serious health risks, especially when found in Class Products containing concentrations of 1,020.114 ng/g. That's more than 40 times the 25-ppb threshold established by both Apple's recent internal guidelines and European Union regulations. The EU specifically designated 25 ppb threshold as the limit beyond which PFHxA pose an unreasonable risk to human health. As a result, starting October 2026, the EU will ban textiles containing PFHxA at or above this level. Moreover, according to EPA findings and scientific research, sufficient PFHxA exposure negatively impacts liver, developmental, blood-forming, and hormone systems in humans.

127.  PFAS compounds enter the human body through multiple exposure pathways, including consumption of contaminated drinking water, ingestion of PFAS-containing food, swallowing contaminated soil or dust, inhalation of PFAS-containing air, dermal contact with PFAS-containing materials, and use of products manufactured with or packaged in PFAS-containing materials.[36] Experts, including the EPA, recommend consumers take steps to limit exposure to PFAS wherever possible due to the known risks to human health.

128.  Of relevance here, is the pathway of dermal exposure. The Elevated Levels of PFHxA in the Sport Bands renders the Class Products unreasonably dangerous particularly because Apple designs, markets, and sells the Sport Bands for the purpose of extended daily and nightly wear, with users typically wearing the Sport Bands on their wrists for more than 12 hours daily, creating a significant risk of chemical transfer to the skin and subsequent dermal absorption.[37]

129.  This danger is unreasonably heightened for bands marketed as "sports and fitness" monitors, as physical activity and/or prolong wear induces sweating and open skin pores – physiological conditions that can significantly increase the rate of dermal absorption of harmful

---

[36] Oddný Ragnarsdóttir et. al*., Dermal bioavailability of perfluoroalkyl substances using in vitro 3D human skin equivalent models*, ENVIRONMENTAL INTERNATIONAL (Jun. 2024), https://www.sciencedirect.com/science/article/pii/S0160412024003581
[37] Wicks et. al., *supra* note 10.

substances like PFHxA.[38] When considered alongside findings that more than 50% of PFHxA exposure can be dermally absorbed (with over 36% entering the bloodstream) according to in vitro human skin models, the Sport Bands represent a significant exposure pathway for these toxic chemicals.[39]

130. Apple specifically recognizes that PFAS in wearable products require heightened scrutiny because of the potential health risks associated with dermal exposure to chemicals, including those resulting from the breakdown of synthetic materials in the Sport Bands due to skin perspiration.[40, 41]

131. In Apple's 2020 Environmental Progress Report, it represents that it "it places special attention on material that come in skin contact" and that in its nickel leach testing on the Apple Sport Bands, Apple places the bands into jars of sweat (illustrated below) to ensure the nickel "stays where it belongs—in the product."[42] Apple's use of sweat as a solvent in its toxicological research and evaluation process is consistent with independent research demonstrating that sweat plays a substantial roll in the bioavailability of PFHxA contained in consumer products.[43] Thus, Apple is fully aware and acknowledges potential health hazards of dermal absorption from the Elevated

---

[38] Cara Lynn Shultz, *Smart Watch Bands Contain 'Very High Concentrations' of Forever Chemicals That May Be Absorbed into Skin*, PEOPLE MAGAZINE (Jan. 2025), https://people.com/smart-watch-bands-very-high-concentrations-pfas-forever-chemicals-8776525?utm_campaign=people&utm_content=likeshop&utm_medium=social&utm_source=instagram (Last accessed May 5, 2025).

[39] Oddný Ragnarsdóttir et. al*., supra* at note 35.

[40] Apple Inc.,*Restricted Chemicals for Prolonged Skin Contact Materials*, https://www.apple.com/support/assets/docs/products/watch/Restricted_Chemicals_for_Wearables.pdf

[41] Apple, Inc., *Integrating Toxicological Assessments in Material Selection for Apple Products* (July 2022), https://www.apple.com/environment/pdf/Integrating_Toxicological_Assessments_in_Material_Selection_for_Apple_Products_07152022.pdf (Last accessed May 5, 2025).

[42] Apple, Inc., *Environmental Progress Report* (Mar. 2020), https://www.apple.com/environment/pdf/Apple_Environmental_Progress_Report_2020.pdf

[43] Namazkar, Shahla, Oddný Ragnarsdóttir, Anton Josefsson, Felice Branzell, Sebastian Abel, Mohamed Abou-Elwafa Abdallah, Stuart Harrad & Jonathan P. Benskin, *Characterization and Dermal Bioaccessibility of Residual- and Listed PFAS Ingredients in Cosmetic Products*, 26 ENV'T SCI.: PROCESSES & IMPACTS 259 (2024) https://pubs.rsc.org/en/content/articlelanding/2024/em/d3em00461a (Last accessed May 5, 2025).

Levels of PFHxA in the Sport Bands, and how sweat plays a role in releasing toxic chemicals from the bands.



132.    In a March 2021 white paper, entitled, *Restricted Chemicals for Prolonged Skin Contact Materials for Prolonged Skin Contact Materials*, Apple represents that it "pays special attention to materials in prolonged skin contact" and appl[ies] "rigorous controls for them."[44] In this white paper, Apple identifies PFAS, including PFHxA, as one of the chemicals that it restricts in its products based on prolonged skin, further underscoring the significant health risks associated with dermal exposure to Elevated Levels of PFHxA.[45] Still, Apple continued to advertise and sell the

---

[44] *Restricted Chemicals for Prolonged Skin Contact Materials*, *supra* note 39.
[45] *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Class Products to consumers' without disclosing the unsafe and elevated levels of PFHxA in the Sport Bands.

133.    In a July 2022 white paper, entitled, *Integrating Toxicological Assessments in Material Selection for Apple Products*, Apple stated the following:

> Products in prolonged skin contact, such as Apple Watch, require more rigorous controls on material safety. With customers often wearing Apple Watch for more than 12 hours per day, every day, exposure is far greater than typical consumer electronic devices. Wearable technology potentially imparts higher risks to customers, increasing the importance of robust material selection decisions.[46]

134.    According to Apple, "[r]ecognizing these increased risks [associated with wearable technologies], Apple implemented more stringent processes to control materials in prolonged skin contact by fully integrating toxicological risk assessments during the material selection process with the design of new products," which inter alia includes a requirement that all products "[a]ll materials used in Apple products, including materials in prolonged skin contact, must comply with the Apple Regulated Substances Specification (069-0135)." [47] Again, Apple continued to advertise and sell the Class Products to without disclosing the unsafe and Elevated Levels of PFHxA in the Sport Bands.

135.    Apple's adoption of internal limits on PFHxA and similar substances in its products underscores its awareness of serious health risks caused by PFHxA and its absorption through the skin. Yet, despite Apple's public advertisements and insistence that its watch bands are safe for prolonged use, on the inside of the wrist where the dermal absorption is more likely, the Class Products are not safe for prolonged wear and use, and there is a clear disconnect between what Apple knows and what it tells consumers.

## F.    Apple's Knowledge and Concealment of Its Alarming Levels of PFHxA in the Sport Bands

136.    Apple has long-standing knowledge of the dangerously high levels of PFHxA in the Sport Bands and the serious health risks associated with these Elevated Levels of PFHxA, including

---

[46] *Integrating Toxicological Assessments in Material Selection for Apple Products*, *supra* note 40.
[47] *Id.*

liver damage, histopathological changes in both liver and skin, alterations in gene expression related to steatosis, fatty acid metabolism, inflammation, and reproductive harm. Indeed, the collective publicly available evidence demonstrates that Apple has known about the alarming levels of PFHxA in the Sport Bands since as early as 2018, when it first imposed a threshold reporting requirement on its suppliers for PFHxA concetration levels in Apple products.[48]

137.    Through Apple's Full Material Disclosure program, Apple documents the complete chemical composition of every homogenous material in every component of Apple products, including the Class Products and uses the program to "understand the material composition" of its products. According to Apple, its strategy for evaluating the materials that goes into its products is premised on "full knowledge of the chemical composition of materials used in its products and the life cycle exposures associated with those chemicals."[49]

138.    Apple receives declarations from its suppliers for the materials used in its products, which Apple claims go through automated and manual checks for accuracy and completeness. Furthermore, in compliance with Apple's threshold reporting requirements for PFHxA established under Apple's RSS, Apple's suppliers have directly reported and informed Apple that the Sport Bands contain dangerously high levels of toxic PFHxA above Apple's established threshold limit Apple has full knowledge and awareness of the fact that PFHxA is used in the Class Products, and the elevated concentration levels contained therein.

139.    Apple also knew or should have known of the human health hazards associated with the Elevated Levels PFHxA in the Class Products, and well before Plaintiffs purchased their Class products. Such knowledge is collectively evidenced by Apple's own admission that "products in prolonged skin contact, such Apple watch require more rigorous controls on material safety" and its implementation of internal thresholds and restrictions on the permissible concentration of PFHxA in the Class Products, which was done in anticipation of European Union's restrictions on levels of PFHxA in textiles due to the significant health hazards posed by the chemical.

---

[48] *Apple Regulated Substances Specification, No. 069-0135-K, supra* note 20.
[49] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

140.     Apple also possesses sophisticated capabilities to identify and evaluate potential health risks associated with chemicals in their products. Their internal processes are specifically designed to ensure that materials with unacceptable toxicological profiles are not permitted for use in their products, particularly those involving extended dermal contact.

141.     Apple's motive and desire to conceal and omit its knowledge of the unsafe and Elevated Levels of PFHxA in the Class Products is motivated by profit. Apple substantially profits from consumers who desire to use the Class Products for prolonged wear and exercise and who believe the company's pervasive promises surrounding health, wellness, and environmental sustainability. Moreover, Apple consistently markets itself as a company that values the health of its employees, customers, and the environment. Plaintiffs and the Class members would not have purchased the Class Products or would have paid significantly less – had they known the Class Products contained alarming and unsafe levels of PFHxA – an undisclosed toxic chemical fundamentally at odds with Apple's cultivated image and branding of health, wellness, and environmental responsibility. Apple knew full well that disclosure of this information would undermine consumer trust, damage its brand, and diminish sales. Apple intentionally withheld this material information from consumers through calculated omissions in its advertising of the Class Products.

**G.     Apple Misrepresents the Sport Bands as Suitable for Prolonged Wear and Exercise**

142.     Apple's persistent promotion, advertising, and marketing of the Apple Watch—particularly those equipped with the Sport Bands—is centered around wearability during exercise, all-day activity, and prolonged wear. From its popular "Close Your Rings" national marketing and advertising campaign showcasing people of various ages and fitness levels engaging in activities throughout their day to advertisements highlighting the device's 18-hour battery life and workout tracking capabilities, Apple consistently emphasizes the Apple Watch as a constant companion for an active lifestyle.

143.     Apple specifically markets and advertises the Sport Bands as safe and suitable for prolonged wear during exercise, health monitoring, casual daily movement, and even sleep tracking. This pervasive and overall marketing and branding approach reinforces Apple's positioning of the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Apple Watch not merely as a technological accessory but as an essential wellness tool meant to be worn continuously as it monitors and motivates users through every aspect of their daily lives.

144. Apple falsely and misleadingly markets and advertises the Sport Bands in connection with the Apple Watch through widespread and pervasive representations touting its suitability to be worn for prolonged periods, including during exercise and sleep including but not limited to representations such as:

- "Take your workouts to the next level."
- "Measure all the ways you move."
- "Move. Exercise. Stand. Reach your goals, one ring at a time."
- "Better understand your daily health status."
- "Get a closer look at your shut-eye."
- "The ultimate workout partner.'
- "Keep tabs on your health."

145. As demonstrated and depicted below, through its website, Apple also uses imagery to falsely and misleadingly promote the Sport Bands in connection with the Apple Watch as safe and suitable to be worn for prolonged periods, including during exercise and sleep including but not limited to the images depicted below:

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265



Apple Watch with watchOS 5 is the ultimate fitness companion.

 

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21





22  146.  Contrary to Apple's representations contained in advertising and marketing, the

23  Class Products are not safe and suitable for prolonged wear and use during periods of perspiration

24  (such as exercise) because of the Elevated Levels of PFHxA in the Sport Bands, which are

25  unreasonably dangerous, particularly when in contact with skin for prolonged periods of time and

26  during perspiration.

27
28

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

# VI.     <u>TOLLING OF STATUTE OF LIMITATIONS</u>

**A.**     **Discovery Rule**

147.     Defendant's knowing and active concealment and denial of the facts alleged herein act to toll any applicable statute(s) of limitations. Plaintiffs and other Class members had no reasonable means of discovering the presence of unsafe and elevated PFAS, including PFHxA, in the Class Products. These substances are invisible, odorless, and cannot be detected through ordinary use or visual inspection. Apple's pervasive marketing campaign – promoting the prolong use of the watches during sleep, fitness, exercise, and daily activities – also prevented Plaintiffs and the Class from learning the troubling truth – that the Class Products were unsafe for prolong use and wear. There were no disclosures of presences of PFAS in the products on product labeling, marketing, or through other public-facing advertisements. As a result, each Plaintiff reasonably relied on Apple's advertisements and statements that the watch bands were safe for prolonged skin contact and daily wear. The concealed nature of PFHxA and Apple's failure to provide adequate disclosure or warning rendering the risks unknowable to consumers absent specialized testing – something no reasonable consumer would have the reason nor expertise to perform.

148.     Thus, Plaintiffs and Class members had no realistic ability to discover the presence of Elevated Levels of PFHxA in the Sport Bands within the applicable statute of limitations, and could not have discovered through the exercise of reasonable diligence that Defendant was concealing and omitting the Elevated Levels of PFHxA in the Sport Bands while misrepresenting the safety and quality of the Sport Bands.

149.     Any statutes of limitation otherwise-applicable to any claims asserted herein have thus been tolled by the discovery rule.

**B.**     **Fraudulent Concealment**

150.     All applicable statutes of limitation have also been tolled by Defendant's knowing, active and ongoing fraudulent concealment of the facts alleged herein. As a result of Defendant's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

FIRST AMENDED CLASS ACTION COMPLAINT

**C.    Estoppel**

151.    Defendant has had, and continues to have, a duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the Class Products, including the facts that the Sport Bands contained unsafe and Elevated Levels of PFHxA.

152.    Instead, Defendant actively concealed the true character, quality, and nature of the Class Products and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the Class Products.

153.    Plaintiffs and Class members reasonably relied upon Defendant's knowing and affirmative misrepresentations, conveying the message that watches were intended for prolong use and/or active concealment of these facts.

154.    Based on the foregoing, Defendant is estopped from relying on any statutes of limitation in defense of this action.

## VII.    CLASS ACTION ALLEGATIONS

155.    Plaintiffs bring this action as a class action on behalf of themselves and all others similarly situated as members of the Class defined as follows:

**Nationwide Class**

> All persons who purchased a new Class Product at retail in the United States from Apple, Inc. or an authorized reseller of Apple, Inc. ("Nationwide Class");

In the alternative to the Nationwide Class and pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiffs seek to represent the following individual States Class:

**California Subclass**

> All persons who purchased a new Class Product at retail in the state of California from Apple, Inc. or an authorized retailer of Apple, Inc. ("California Subclass").

**Illinois Subclass**

> All persons who purchased a new Class Product at retail in the state of Illinois from Apple, Inc. or an authorized retailer of Apple, Inc. ("Illinois Subclass").

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

### Michigan Subclass

All persons who purchased a new Class Product at retail in the state of Michigan from Apple, Inc. or an authorized retailer of Apple, Inc. ("Michigan Subclass").

### Pennsylvania Subclass

All persons who purchased a new Class Product at retail in the Commonwealth of Pennsylvania from Apple, Inc. or an authorized retailer of Apple, Inc. ("Pennsylvania Subclass").

### New York Subclass

All persons who purchased a new Class Product at retail in the state of New York from Apple, Inc. or an authorized retailer of Apple, Inc. ("New York Subclass").

156.   Collectively, the Nationwide Class and the State Subclass are referred to as the "Classes".

157.   Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

158.   **Reservation of Rights to Amend the Class Definition.** Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

159.   **Numerosity.** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

160. **Common Questions Predominate.** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

    a.    Whether Defendant engaged in the conduct alleged herein constitutes fraud;

    b.    Whether Defendant's alleged conduct violates applicable consumer protection laws;

    c.    Whether Defendant's alleged conduct violates applicable warranty laws;

    d.    Whether Defendant's alleged conduct violates other laws asserted herein;

    e.    Whether the Class Products contain unsafe and Elevated Levels of PFHxA;

    f.    Whether Defendant had actual or imputed knowledge about the elevated level of PFHxA in the Class Products;

    g.    When Defendant became aware of the Elevated Levels of PFHxA in the Class Products

    h.    Whether Defendant knowingly failed to disclose the Elevated Levels of PFHxA in the Class Products;

    i.    Whether Defendant had a duty to disclose the Elevated Levels of PFHxA in the Class Products;

    j.    Whether Plaintiffs and the Class members overpaid for the Class Products than they received;

    k.    Whether Plaintiffs and the Class members received the benefit of the bargain from their purchase of the Class Products;

    l.    Whether Plaintiffs and the Class members are entitled to damages;

    m.    Whether Plaintiffs and the Class are entitled to injunctive relief; and

    n.    Whether Defendant was unjustly enriched by its unlawful conduct.

161. **Predominance.** The common questions of law and fact predominate over questions that affect only individual Class Members.

162. **Typicality.** Plaintiffs' claims are typical of the claims of the Class Members they seek to represent because Plaintiffs, like the Class Members purchased Defendant's misleading and

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

deceptive Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiffs' and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

163. **Adequacy.** Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the Class Members Plaintiffs seek to represent. Plaintiffs will fairly and adequately protect Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

164. **Ascertainability.** Class Members can easily be identified by an examination and analysis of the business records regularly maintained by Defendant, among other records within Defendant's possession, custody, or control. Additionally, further Class Member data can be obtained through additional third-party retailers who retain customer records and order histories.

165. **Superiority and Substantial Benefit.** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

   a. The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

   b. Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy its ill-gotten gains;

   c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

d.    When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and Class Members can seek redress for the harm caused to them by Defendant.

166.   **Inconsistent Rulings.** Because Plaintiffs seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

167.   **Injunctive/Declaratory Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole.

168.   **Manageability.** Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

### VIII.    CAUSES OF ACTION

**A.    Claims Brought on Behalf of the Nationwide Class**

### COUNT ONE

### FRAUD BY CONCEALMENT/OMISSION

### (Common Law)

**(On Behalf of the Nationwide Class, in the Alternative, the State Subclasses)**

169.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

170.   Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Subclasses.

44

171.    Defendant made material omissions concerning a presently existing or past fact in that, for example, Defendant did not fully and truthfully disclose to its customers that the Class Products contained Elevated Levels of PFHxA, which was not readily discoverable by them prior to purchase or through visual inspection. These facts, and other facts as set forth above, were material because they directly impact the safety and central functionality of the Class Products.

172.    Defendant had a duty to disclose these omitted material facts because:

a.    Defendant was in a superior position to know the true state of facts about the unsafe and Elevated Levels of PFHxA in the Class Products;

b.    Defendant knew that Plaintiffs and the Class members could not reasonably have been expected to learn or discover the unsafe and Elevated Levels of PFHxA through visual inspection of the Class Products;

c.    The unsafe and Elevated Levels of PFHxA in the Class Products is material to a reasonable consumer's purchase decision;

d.    The unsafe and Elevated Levels of PFHxA in the Class Products constitutes an unreasonable safety hazard; and

e.    The unsafe and Elevated Levels of PFHxA in the Class Products affects the central function of the Class Products.

173.    Defendant was in exclusive control of the material facts and such facts were not known to Plaintiffs or the Class members. Defendant also possessed exclusive knowledge of the Elevated Levels of PFHxA in Class Products.

174.    Defendant omitted and/or concealed these material facts, in whole or in part, with the intent to induce Plaintiffs and the Class members to purchase the Class Products at a higher price for the Class Products, which did not match the Class Products' true value.

175.    Plaintiffs and the Class members were unaware of these omitted material facts and would not have purchased the Class Products did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs and the Class members were justified.

176.   Plaintiffs and the Class members reasonably believed that the watches were suitable for prolong use – as intended by Apple – and thus relied on Apple's failure to disclose material information about the hazardous levels of PFHxA within Apple watches, and suffered harm as a result.

177.   As a result of the omissions and/or concealment of facts alleged herein, Plaintiffs and the Class members sustained damages in an amount to be proven at trial for their lost benefit of the bargain and/or overpayment at the time of purchase.

178.   Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights and well-being of Plaintiffs and the Class members in order to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT TWO

### FRAUD BY MISREPRESENTATION

### (Common Law)

### (On Behalf of the Nationwide Class, in the Alternative, the State Subclasses)

179.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

180.   Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Subclasses.

181.   Defendant falsely represented to Plaintiffs and the Class that the Class Products were safe and suitable for prolonged wear and use during exercise.

182.   Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase the Class Products.

183.   Defendant knew or should have known that their representations about the Class Products were false in that the Class Products are not safe or suitable for prolonged wear and use during periods of perspiration (such as exercise) as discussed throughout. Defendant knowingly

allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class.

184. Plaintiffs and the Class did in fact rely on these misrepresentations and purchased the Class Products to their detriment. Given the deceptive manner in which Defendant advertised, marketed, represented, and otherwise promoted the Class Products, Plaintiffs' and the Class's reliance on Defendant's misrepresentations was justifiable.

185. As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they would not have purchased the Class Products at all had they known of the safety risks associated with the Class Products and that they do not conform to Defendant's advertising and marketing.

186. Plaintiffs and the Class seek actual damages, attorney's fees, costs, and other such relief the Court deems proper.

### COUNT THREE

### NEGLIGENT MISREPRESENTATION

### (Common Law)

### (On behalf of the Nationwide Class, in the Alternative, the State Subclasses)

187. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

188. Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Subclasses.

189. Defendant had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, detailing, distribution, and sale of the Products.

190. Defendant breached its duty to Plaintiffs and the Class by developing, testing, manufacturing, marketing, detailing, distributing, and selling the Class Products to Plaintiffs and the Class that did not have the qualities, characteristics, and suitability for use as advertised by Defendant and by failing to promptly remove the Products from the marketplace or take other appropriate remedial action.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

191. Defendant knew or should have known that the qualities and characteristics of the Products were not as advertised, marketed, detailed, or otherwise represented or suitable for its intended use and were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that the Class Products containing the hazardous concentrations of PFHxA posed severe health risks, were not safe or suitable for prolong wear on the inside of the wrist, where the level of dermal absorption is heightened.

192. As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they would not have purchased the Products at all had they known that the Products were not safe or suitable for human use and that the Class Products do not conform to the Product's marketing, advertising, or statements.

193. Plaintiffs and the Class seek actual damages, attorney's fees, costs, and any other just and proper relief available.

## COUNT FOUR

### UNJUST ENRICHMENT

### (Common Law)

### (On behalf of the Nationwide Class, in the Alternative, the State Subclasses)

194. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

195. Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Subclasses.

196. To the extent required by law, this cause of action is alleged in the alternative to the contract based claims, as permitted under Fed. R. Civ. P. 8.

197. As a result of its misrepresentations, wrongful and fraudulent acts and omissions, as set forth above, pertaining to the Elevated Levels of PFHxA in the Class Products, and the concealment of such information, Apple charged a higher price than the Class Products' true value and Defendant obtained monies which rightfully belong to Plaintiffs and the Class members.

198. Apple enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and the Class members, who paid a higher price for the Class Products which actually had lower

values. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

199.   Apple's conduct, representations, and omissions caused injuries to Plaintiffs and Class members because they would not have purchased the Class Product if the true facts were known.

200.   Plaintiffs, therefore, seek an order requiring Apple to return the monies unjustly obtained, plus interest.

**B.     Claims Brought on Behalf of the California Subclass**

**COUNT FIVE**

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

**(Brought by Plaintiffs Cavalier and Krzyzek on behalf of the California Subclass)**

201.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

202.   Plaintiffs Dominique Cavalier and Kiley Krzyzek (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the California Subclass.

203.   California Business & Professions Code, sections 17200, et seq. (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

204.   Defendant has engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally omitting from Plaintiffs and the California Subclass members that the Class Products contain Elevated Levels of PFHxA. Defendant should have disclosed this information because it was in a superior position to know the true facts related to the Elevated Levels of PFHxA in the Class Products, and Plaintiffs and California Subclass members could not have been reasonably expected to learn or discover these true facts.

205.   The Elevated Levels of PFHxA in the Class Products pose a serious health risk, triggering Defendant's duty to disclose.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

206.     Defendant, in its advertising and marketing of the Class Products, made misleading statements and a fraudulent omission regarding the Elevated Levels of PFHxA quality and characteristics of the Class Products despite the fact the Class Products contain Elevated Levels of PFHxA not safe for prolonged wear and during periods of perspiration (such as exercise), nor are they designed specifically to promote human health, as advertised by Defendant. Instead, the Class Products pose an unreasonable safety hazard to human health, especially when worn on the underside of the wrist for prolonged hours of days and/or nights, as directed by Defendant, where the body's absorption rate of the toxic chemicals is heightened. Furthermore, as much as 60% of toxic PFAS may be topically absorbed into the skin, and sweat may increase the already hazardous rate of absorption. Worse yet, Defendant recommends its Products be worn during exercise, when consumers are likely to perspire, and thus exacerbate absorption. Such claims and omissions appear on the advertising and marketing of the Class Products, which are sold online, at retail stores, and point-of-purchase displays.

207.     Defendant's advertising and marketing of the Class Products led to, and continues to lead to, reasonable consumers, including Plaintiffs, believing that the Class Products are safe for prolonged wear and use during periods of perspiration (such as exercise).

208.     Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

209.     Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

FIRST AMENDED CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

210. All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

### *"Unfair" Prong*

211. Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

212. Defendant's action of misrepresenting the Class Products as suitable for prolonged wear and use during exercise and omitting and concealing the Elevated Levels of PFHxA in the Class Products does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive Class Products commensurate with their reasonable expectations, overpay for the Class Products, receive products of lesser standards than what they reasonably expected to receive, and are exposed to increased health risks. Consumers cannot avoid any of the injuries caused by Defendant's deceptive advertising and marketing of the Class Products. Accordingly, the injuries caused by Defendant's deceptive advertising and marketing outweigh any benefits.

213. Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

214. Here, Defendant's conduct of labeling the Class Products as safe and suitable for prolonged wear and use during periods of perspiration (such as exercise)when the Class Products contain Elevated Levels of PFHxA, a toxic chemical which also pose risk of serious harm to human health, especially when absorbed by the skin daily and all day long, and during exercise, as per use directed and intended by Defendant. The Class Products are also worn on the underside of the wrist,

where the body's absorption rate of the toxic chemicals is heightened, and where sweat can increase PFAS absorption. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

215. Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

216. Defendant's advertising and marketing of the Class Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations and omission constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

217. There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from advertising the Class Products as safe and suitable for prolonged wear and use during periods of perspiration, such as exercise.

218. All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

### *"Fraudulent" Prong*

219. The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court,* 2 Cal. 4th 1254, 1267 (1992).

220. Defendant marketed and advertised the Class Products as safe and suitable for prolonged wear and use during exercise with the intent to sell the Class Products to consumers, including Plaintiffs and the California Subclass. Defendant knew or should have known such representations were deceptive due to the Elevated Levels of PFHxA in the Class Products. Defendant's misrepresentations and omissions are likely to mislead consumers into purchasing the Class Products because they are material to the average, ordinary, and reasonable consumer.

221. As alleged herein, the misrepresentations and omission by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

222.   Plaintiffs and the California Subclass reasonably and detrimentally relied on the material and deceptive representations and omission to their detriment in that they purchased the Class Products.

223.   Defendant has reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Class Products as safe and suitable for prolonged wear and use during exercise and/or could have disclosed the Elevated Levels of PFHxA in the Class Products.

224.   All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

### *"Unlawful" Prong*

225.   The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

226.   Defendant's advertising, marketing, and sale of the Class Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "CLRA") and California Business and Professions Code sections 17500, *et seq.* (the "FAL") as set forth below in the sections regarding those causes of action.

227.   Additionally, Defendant's marketing of the Class Products as safe and suitable for prolonged wear and exercise violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit), and 1711 (deceit upon the public), as set forth above.

228.   Defendant's conduct in making the deceptive representations and omission described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentations of material facts, as set forth

herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law claims stated in this lawsuit.

229.  Defendant's advertising and marketing of the Class Products, as alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

230.  Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from advertising the Class Products as safe and suitable for prolonged wear and use during exercise.

231.  As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiffs and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

232.  Accordingly, Plaintiffs seek a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result. Plaintiffs seek punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiffs and the California Subclass. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

including Plaintiffs. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

233. Pursuant to Business and Professions Code Sections 17203, Plaintiffs and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of advertising and marketing the Class Products as suitable for prolonged wear and use during exercise, and an order requiring the inclusion of a disclosure of the Elevated Levels of PFHxA in the Class Products.

234. **No adequate remedy at law.** Plaintiffs and the Class are entitled to equitable and injunctive relief as no adequate remedy at law exists:

- **Injunctive Relief:** Injunctive relief that Plaintiffs seek here is prospective and necessary to prevent future injury – Apple's ongoing misrepresentations and omissions concerning the unsafe natura of the Products. Plaintiffs seek for an order enjoining Defendant from advertising and marketing the Class Products with the challenged representations and material omissions, while such products contain Elevated Levels of PFHxA. Further, a corrective advertising campaign is necessary to dispel the public misperception about the Products. Furthermore, public injunction is available under the UCL and will allow to prevent harm to the public in general – a remedy that damages cannot provide.

- **Broader statutes of limitations.** The statutes for limitations for the causes of actions pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution. If the Class Members who purchased the Products prior to the furthest reach-back under the statute of limitations for various damages claims, they could be barred from recovery if equitable relief is not permitted under the statutes allowing equitable relief (like UCL/unjust enrichment).

- **Broader scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of actions asserted herein. It includes for example, Apple's overall unfair marketing scheme to promote prolong use of the Products, in order to gain competitive advantage of consumers' desire for Products that are safe for such prolong use. The UCL also creates a cause of action for violations of law – such as statutory or regulatory requirements and court orders – which allows a broader scope of conduct that may be rendered as unlawful or unfair under the UCL, wherein other causes of actions require additional elements to be entitled to damages. For example FAL requires actual or constructive knowledge of falsity.

- **Discovery has not yet commenced.** *Currently*, Plaintiffs cannot accurately quantify the damages caused by Defendant's harm and future harm, because discovery and Plaintiffs' investigation have not yet completed, rendering equitable harm necessary. For example, because the court has yet to remain unknown: the scope of the class, the identities of its members, their respective purchases, prices of past and future sales, quantities of future sales. Therefore, at this time, no adequate remedy is available to Plaintiffs and the Class, entitling them to equitable relief.

## COUNT SIX

## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW

## (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

## (Brought by Plaintiffs Cavalier and Krzyzek on behalf of the California Subclass)

235. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

236. Plaintiffs Dominique Cavalier and Kiley Krzyzek (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the California Subclass.

237. The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

238. Defendant violated section 17500 when it advertised and marketed the Class Products through the unfair, deceptive, and misleading representations regarding the safety and suitability of the Class Products for prolonged wear and use during exercise disseminated to the public through the Class Products' advertising and marketing. These representations were deceptive because the Class Products do not conform to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Class Products.

239. In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

240. Defendant's representations for prolonged wear and use during exercise as alleged herein were specifically designed to induce reasonable consumers, like Plaintiffs and the California Subclass, to purchase the Class Products.

241. As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiffs and members of the California Subclass were harmed in the amount of the purchase price they paid for the Class Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Class Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of the FAL in

1    damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the

2    California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct

3    to prevent ongoing and future harm that will result.

4         242.   Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes

5    malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as

6    permitted by law.  Defendant's misconduct is malicious as Defendant acted with the intent to cause

7    Plaintiffs and consumers to pay for a Products that they were not, in fact, receiving.  Defendant

8    willfully and knowingly disregarded the rights of Plaintiffs and consumers as Defendant was aware

9    of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading

10   consumers, including Plaintiffs.  Defendant's misconduct is oppressive as, at all relevant times, said

11   conduct was so vile, base, and/or contemptible that reasonable people would look down upon it

12   and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiffs

13   and consumers to cruel and unjust hardship in knowing disregard of their rights.

14   Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally

15   misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and

16   consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed,

17   authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of

18   Defendant.

## COUNT SEVEN

### VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (Brought by Plaintiffs Cavalier and Krzyzek on behalf of the California Subclass)

23        243.   Plaintiffs and the Class incorporate by reference each preceding and succeeding

24   paragraph as though fully set forth at length herein.

25        244.   Plaintiffs Dominique Cavalier and Kiley Krzyzek (for the purpose of this section,

26   "Plaintiffs") bring this cause of action on behalf of themselves and the California Subclass.

27

28

245. The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

246. The Products are "goods," as defined by the CLRA in California Civil Code §1761(a) because they are watch bands (tangible chattel) that Plaintiffs and the Class purchased primary for personal purposes.

247. Defendant is "person," as defined by the CLRA in California Civil Code §1761(c) because it is a corporation.

248. Plaintiffs and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d) because they are individuals who purchased the Purchased Products for personal purposes.

249. The purchase of the Class Products by Plaintiffs and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code section 1761(e) because Plaintiffs entered into an agreement with Defendant or its authorized vendors to purchase the Class Products.

250. Defendant engaged in unfair and deceptive acts in violation of the CLRA by the advertising and marketing the Class Products as suitable for prolonged wear and use during exercise, practices described above, and by knowingly and intentionally omitting and concealing from Plaintiffs and California Class members that the Class Products contain Elevated Levels of PFHxA. These acts and practices violate, at a minimum, the following sections of the CLRA:

- (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he/she/they do not have;

- (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

- (a)(9) Advertising goods and services with the intent not to sell them as advertised.

251. Defendant's uniform and material representations and omission regarding the Class Products were likely to deceive, and Defendant knew or should have known that its representations and omissions that the Class Products were safe and suitable for prolonged wear and use during exercise were misleading. Similarly, Defendant knew or should have known that its omissions regarding the dangerously high levels of PFHxA in the Class Products were misleading.

252. Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from Plaintiffs and the Class.

253. Plaintiffs and members of the California Subclass could not have reasonably avoided such injury. Plaintiffs and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiffs and members of the California Subclass would not have purchased the Class Products and/or would have purchased them on different terms had they known the truth.

254. Whether or not the Class Products contain Elevated Levels of PFHxA is a fact a reasonable consumer would consider important in selecting a smart watch. When Plaintiffs and the California Class members bought a Class Products for personal, family, or household purposes, they reasonably expected the Class Products would not have elevated and harmful levels of PFHxA.

255. In failing to disclose the Elevated Levels of PFHxA in the Class Products and the associated safety risks resulting from it, Defendant has knowingly and intentionally concealed material facts and breached its duty to disclose.

The facts Defendant concealed or did not disclose to Plaintiffs and the California Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Products or pay a lesser price. Had Plaintiffs and the California Class members known the Class Products contained Elevated Levels of PFHxA and associated health risks, they would not have purchased the Class Products or would have paid less for them.

256.   Defendant's unfair or deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

257.   As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiffs and members of the California Subclass were harmed in the amount of the purchase price they paid for the Class Products. Accordingly, Plaintiffs seek a monetary award for violation of this Act in the form of restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the California Subclass for said monies.

258.   By a letter dated January 21, 2025, Plaintiffs advised Defendant of its false and misleading representations and omissions pursuant to California Civil Code Section 1782(a).

259.   Pursuant to Section 1780(a) of the Act, Plaintiffs seek injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendant, including, but not limited to, an order enjoining Defendant from continuing to make the label and advertising claims challenged herein. Plaintiffs also request an order awarding Plaintiffs and the Class restitution of the money wrongfully acquired by Defendant. Plaintiffs shall be irreparably harmed if such an order is not granted.

260.   Plaintiffs respectfully request that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2). In addition, Defendant should be compelled to provide restitution to consumers who paid for Products that are not what they expected to receive due to Defendant's misrepresentations.

261.   Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

262.   Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendant continues to deceptively market the Class Products as being safe and suitable for prolonged wear and use during periods of perspiration, such as exercise. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of advertising or marketing modifications, is necessary to

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

dispel public misperception about the Class Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such modifications would include, including a disclosures that the Class Products contain an Elevated Levels of PFHxAs and are not safe and suitable for prolonged wear and use during exercise. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm, while injunctive relief is necessary to remedy future harm, under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiffs are, currently, unable to accurately quantify the damages caused by Defendant's future harm, rendering injunctive relief a necessary remedy.

## COUNT EIGHT

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (Cal. Com. Code §§ 2314 and 10212)

### (Brought by Plaintiffs Cavalier and Krzyzek on behalf of the California Subclass)

263.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

264.  Plaintiffs Dominique Cavalier and Kiley Krzyzek (for the purpose of this section, "Plaintiffs") bring this cause of action on behalf of themselves and the California Subclass.

265.  Defendant was at all relevant times a "merchant" with respect to the Class Products under California Commercial Code §§ 2104(1) and 10103(c), and a "seller" under § 2103(1)(d).

266.  The Class Products were at all relevant times "goods" within the meaning of California Commercial Code §§ 2105(1) and 10103(a)(8).

267.  Defendant was at all relevant times the designer, manufacturer, distributor, warrantor, advertiser, marketer, and/or seller of the Class Products. Defendant knew or had reason to know of the specific use for which the Class Products were purchased, which included prolonged wear and use during periods of perspiration, such as exercise.

268.  A warranty that the Class Products were in merchantable condition and fit for the ordinary purpose for which the Class Products are used is implied by law pursuant to California Commercial Code §§ 2314 and 10212.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

269. Defendant provided Plaintiffs and the members of the Class with an implied warranty that the Class Products, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold.

270. Defendant impliedly warranted that the Class Products were of merchantable quality and fit for such use. This implied warranty included, among other things, a warranty that the Class Products would be fit for their intended use of prolonged wear and use during periods of perspiration, such as exercise.

271. Defendant had a duty to disclose the Elevated Levels of PFHxA in the Class Products because it constitutes a safety issue and affects the central functionality of the Class Products.

272. The Class Products are not fit for their particular purpose of prolonged wear and use during exercise because of the Elevated Levels of PFHxA in the Sport Bands, which presents an unreasonable safety risk to human health.

273. Plaintiffs notified Defendant of its breach within a reasonable time, and/or were not required to do so because affording Defendant a reasonable opportunity to cure its breaches would have been futile.

274. Plaintiffs and the Class members have had sufficient dealings with Defendant or its agents to establish privity of contract. Privity is not required in this case, however, because California Plaintiffs and the Class members are intended third-party beneficiaries of purchases between Defendant and its authorized retailers and are intended beneficiaries of Defendant's implied warranties. The retailers of the Class Products were not intended to be the ultimate consumers of the Class Products, and the warranties were designed for and intended to benefit the ultimate consumers only.

275. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and the other California Subclass members have been damaged in an amount to be proven at trial.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## C. Claims Brought on Behalf of the Illinois Subclass

### COUNT NINE

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT

### (815 ILCS 505/1, et seq. and 720 ILCS 295/1a)

### (Brought by Plaintiff Katherine Wheeler on behalf of the Illinois Subclass)

276. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

277. Plaintiff Katherine Wheeler for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Illinois Subclass.

278. Defendant is and was at all relevant times a "person" as that term is defined in 815 Illinois Compiled Statutes § 505/1(c).

279. Plaintiff and the Illinois Class are and were at all relevant times "consumers" as that term is defined in 815 Illinois Compiled Statutes § 505/1(e).

280. In Illinois, the "Consumer Fraud and Deceptive Business Practices Act," 815 ILCS § 505/1, et seq., prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . ."

281. Plaintiff and the Illinois Class members were injured by Defendant's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiffs and the Illinois Class members. Because Plaintiff and the Illinois Class members relied on Defendant's misrepresentations, concealments and omissions when purchasing Defendant's Class Products, they were injured at the time of purchase.

282. Defendant does business in Illinois, sells and distributes Class Products in Illinois, and engaged in deceptive acts and practices in connection with the sale of the Class Products in Illinois and elsewhere in the United States.

283. Defendant knowingly failed to disclose, concealed, suppressed and/or omitted material facts regarding the Elevated Levels of PFHxA and associated safety hazard and misrepresented the standard, quality or grade of the Class Products, which directly caused harm to Plaintiff and the Illinois Class members. Defendant actively suppressed the fact that the Class present a safety hazard because of the Elevated Levels of PFHxA in the Sport Bands.

284. Defendant's unfair and deceptive trade practices were likely to deceive a reasonable consumer. Plaintiff and members of the Illinois Class had no reasonable way to know that Class Products contained Elevated Levels of PFHxA and posed a safety risk. Defendant possessed superior knowledge as to the quality and characteristics of the Class Products, including the Elevated Levels of PFHxA and associated safety risks, and any reasonable consumer would have relied on Defendant's misrepresentations and omissions as Plaintiff and the members of the Illinois Class did.

285. Defendant had the duty to Plaintiff and the Illinois Class members to disclose the Elevated Levels of PFHxA in the Class Products because:

    a. Defendant was in a superior position to know the true state of facts about the Elevated Levels of PFHxA in the Class Products;

    b. Defendant knew that Plaintiff and the Illinois Subclass members could not reasonably have been expected to learn or discover the Elevated Levels of PFHxA through visual inspection of the Class Products;

    c. The Elevated Levels of PFHxA in the Class Products is material to a reasonable consumer's purchase decision;

    d. The Elevated Levels of PFHxA in the Class Products constitutes a safety issue; and

    e. The Elevated Levels of PFHxA in the Class Products affects the central function of the Class Products.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

286.    Defendant's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Elevated Levels of PFHxA in the Class Products were intended to mislead consumers and misled Plaintiff and Illinois Subclass members.

287.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

288.    As a direct and proximate result of Defendant's violations, Plaintiff and members of the Illinois Class have suffered actual damages and/or injury in fact, including, inter alia: lost benefit of the bargain and overpayment for the Class Products.

289.    Plaintiff and members of the Illinois Subclass seek actual damages against Defendant in an amount to be determined at trial and statutory, treble, and/or punitive damages under the Illinois Consumer Fraud and Deceptive Business Practices Act. Plaintiff and members of the Illinois Subclass also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the Illinois Consumer Fraud and Deceptive Business Practices Act.

290.    Pursuant to 815 Illinois Compiled Statutes § 505/10a(d), Plaintiffs will mail a copy of the complaint to the Illinois Attorney General.

<u>**COUNT TEN**</u>

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

**(810 ILCS §§ 5/2-314 and 5/2A-212)**

**(Brought by Plaintiff Katherine Wheeler on behalf of the Illinois Subclass)**

291.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

292.    Plaintiff Katherine Wheeler (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Illinois Subclass.

293.    Defendant is and was at all relevant times a "merchant" with respect to consumer goods under 810 Illinois Compiled Statutes §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of consumer goods  under section 5/2-103(1)(d).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

294.    The Class Products are and were at all relevant times "goods" within the meaning of 810 Illinois Compiled Statutes §§ 5/2-105(1) and 5/2A-103(1)(h).

295.    A warranty that the Class Products were in merchantable condition and fit for the ordinary purpose for which the Class Products are used is implied by law pursuant to 810 Illinois Compiled Statutes §§ 28-2-314 and 28-12-212.

296.    Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Products. Defendant knew or had reason to know of the specific use for which the Class Products were purchased.

297.    Defendant provided Plaintiff and the Illinois Class members with an implied warranty that the Class Products and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Products are not fit for their ordinary purpose of prolonged wear and use during exercise at the time of sale or thereafter because, inter alia, the Class Products contain Elevated Levels of PFHxA, which is harmful to human health. Therefore, the Class Products are not fit for their particular purpose of prolonged wear and use during exercise.

298.    Defendant implied that the Class Products were of merchantable quality and fit for such use. This implied warranty included, among other things warranty that the Class Products would be fit for their intended use.

299.    Contrary to the applicable implied warranties, the Class Products at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the Illinois Class members with products that are safe and suitable for prolonged wear and use during exercise. Instead, the Class Products suffer from Elevated Levels of PFHxA

300.    Defendant's actions, as complained of herein, breached the implied warranty that the Class Products were of merchantable quality and fit for such use.

301.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the other Illinois Subclass members have been damaged in an amount to be proven at trial.

**D.     Claims Brought on Behalf of the Michigan Subclass**

## COUNT ELEVEN

**VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT**

**(MICH. COMP. LAWS § 445.903, *ET SEQ.*)**

**(Brought by Plaintiff Marlo Russell on behalf of the Michigan Subclass)**

302.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

303.   Plaintiff Marlo Russell (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Michigan Subclass.

304.   Plaintiff and members of the Michigan Subclass are "persons" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

305.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . . ." Mich. Comp. Laws § 445.903(1).

306.   Defendant's conduct as set forth herein constitutes unfair or deceptive acts or practices, including, but not limited to, misrepresentations of the Class Products' suitability for prolonged wear and use during exercise and omission and concealment of the Elevated Levels of PFHxA contained in the Class Products.

307.   Defendant's conduct as alleged above and herein constitutes practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have … characteristics . . . that they do not have . . . .;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

308. Defendant's actions as set forth above occurred in the conduct of trade or commerce.

309. Defendant intended that Plaintiff and the Michigan Subclass members rely on its misrepresentations and omissions, so that Plaintiff and the Michigan Subclass members would purchase the Class Products.

310. Defendant was under a duty to Plaintiff and the Class to disclose the Elevated Levels of PFHxA in the Class Products because:

    a. Defendant was in a superior position to know the true state of facts about the Elevated Levels of PFHxA in the Class Products;

    b. Defendant knew that Plaintiff and the Michigan Subclass members could not reasonably have been expected to learn or discover the Elevated Levels of PFHxA through visual inspection of the Class Products;

    c. The Elevated Levels of PFHxA in the Class Products is material to a reasonable consumer's purchase decision;

    d. The Elevated Levels of PFHxA in the Class Products constitutes a safety issue; and

    e. The Elevated Levels of PFHxA in the Class Products affects the central function of the Class Products.

311. Had Defendant disclosed the omitted material, Plaintiff and the members of the Michigan Subclass would not have purchased the Class Products would have paid less for them.

312. Defendant's violations present a continuing risk to Plaintiff and members of the Michigan Subclass as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

313. Plaintiff and the Michigan Subclass members were injured as a result of Defendant's conduct. Plaintiff and the Michigan Subclass members overpaid for the Class Products and did not receive the benefit of their bargain.

314. Defendant's conduct proximately caused the injuries to Plaintiff and the Michigan Subclass members.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

315.   Defendant is liable to Plaintiff and the Michigan Subclass members for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

### COUNT TWELVE

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (MICH. COMP. LAWS § 440.314)

**(Brought by Plaintiff Marlo Russell on behalf of the Michigan Subclass)**

316.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

317.   Plaintiff Marlo Russell (for the purpose of this section, "Plaintiff") brings this cause of action on behalf of herself and the Michigan Subclass.

318.   Defendant is and was at all relevant times a merchant within the meaning of Mich. Comp. Laws § 440.2314(1).

319.   Pursuant to Mich. Comp. Laws § 440.2314, a warranty that the Class Products were in merchantable condition is implied by law in the instant transactions.

320.   The Class Products, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Products contain Elevated Levels of PFHxA, constituting a significant safety hazard to Plaintiff and members of the Michigan Subclass.

321.   Privity is not required in this case because Plaintiff and the Michigan Subclass are intended third-party beneficiaries of contracts between Defendant and its authorized retailers; specifically, they are the intended beneficiaries of Defendant's implied warranties. The retailers were not intended to be the ultimate consumers of the Class Products and have no rights under the warranty agreements provided with the Class Products; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

322.   As a direct and proximate result of Defendant's breach of the warranties of merchantability, Plaintiff and the Michigan Subclass members have been damaged in an amount to be proven at trial.

<u>**COUNT THIRTEEN**</u>

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**

**(N.Y. GEN. BUS. LAW § 349)**

**(Brought by Plaintiff Teri Glazebrook on behalf of the New York Subclass)**

323.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

324.    Plaintiff Teri Glazebrook (for purposes of this section, "Plaintiff") brings this claim on behalf of herself and on behalf of the New York Subclass.

325.    Plaintiff and Defendant are "persons" within the meaning of the New York General Business Law ("GBL"). N.Y. Gen. Bus. Law § 349(h).

326.    Under GBL section 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce" are unlawful. N.Y. Gen. Bus. Law § 349.

327.    In the course of Defendant's business, it willfully failed to disclose and actively concealed the Elevated Levels of PFHxA with the intent that consumers rely on that concealment and omission in deciding whether to purchase a Class Product.

328.    In the course of Defendant's business, it willfully and intentionally misrepresented that the Class Products were safe and suitable for prolonged wear and use during exercise with the intent that consumers rely on such representations when deciding whether to purchase a Class Product.

329.    By concealing and omitting the Elevated Levels of PFHxA in the Class Products while advertising the Class Products as reliable, safe, and suitable for prolonged use and exercise, Defendant engaged in deceptive acts or practices in violation of GBL section 349.

330.    Defendant's deceptive acts or practices were materially misleading. Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff and members of the New York Subclass, about the Class Products safety and true value.

331.    Plaintiff and members of the New York Subclass were unaware of, and lacked a reasonable means of discovering, the material facts Defendant suppressed.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

332. Defendant's deceptive and misleading conduct concerns the safety of widely purchased consumer products and affects the public interest.

333. Defendant's actions set forth above occurred in the conduct of its business, trade, or commerce.

334. Plaintiff and members of the New York Subclass suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations. Plaintiff and members of the New York Subclass overpaid for their Class Products and/or did not receive the benefit of the bargain for the Class Products. These injuries are the direct and proximate result of Defendant's material misrepresentations and omissions.

335. Plaintiff and members of the New York Subclass request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair and deceptive practices. Under the GBL, Plaintiff and members of the New York Subclass are entitled to recover their actual damages or $50, whichever is greater. Additionally, because Defendant acted willfully or knowingly, Plaintiff and members of the New York Subclass are entitled to recover three times their actual damages. Plaintiff and the New York Subclass are also entitled to reasonable attorneys' fees. N.Y. Gen. Bus. Law § 349(h).

## COUNT FOURTEEN

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350

### (N.Y. GEN. BUS. LAW § 350)

### (Brought by Plaintiff Teri Glazebrook on behalf of the New York Subclass)

336. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

337. Plaintiff Teri Glazebrook (for purposes of this section, "Plaintiff") brings this claim on behalf of herself and on behalf of the New York Subclass.

338. GBL section 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce…." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including labeling, of a commodity…if such advertising is misleading in a material respect," taking into account "not only representations made by statement, word, design, device, sound or any

72

combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity…to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual." N.Y. Gen. Bus. Law § 350-a.

339. Defendant caused or made to be disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and other members of the New York Subclass.

340. Defendant violated GBL Section 350 because the misrepresentations and omissions regarding the suitability of the Class Products for prolonged were material and deceived reasonable consumers, including Plaintiff and members of the New York Subclass, about the true performance and value of the Class Products.

341. Defendant violated GBL Section 350 because the misrepresentations and omissions described herein about Class Products' Elevated Levels of PFHxA were material and deceived reasonable consumers, including Plaintiff and members of the New York Subclass, about the safety of the Class Products, value of the Class Products, and the Class Products suitability for prolonged wear and use during exercise.

342. Plaintiff and members of the New York Subclass suffered ascertainable loss as a direct and proximate result of Defendant's violations. In purchasing their Class Products, Plaintiff and members of the New York Subclass relied on Defendant's representations and omissions with respect to safety and suitability of the Class Products for prolonged wear and use during exercise. Defendant's representations turned out to be untrue because the Class Products contain Elevated Levels of PFHxA that are unreasonably dangerous to human health. Had Plaintiff or members of the New York Subclass known this, they would not have purchased Class Products or would have paid less money for them.

343. Plaintiff and members of the New York Subclass overpaid for their Class Products and/or did not receive the benefit of the bargain resulting from the Elevated Levels of PFHxA in the

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Class Products. These injuries are the direct and proximate result of Defendant's material misrepresentations and omissions.

344. Plaintiff and members of the New York Subclass request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and deceptive practices of false advertising. Under the GBL, Plaintiff and members of the New York Subclass are entitled to recover their actual damages or $500, whichever is greater. Additionally, because Defendant acted willfully or knowingly, Plaintiff and members of the New York Subclass are entitled to recover three times their actual damages, up to $10,000. Plaintiff is also entitled to reasonable attorneys' fees. N.Y. Gen. Bus. Law § 350-e.

## COUNT FIFTEEN

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (N.Y. U.C.C. LAW §§ 2-314 AND 2A-212)

**(Brought by Plaintiff Teri Glazebrook on behalf of the New York Subclass)**

345. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

346. Plaintiff Teri Glazebrook (for purpose of this section, "Plaintiff") brings this claim on behalf of herself and on behalf of the members of the New York Subclass.

347. Defendant is, and was, at all relevant times a "merchant" under N.Y. UCC Law § 2-104(1) and "seller" under § 2-103(1)(d).

348. The Class Products are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

349. A warranty that the Class Products were in merchantable condition and fit for the ordinary purpose for which smart watches are used is implied by law pursuant to N.Y. UCC Law §§ 2-314 and 2A-212.

350. Defendant impliedly warranted that the Class Products were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class Products were manufactured, supplied, distributed, and/or sold by Defendant were safe and

fit for their intended use of prolonged wear and use during exercise.

351.  Defendant breached the implied warranty of merchantability in that the Class Products were not in merchantable condition when they were sold to Plaintiff and New York Subclass members and said Class Products were and are unfit for the ordinary purposes of prolonged wear and use during exercise due to the Elevated Levels of PFHxA contained in the Class Products.

352.  As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the other New York Subclass members have been damaged in an amount to be proven at trial.

**F.    Claims Brought on Behalf of the Pennsylvania Subclass**

<u>COUNT SIXTEEN</u>

**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES**

**AND CONSUMER PROTECTION LAW**

**(73 Pa. Stat. § 201-1, *et seq.*)**

**(Brought by Plaintiff Heidi Fenton on behalf of the Pennsylvania Subclass)**

353.  Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

354.  Plaintiff Heidi Fenton (for purposes of this section, "Plaintiff") brings this claim on behalf of herself and the Pennsylvania Subclass.

355.  Defendant, Plaintiff, and the other members of the Class are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

356.  Defendant is engaged in "trade" or "commerce" within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

357.  The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" as set forth in the statute.  73 Pa. Stat. § 201-3.

358.  Defendant engaged in unfair and deceptive acts in the conduct of trade or commerce in violation of the PUTPCPL by the practices described above, and by: 1) knowingly and intentionally omitting from Plaintiffs and Class members that the Class Products suffer from

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Elevated Levels of PFHxA and 2) knowingly and intentionally . These acts and practices violate, at a minimum, the following sections of PUTPCPL section 201-2:

- (4)(ii) Misrepresenting the source, sponsorship, approval or certification of goods or services;

- (4)(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he/she/they do not have;

- (4)(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

- (4)(ix) Advertising goods and services with intent not to sell them as advertised; and

- (4)(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

359. Defendant knew that the Class Products contained Elevated Levels of PFHxA, and were not suitable for their intended use.

360. Defendant was under a duty to Plaintiff and the Class to disclose the Elevated Levels of PFHxA in the Class Products because:

  a. Defendant was in a superior position to know the true state of facts about the Elevated Levels of PFHxA in the Class Products;

  b. Defendant knew that Plaintiff and the Pennsylvania Subclass members could not reasonably have been expected to learn or discover the Elevated Levels of PFHxA through visual inspection of the Class Products;

  c. The Elevated Levels of PFHxA in the Class Products is material to a reasonable consumer's purchase decision;

  d. The Elevated Levels of PFHxA in the Class Products constitutes a safety issue; and

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

e.   The Elevated Levels of PFHxA in the Class Products affects the central function of the Class Products.

361.   In failing to disclose the Elevated Levels of PFHxA and the associated safety risks that result from it, Defendant has knowingly and intentionally omitted, misrepresented, and concealed material facts and breached its duty not to do so.

362.   In representing that the Class Products are safe and suitable for prolonged wear and use during exercise, Defendant has knowingly and intentionally misrepresented material facts and breached its duty not to do so.

363.   The facts omitted or concealed by Defendant to Plaintiff and the Pennsylvania Subclass members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Products or pay a lesser price. Had Plaintiff and the Pennsylvania Subclass members known about the Elevated Levels of PFHxA in the Class Products, they would not have purchased the Class Products or paid less for them.

364.   Plaintiff and members of the Pennsylvania Subclass overpaid for their Class Products and/or did not receive the benefit of the bargain resulting from the Elevated Levels of PFHxA in the Class Products. These injuries are the direct and proximate result of Defendant's material misrepresentations and omissions.

365.   Pursuant to 73 Pa. Cons. Stat. § 201-9.2(a), Plaintiff and the other Pennsylvania Subclass members seek an order enjoining Defendant's unfair and/or deceptive acts or practices, damages – trebled, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Pennsylvania UTPA.

## COUNT SEVENTEEN

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (13 Pa. Cons. Stat. §§ 2314 and 2A212)

### (Brought by Plaintiff Heidi Fenton on behalf of the Pennsylvania Subclass)

366.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

FIRST AMENDED CLASS ACTION COMPLAINT

367. Plaintiff Heidi Fenton (for purposes of this section, "Plaintiff") brings this claim on behalf of herself and the Pennsylvania Subclass.

368. Plaintiff is and was at all relevant times a "merchant" under 13 Pa. Cons. Stat. §§ 2104 and 2A103, and a "seller" under § 2103(a).

369. The Class Products are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

370. A warranty that the Class Products were in merchantable condition and fit for the ordinary purpose for smart watches are used is implied in law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

371. The Class Products, when sold and at all times thereafter, were not in merchantable condition and are not fit for their ordinary purpose. Specifically, the Class Products contain Elevated Levels of PFHxA that presents an unreasonable danger to human health and makes the Class Products unsuitable for prolonged wear and use during exercise.

372. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the other Pennsylvania Subclass members have been damaged in an amount to be proven at trial.

## IX.    **PRAYER FOR RELIEF**

373. **WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendant as follows:

    a.   **Certification:** For an order certifying this action as a class action, appointing Plaintiffs as the Class Representatives, and appointing Plaintiffs' Counsel as Class Counsel;

    b.   **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein consistent with applicable law and pursuant to only those causes of action so permitted;

    c.   **Injunction:** For an order requiring Defendant to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendant

immediately cease and desist from selling the unlawful Products in violation of law; that enjoin Defendant from continuing to market, advertise, distribute, and sell the Class Products in the unlawful manner described herein; that require Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Class Products resulting from Defendant's unlawful conduct; and/or that require Defendant to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiffs and the Class requested herein, consistent with applicable law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury on all issues and causes of action so triable.

DATED: May 5, 2025

Respectfully submitted,

**CLARKSON LAW FIRM, P.C.**

_/s/ Yana Hart_
Ryan Clarkson, Esq.
Yana Hart, Esq.
Mark Richards, Esq.
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050

**SHUB JOHNS & HOLBROOK LLP**
Benjamin F. Johns, Esq. (_Pro Hac Vice_)
Samantha E. Holbrook, Esq. (_Pro Hac Vice_)
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Tel: (610) 477-8380

_Attorneys for Plaintiffs and
the Proposed Classes_